## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ELAINE WALLS** <br> 9905 Edgewater Terrace <br> Fort Washington, MD 20744 <br><br> Plaintiff, <br><br> v. <br><br> **NORMAN Y. MINETA,** <br> **SECRETARY** <br> **U.S. DEPARTMENT OF TRANSPORTATION** <br> 400 7th Street, S.W. <br> Washington, D.C. 20590 <br><br> Defendant. | Civil Action No. |

## COMPLAINT

1. Plaintiff Elaine Walls brings this action for injunctive relief and damages based on the denial of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 (hereafter "Title VII"). The Department of Transportation (hereafter "DOT" or "the Agency") discriminated against Ms. Walls because of her sex (female) and race (African-American). After filing an EEO/EEOC charge, the Agency retaliated against Ms. Walls for engaging in activities protected by Title VII.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343(a)(3), and 1343(a)(4), and 42 U.S.C. § 2000e-5.

3. The claims asserted herein arose in the District of Columbia which is also the location of the acts relevant to the claims asserted by Ms. Walls. Venue is appropriate in this Court under 28 U.S.C. § 1391(e) and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

4. Ms. Walls is currently employed as an Attorney (Advisor), GS-905-14, for the Federal Motor Carrier Safety Administration ("FMCSA") in the Chief Counsel's office.

5. Defendant Norman A. Mineta is the Secretary of DOT. The Secretary is being sued in his official capacity as provided by law based on his executive responsibility for administering DOT personnel policies and his responsibility to enforce and to promote equal employment opportunity throughout the Agency. During the relevant time period, the DOT has employed well-over 500 employees.

6. Suzanne O'Malley is not a defendant in this lawsuit but was named in Ms. Walls' EEO and EEOC complaints as a discriminatory official. At the time of the dispute, she was FMCSA's Assistant Chief Counsel of the Regulations Affairs Division and Ms. Walls' immediate supervisor.

7. Judith A. Rutledge is not a defendant in this lawsuit but was named in Ms. Walls' EEO and EEOC complaints as a discriminatory official. At the time of the dispute, she was FMCSA's Deputy Chief Counsel and Ms. Walls' second-line supervisor. Ms. Rutledge is one of the management officials most directly involved in taking adverse actions against Ms. Walls because of her race, sex, and

in reprisal for filing her EEO and EEOC charges. Ms. Rutledge was one of the Agency officials responsible for denying Ms. Walls' career ladder promotion to the GS-15 level, her promotion to the Assistant Chief Counsel position, taking other adverse personnel actions against Ms. Walls and creating a pretext to hide her discriminatory motives. During the relevant time period, Ms. Rutledge reported to Brigham A. McCown.

8. Brigham A. McCown is not a defendant in this lawsuit but was named in Ms. Walls' EEO and EEOC complaints as a discriminatory official. At the time of the dispute, he was FMCSA's Chief Counsel and Ms. Walls' third-line supervisor. Mr. McCown is now the Deputy Administrator at the Pipeline and Hazardous Materials Safety Administration of DOT. Mr. McCown concurred with Ms. Rutledge's decision not to promote Ms. Walls and was one of the Agency officials responsible for denying Ms. Walls' career ladder promotion to the GS-15 level. Mr. McCown took other adverse personnel actions against Ms. Walls, created a pretext to hide his discriminatory motives, and enabled Ms. Rutledge to carry out discriminatory and retaliatory actions against Ms. Walls.

## **FACTS**

9. The averments set forth in paragraphs 1 through 8 are adopted and incorporated herein by reference.

10. In December 1996, the Agency hired Ms. Walls as an Attorney-Advisor, GS-14 at the Federal Highway Administration ("FHWA") in the Legislation and Regulations Division of the Chief Counsel's Office.

11. In early 2000, Thomas Holian, Ms. Walls' immediate supervisor and FHWA's Assistant Chief Counsel for the Regulations and Legislation Division, recommended Ms. Walls for a promotion to the GS-15 level.

12. Shortly thereafter, Ms. Rutledge approached Ms. Walls and offered her a position at the newly created FMCSA. The Agency had appointed Ms. Rutledge as the Acting Chief Counsel. Before Ms. Walls accepted, however, she informed Ms. Rutledge that Mr. Holian had offered her a promotion to a GS-15 position and she would only be willing to transfer to FMCSA if she could have the same grade level. Ms. Rutledge promised Ms. Walls that she could be promoted to the GS-15 level if she transferred into FMCSA.

13. At the time it was created, the Chief Counsel's Office of the FMCSA consisted of seven attorneys: Ms. Rutledge, Suzanne O'Malley, Assistant Chief Counsel of the Enforcement and Regulatory Affairs Division, Patricia Burke, the Acting Chief Counsel of the General Law Division, Michael Falk, Charles Medalen, Joseph Solomey and Ms. Walls. FMCSA continued to expand and grow over time.

14. Ms. Walls stepped into her new position with enthusiasm. She welcomed her new role at the FMCSA and during the first three years, Ms. Walls worked on the following projects:

   a. The Agency's NAFTA Programmatic Environmental Impact Statement (EIS) task force and a procurement initiative to obtain a contractor and program manager for this effort;

   b. The FMCSA's "Reeper Report" to the Deputy Secretary involving the Agency's timeline to complete the NAFTA EIS; and

  c. Development of FMCSA's environmental procedures to comply with the National Environmental Policy Act of 1969 (published on March 1, 2004).

15. As a result of this work on NAFTA as well as other projects, Ms. Walls developed a specialty and expertise in the area of environmental law which was critical to FMCSA's mission.

16. During 2001, relying heavily on the fact that Ms. Walls had informed Ms. Rutledge of her imminent promotion to a GS-15 in her previous position, Ms. Walls inquired as to her promotion. FMCSA informed her that the Counsel's Office would not support promoting anyone to the GS-15 level.

17. In 2002, FMCSA once again rebuffed Ms. Walls' request for a career ladder promotion to the GS-15 level.

18. Also in 2002, FMCSA implemented the option to telecommute. FMCSA, however did not inform newly hired female attorneys that this option was available and, instead, only offered the telecommute option to newly-hired male attorneys in the office. When the excluded newly-hired female attorneys learned of the option to telecommute, they asked if they could do the same. Rather than allow all the females to telecommute, Mr. McCown suspended telecommuting for the entire staff.

19. FMCSA's disparate treatment of females is also evidenced in FMCSA's application of its leave policies. In late 2003/early 2004, FMCSA informed all the male attorneys that it hired that they could take Regular Days Off ("RDO") immediately upon hire whereas the female attorneys that were hired during this period could not take RDOs until they had worked 4 (four) months.

20. FMCSA's discrimination is also blatant when it comes to approving training for the female attorneys in the office. Ms. Rutledge would not approve any training for Ms. Walls unless Ms. Walls agreed to certain conditions, such as taking on additional projects above her regular assignments. Indeed, Ms. Rutledge demanded that Ms. Walls go to extremes to get any career-enhancing. In contrast, training was easily accessible to all the males in her office. For example, Ms. Rutledge readily approved Mr. Medalan's request to attend training at Harvard University which cost in excess of $4,000.00. On another occasion, FMCSA approved and allowed several males in the office to attend an out of State training program. When the females in the office sought to attend the very same out of State training program, the training offer was revoked and the travel denied.

21. In or about December 2003, in anticipation of the funds available for promotions in 2004, Ms. Walls approached her immediate supervisor, Ms. O'Malley about being nominated as a participant in the Executive Potential Program ("EPP"). Ms. O'Malley concurred and believed it would be a great opportunity for Ms. Walls as it had been for Mr. Solomey, a similarly situated Caucasian male attorney in FMCSA, who had been selected for EPP the previous year.

22. A few days thereafter, in contrast to Ms. O'Malley's recommendation, Ms. Rutledge informed Ms. Walls that FMCSA had decided that they would not recommend her for the EPP program. Without FMCSA's nomination, Ms. Walls could not compete for participation in the EPP program.

23. Ms. Walls nonetheless approached Mr. McCown and expressed her interest in the EPP program. They discussed her participation in the program, her career

development and promotion to a GS-15, which was now long overdue. Mr. McCown indicated that he would look into these matters and get back to Ms. Walls within thirty (30) days. Thirty days passed yet Mr. McCown failed to follow-up with Ms. Walls as promised.

24. In January 2004, Mr. McCown offered to promote Mr. Solomey to a GS-15 level. Mr. Solomey had previously been a GS-14. Indeed, Mr. McCown offered to personally escort Mr. Solomey to Administrator Sandberg's office to illicit a promise to promote him to a GS-15. This was in direct contravention with FMCSA's assertions that it supposedly did not have the budget to promote any of its attorneys to a GS-15.

25. Ms. Walls requested another meeting with Mr. McCown in February 2004 to inquire again about her promotion that was three years overdue. By this time, Ms. Walls had distinguished herself by her environmental work on the NAFTA EIS task force, as well as many other projects, and had a proven track record that merited a career ladder promotion to the next level.

26. On or about February 6, 2004, Ms. Rutledge and Mr. McCown denied Ms. Walls' promotion and refused to nominate her for participation in the EPP program. Ms. Rutledge indicated that while Ms. Walls was "almost" performing at a GS-15 level, Ms. Rutledge would have to "develop a plan" for Ms. Walls to get there. Mr. McCown also indicated that Ms. O'Malley had expressed her belief that Ms. Walls was not qualified for a promotion to the GS-15 level. Mr. McCown suggested that Ms. Walls, Ms. O'Malley and Ms. Rutledge continue to discuss Ms. Walls' promotion. Mr. McCown also stated that he would follow-up

personally with Ms. Walls. Mr. McCown never spoke with Ms. Walls about her promotion again, nor did he ever provide any assistance whatsoever.

27. Shortly thereafter, Ms. Walls met with Ms. O'Malley to discuss her promotion. Ms. O'Malley encouraged Ms. Walls to continue pursuing her promotion and indicated her belief, as Ms. Walls' first-line supervisor, that she was well qualified for a promotion.

28. On or about February 10, 2004, Ms. Walls again met with Ms. Rutledge and Ms. O'Malley. Ms. O'Malley supported Ms. Walls' long-deserved promotion but Ms. Rutledge did not. Ms. Rutledge also refused to nominate Ms. Walls to the EPP program. She indicated that she might be willing to nominate Ms. Walls after she and Ms. O'Malley developed a plan for her. Ms. Rutledge went on further to say she believed that Ms. Walls was "no more than a high-level graded GS-14 attorney". Ms. Rutledge never developed a plan for Ms. Walls.

29. The previous year, Ms. Rutledge nominated Mr. Solomey for the EPP program without the need to make Mr. Solomey perform special tasks or to develop a plan.

30. On or about February 12, 2004, Ms. Walls contacted an EEO counselor regarding FMCSA's denial of her career ladder promotion and other discriminatory treatment.

31. On or about March 10, 2004, Ms. Walls submitted a Request for Mediation to the EEO investigator who in turn promptly notified Ms. Rutledge and Ms. McCown. Mr. McCown refused to participate in mediation.

32. On or about March 18, 2004, in retaliation for Ms. Walls' EEO complaint and in an effort to deter others from exercising their civil rights, Ms. Rutledge refused to

give Ms. Walls an "outstanding" rating for her 2003 Performance Evaluation despite the fact that Ms. Walls' performance, as well as Ms. O'Malley's evaluation comments, supported an outstanding rating.

33. Shortly thereafter, Ms. Walls learned that at least one, if not all, of her male colleagues received an "outstanding" rating for their 2003 Performance Evaluations.

34. FMCSA's clear preferential treatment of the Caucasian males in the office is also evidenced in the manner it distributed awards to employees. More specifically the following awards were made in 2002:

   a. MALES:
      i. T.V., Caucasian Male, $1072
      ii. M.F., Caucasian, $4,400
      iii. C.M., Caucasian, $1900 and 16 hours of paid leave
      iv. J.S., Caucasian, $1750
      v. F.C., Caucasian, $1750 and 18 hours of paid leave
      vi. R.B., Caucasian, $500
      vii. K.F., Caucasian, $500

   b. FEMALES:
      i. J.R., Caucasian, $4500
      ii. P.B., Caucasian, $500 and 18 hours of paid leave
      iii. E.W., African-American, $650 and 16 hours of paid leave.

35. FMCSA also makes it a practice to hire males at higher levels than females even though their qualifications are inferior. More specifically, the Agency hired

Bryan Downey and Kenneth William as GS-14s when they had less experience than Rosemary Dettling, a female attorney, who was hired as a GS-13. To date, Ms. Dettling has not been promoted to the GS-14 level.

36. In mid-March 2004, the Agency posted a Supervisory Attorney Advisor (Assistant Chief Counsel) position in the Office of Chief Counsel, Enforcement and Litigation Division, GS-15, for which Ms. Walls applied.

37. On or about September 14, 2004, Ms. Walls learned that FMCSA had gone outside the Agency and hired Brian Yonnish, a Caucasian male, to serve as the Assistant Chief Counsel for the Enforcement and Litigation Division. Mr. Yonnish was the third or fourth individual to whom Mr. McCown and Ms. Rutledge had offered the position and, prior to selecting Mr. Yonnish, Ms. Rutledge had offered the job to Sue Lawless, a Caucasian female staff attorney, despite the fact that Ms. Lawless' name never appeared on the certification list of qualified applicants for the job.

38. Ms. Walls' qualifications were far superior to those of Mr. Yonnish. Indeed, unlike Ms. Walls, Mr. Yonnish did not understand federal motor carrier safety regulations and he freely admitted to his staff that he had a "big learning curve." FMCSA, however, was not concerned with his qualifications. They selected Mr. Yonnish because he was Caucasian and male.

39. Since her transfer to the FMCSA, Ms. Walls has sought to obtain the career ladder promotion for which she is eligible and deserving. Despite her superior performance and qualifications, Defendant has denied her the promotion because of her race and sex.

40. Seeking to redress these violations and to protect her rights under the law, Ms. Walls filed administrative EEO complaints. In response, Defendant has retaliated against Ms. Walls and took actions against her that have effected the terms, conditions and privileges of her employment. Defendant has further retaliated against her by perpetuating its refusal to promote her and by making false assertions about her performance to justify the promotion denial.

41. These adverse actions have hampered and interfered with Ms. Walls' ability to advance in her career and have significantly harmed her professional reputation. By denying Ms. Walls the promotion and refusing to select her for the position for which she was well-qualified and taking other steps that reflect negatively on her abilities, Defendant has effectively hampered and damaged Ms. Walls' career. These and other adverse actions constitute a continuing violation of her rights under Title VII of the Civil Rights Act of 1964.

42. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Ms. Walls has suffered grievous harm to her career and continues to suffer such harm. These injuries and losses include, but are not limited to, loss of substantial past and future salary, benefits and entitlements, loss of professional status and career-enhancing opportunities and loss of retirement savings and benefits.

43. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Ms. Walls additionally has suffered great emotional distress, embarrassment, humiliation, pain and anguish, as well as damage to her professional career and reputation.

## EXHAUSTION OF REMEDIES

44. Ms. Walls exhausted all administrative requirements that apply to the processing of her complaint, including the filing of an informal and a formal complaint with the Agency's EEO office and an EEOC complaint.

## STATEMENT OF CLAIMS

### COUNT I:     Sex Discrimination in Violation of Title VII

45. Ms. Walls adopts and incorporates by reference paragraphs 1-44 above. Ms. Walls alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to discrimination on the basis of her sex (female) by denying her promotions, training, and other employment opportunities and subjecting her to other such adverse and disparate treatment. Ms. Walls further alleges that these acts and practices violate Title VII as well as the statutory provisions and regulations that specifically apply to the federal government as an employer.

46. As a result of the Defendant's unlawful and discriminatory practices, Ms. Walls has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Ms. Walls for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

### COUNT II:   Race Discrimination in Violation of Title VII.

47. Ms. Walls adopts and incorporates by reference paragraphs 1-46 above. Ms. Walls alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to discrimination on the basis of her race (African-American) by denying her promotions, training and other employment opportunities and subjecting her to other such adverse and disparate treatment. Ms. Walls further alleges that these acts and practices violate Title VII as well as the statutory provisions and regulations that specifically apply to the federal government as an employer.

48. As a result of the Defendant's unlawful and discriminatory practices, Ms. Walls has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Ms. Walls for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

### COUNT III:   Retaliation Against Ms. Walls for Engaging in Activities Protected by Title VII.

49. Ms. Walls adopts and incorporates by reference paragraphs 1-48 above. Ms. Walls alleges that Defendant, and/or agents or employees acting on its behalf, retaliated against her for her opposition to Defendant's unlawful employment practices and her participation in protected activity and the EEO process. As a

result of the retaliation, Ms. Walls has been denied promotions, training, other employment opportunities and subjected to other such adverse and disparate treatment. Ms. Walls further alleges that these acts and practices violate Title VII as well as the statutory provisions and regulations that specifically apply to the federal government as an employer.

50. As a result of the Defendant's unlawful and discriminatory practices, Ms. Walls has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Ms. Walls for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

## **RELIEF SOUGHT**

**WHEREFORE**, Plaintiff respectfully requests this Court to:

A. Enter judgment for Plaintiff against Defendant on all Counts;

B. Declare that the conduct of Defendant is in violation of Title VII of the Civil Rights Act of 1964, as amended;

C. Order the Agency to promote Ms. Walls to a GS-15 position with full back pay and front pay, including salary, benefits, and other entitlements retroactive to the date of any unlawful action found to have occurred in this case;

D. Award Ms. Walls compensatory damages for the injuries and losses that she suffered in an amount to be proved at trial;

E. Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses incurred by Ms. Walls as a result of Defendant's actions and inactions, as well as pre-judgment and post-judgment interest;

F. Order the Agency to refrain from taking any act of retaliation, including reassigning or relocating Ms. Walls because of this suit, as well as to make work assignments available that enable her to use her expertise in the best interest of the Agency; and

G. Order such other equitable and legal relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff requests a trial by a jury of her peers as to all claims set forth in this Complaint.

Respectfully submitted,

_____
Camilla C. McKinney
D.C. Bar No. 448776
Law Offices of Camilla C. McKinney, PLLC
1100 Fifteenth Street, N.W., Suite 300
Washington, D.C. 20005
(202) 861-2934 (telephone)
(202) 517-9111 (facsimile)

*Attorney for Plaintiff Elaine Walls*