## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| ELAINE WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1259 (TFH) |
| | ) | ECF |
| MARY E. PETERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Fed. R. Civ. P. 56, Defendant Mary E. Peters, in her official capacity as Secretary of the Department of Transportation, by and through undersigned counsel, hereby moves this Court to enter summary judgment in favor of Defendant.  For the reasons provided in the attached Memorandum of Points and Authorities, there are no material facts in dispute and, the facts in this case establish that summary judgment should be granted in the Agency's favor as a matter of law.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar # 434122
Assistant United States Attorney


_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington DC 20530
Phone: 202-307-0406
Fax: 202-514-8780
Kenneth.Adebonojo@usdoj.gov


*Of Counsel*:
RAYMOND C. FAY, D.C. Bar #188649
LAURA C. FENTONMILLER, D.C. Bar #450813
Constantine Cannon LLP
1627 Eye Street, N.W., 10th Floor
Washington, D.C. 20006
Phone: 202-204-3500
Fax: 202-204-3501
rfay@constantinecannon.com
lfentonmiller@constantinecannon.com

2

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELAINE WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1259 (TFH) |
| | ) | ECF |
| MARY E. PETERS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Mary E. Peters, in her official capacity as Secretary of the Department of Transportation and by and through counsel, submits this memorandum of points and authorities in support of her motion for summary judgment on all counts in the above-captioned Complaint.

## I.    INTRODUCTION

Elaine Walls ("Plaintiff"), a GS-14 Attorney-Advisor employed by the Federal Motor Carrier Safety Administration ("FMCSA" or "Agency"), has already fully litigated the claims of sex discrimination, race discrimination, and retaliation against the Agency set forth in her Complaint in this action at the administrative level. FMCSA has provided to Plaintiff thousands of pages of documents, answers to numerous interrogatories, and ten sworn statements of alleged witnesses. Additionally, Plaintiff has taken lengthy depositions of the three management officials involved in the allegedly discriminatory actions (her first (339 pages), second (336 pages), and third-level (173 pages) supervisors). In short, this case is ripe for summary judgment.

1

As an initial matter, Plaintiff's claims addressing:  (1) retaliatory failure to be selected for the position of Assistant Chief Counsel for Enforcement and Litigation in September 2004; (2) retaliatory cancellation of training for plaintiff entitled "Residential Workshop for Administrative Support Staff;" (3) failure to receive appropriate awards and bonuses in FY 2002 because of race and sex;  and (4) disparate treatment because of race and sex with regard to leave and telecommuting policies must be dismissed for failure to exhaust administrative remedies.  Plaintiff did not raise these allegations with an EEO Counselor as unambiguously required by the applicable regulations, and because these claims are not "like or related" to the claims she did raise with the Counselor, she cannot bring them in this lawsuit.

Secondly, Plaintiff's sole support for her allegations of denial of a career-ladder promotion to GS-15 because of race and sex and retaliatory receipt of a "meets or exceeds requirements" rather than an "outstanding" rating on her FY 2003 performance evaluation (as well as for her unexhausted non-selection claim regarding the Assistant Chief Counsel position and her unexhausted claim regarding FY 2002 awards and bonuses) amounts to the assertion of her uncorroborated opinion regarding her qualifications.  Plaintiff offers no evidence, other than her own assessment of her performance, to support these claims of discrimination and retaliation.  In addition, because Plaintiff's performance rating for FY 2003 was the same as that of the previous year (prior to her protected activity in making a complaint of discrimination), she cannot demonstrate that it constituted an adverse action.  Moreover, Plaintiff's conclusory statements regarding her performance do not refute the legitimacy of the Agency's

exercise of its business judgment in assessing the level of Plaintiff's performance as acceptable for a GS-14, but not outstanding or warranting a promotion.

Likewise, Plaintiff utterly fails to demonstrate pretext with regards to the Agency's rational and proper decisions concerning: (1) not nominating Plaintiff or anyone else to the Executive Potential Program in FY 2004 when the participation of another employee in Plaintiff's division the previous year had taxed the resources of the office; (2) telling Plaintiff that she could only take a course on employment law if she were to begin working on such cases for the office so as to justify the cost of the class (she had never handled an employment law matter), and denying her such training when she refused; and (3) ultimately canceling training to be attended by Plaintiff called "Residential Workshop for Administrative Support Staff," where management had initially erroneously believed the course was appropriate for attorneys. In addition, allegations (2) and (3) regarding training do not constitute actionable adverse actions, thereby preventing Plaintiff from making out a *prima facie* case. Finally, Plaintiff raises an absurd claim that FMCSA retaliated against her when it designated Deputy Chief Counsel Judith Rutledge rather than Chief Counsel Brigham McCown as the Agency representative to mediate her informal complaint to the EEO Counselor. Not only is this claim not actionable since the administrative process is reviewed de novo in this action, it also does not involve a materially adverse action.

Thus, while Plaintiff makes numerous assertions of discriminatory and retaliatory treatment by FMCSA, her evidentiary and legal support for each is fatally lacking: she cannot state a *prima facie* case and/or refute the Agency's legitimate, non-discriminatory reasons for its actions. Not only does she fail to establish a *prima facie* case or rebut

3

legitimate non-discriminatory reasons regarding her claims, Plaintiff has also not raised a genuine issue of fact as to whether discrimination or retaliation was a motivating factor in the Agency's decisions. The undisputed material facts in this matter compel judgment for Defendant as a matter of law because no genuine issue of fact has been raised either under the single or mixed motive theories of Title VII liability.

## II.    FACTS

### A.    Background

The Plaintiff currently holds a GS-14 Attorney-Advisor position in the FMCSA's Office of the Chief Counsel's Regulatory Division. Complaint at ¶ 4. Her first-level supervisor is Suzanne O'Malley, Assistant Chief Counsel for Regulatory Affairs, and at all times relevant to the Complaint, her second and third-level supervisors were Judith Rutledge, Deputy Chief Counsel of FMCSA, and Brigham McCown, Chief Counsel of FMCSA.[1]  Immediately prior to her employment by the FMCSA, Plaintiff worked for the Federal Highway Administration ("FHWA"). Complaint at ¶ 10. Plaintiff, along with other FHWA attorneys who spent over 50% of their time on motor carrier matters, moved to FMCSA in October 2000 upon the transfer of motor carrier functions from FHWA to the newly created FMCSA. SOF 1.[2]  Plaintiff was a GS-14 attorney at FHWA and transferred to FMCSA at the same grade and pay. SOF 2.

---

[1] Ms. Rutledge recently retired and Mr. McCown is no longer Chief Counsel.

[2] "SOF" refers to Defendant's Statement of Material Facts Not in Genuine Dispute, submitted herewith.

B.    <u>Procedural Background</u>

On February 12, 2004 Plaintiff initiated contact with an EEO Counselor.  SOF 3.

Her allegations included claims of discrimination on the basis of her sex and race

(African American) when she was denied: (1) a career-ladder promotion to a GS-15; (2)

an opportunity to participate in the Executive Potential Program; and (3) other

opportunities for professional development in the Chief Counsel's Office.  SOF 3.

Plaintiff amended her pre-complaint intake on March 19, 2004 to add claims of

retaliation for (4) Chief Counsel McCown's failure to participate in EEO mediation; and

(5) Plaintiff's failure to receive an "Outstanding" rating on her FY 2003 performance

evaluation.  SOF 4.

Plaintiff filed a formal complaint on May 13, 2004, and subsequently amended it

to include two additional claims of retaliation for: (6) failure to select Plaintiff in

September of 2004 for the Assistant Chief Counsel of Enforcement and Litigation

position; and (7) management's cancellation of a pre-approved trip to Florida for training

in September 2004.  SOF 5.  Plaintiff did not seek EEO counseling on either of these

claims.

C.    <u>Executive Potential Program</u>

In December 2003, Plaintiff expressed an interest in being nominated for the

Executive Potential Program ("EPP") in FY 2004.  SOF 6.  The EPP is a management

program open to one FMSCA employee per year, and requires the participant to spend a

significant amount of time on detail to other agencies and on assignments related to the

EPP program.  SOF 7, 8.  FMCSA's training office solicits nominations annually from all

offices within the agency.  SOF 7.  The Office of Chief Counsel has nominated only one

candidate since the office was established in October 2000, and that nominee (Joe

Solomey) was selected in FY 2003 as FMCSA's EPP participant. SOF 9. Mr. Solomey

worked in Plaintiff's division in the Chief Counsel's Office, and, unlike Plaintiff, had

received significant awards in 2001 and 2002 for his professional abilities and

contributions to FMCSA's enforcement program. SOF 9-12.

Chief Counsel McCown and Deputy Chief Counsel Rutledge declined to

nominate any candidates for the FY 2004 EPP because they determined that the office

had suffered from the strain placed on its limited resources and staffing levels in FY 2003

as a result of Mr. Solomey's EPP participation. SOF 13, 14. In addition, they believed it

unlikely that the agency would select a nominee from the same office and the same

division two years in a row. SOF 14.

       D.     <u>Career-Ladder Promotion to GS-15</u>

In February 2004, the Plaintiff requested a promotion to the GS-15 level. SOF 5.

Chief Counsel McCown and Deputy Chief Counsel Rutledge advised the Plaintiff that

they, as well as her first-level supervisor Suzanne O'Malley, did not believe her

performance met the level required of GS-15s in the office. SOF 20.[3] Plaintiff's

supervisors did not believe that Plaintiff's knowledge of agency programmatic, policy,

and regulatory areas, as well as her initiative, diplomacy, and leadership skills and ability

to work independently, warranted a promotion to the GS-15 level. SOF 19. No

employee in the Chief Counsel's Office has ever received a career-ladder promotion to a

---

[3] The Chief Counsel's Office has very high standards for promotion to the GS-15 level
which are applied equally and fairly to all attorneys in the office.   SOF 17.

non-supervisory GS-15 position; the employees in the office at the GS-15 level had

achieved it prior to transferring to the office from FHWA.  SOF 22-25.

   E.  <u>FY 2003 Performance Evaluation</u>

   For her FY 2002  performance appraisal, Plaintiff received a rating of "meets or

exceeds requirements."  SOF 26.  For her FY 2003 performance appraisal, Plaintiff

received what she claims to be a retaliatory rating of "meets or exceeds requirements."

SOF 27.  With the exception of six employees (3 male and 3 female), all employees in

the Chief Counsel's Office received a rating of "meets or exceeds requirements" for this

appraisal period.  SOF 28.

   F.  <u>Training</u>

    Plaintiff's position as a GS-14 attorney in the office of the Assistant Chief

Counsel for Regulatory Affairs does not in any manner involve EEO related work.

SOF 31.  However, in 2004, Plaintiff expressed a desire to take an employment law

course.  SOF 32.  Because Plaintiff's job duties did not include handling employment

cases, and Plaintiff did not agree to work on employment cases so that the training would

benefit the Agency, Ms. Rutledge did not approve the course.  *Id*.  Ms. Rutledge has

never approved training for any employee in an area unrelated to the employee's duties.

SOF 33.

   Also in 2004, it came to the attention of Ms. Rutledge that a wellness/stress-

relief-type workshop would be offered at various locations and times.  SOF 34.  Although

Ms. Rutledge originally approved the training for all employees who wished to attend,

when she learned that the training was in fact a "Residential Workshop for

Administrative Support Staff," she told her attorneys, including Plaintiff, not to

reschedule the training after it was postponed and then cancelled until the following year

due to Hurricane Ivan.  SOF 35-37.

> G.    Participation of Rutledge Rather than McCown in Mediation

FMCSA agreed to mediate with Plaintiff in the administrative EEO process, and

designated Deputy Chief Counsel Rutledge as the agency representative.  Ex. 22.

Plaintiff alleges that this designation was discriminatory.  This claim is patently frivolous

as the entire administrative process is before this Court for *de novo* review.

> H.    Selection for Assistant Chief Counsel for Enforcement and Litigation
>        Position

In late summer 2004, FMCSA sought an attorney to fill the newly-created GS-15

supervisory position of Assistant General Counsel of Enforcement and Litigation.

SOF 39.  The characteristics Chief Counsel McCown and Deputy Chief Counsel

Rutledge sought in an ideal candidate for the position were aptitude for leadership, ability

to interact effectively with Agency leaders, litigation skills, and experience in

enforcement policy.  *Id*.

McCown and Rutledge believed that Plaintiff, whose primary responsibilities

involved regulatory affairs, should not be offered this position.  SOF 40, 43.  They

believed she had not demonstrated an ability to communicate well with the Agency

heads, lead a program, recognize key issues or make strategic plans such as is necessary

to manage a program.  SOF 40.  In addition, Plaintiff did not have either litigation

experience working with the Department of Justice, or any particular expertise in the

enforcement area.  SOF 40.  In sum, Plaintiff did not possess any characteristics that gave

her a clear advantage either in the management, leadership, communication, or

substantive areas.  *Id*.  Plaintiff had not stepped out as a leader in the office, but rather had been very much focused on assignments rather than showing further initiative. SOF 41.

McCown and Rutledge first offered Sue Lawless the position of Assistant Chief Counsel for Enforcement and Litigation at FMCSA because she had both the relevant program and policy background as well as the leadership and communication abilities the selecting officials sought in an ideal candidate.  SOF 45.  When she turned down the position, management offered the position to Brian Yonish because of his leadership, supervisory, and communication abilities.  SOF 46.

     I.    <u>Awards and Bonuses</u>

The distribution of awards and bonuses for attorneys in the Office of Chief Counsel from 2000 to 2004 does not raise a concern regarding sex or race discrimination. SOF 48.  Plaintiff received a $1500 Special Act or Incentive Award in 2004, representing one of the highest monetary awards for a permanent member of Counsel's staff for that year.  SOF 47.

### III.  **ARGUMENT**

**A.    Summary Judgment Standard**

Summary judgment is appropriate when the record fails to demonstrate a genuine issue of material fact.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).  The proper inquiry is whether there is a need for a hearing, *i.e.*, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.  *Id*.

Although in considering a motion for summary judgment the court must draw all justifiable inferences in favor of the non-moving party, *id*. at 255, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). When the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of fact. *Scott v. Harris*, _ U.S. _, 127 S. Ct. 1769 (2007) (finding that it was improper for the lower court to view facts in the light most favorable to the nonmoving party where those facts were clearly contradicted by the record and accordingly did not raise a genuine issue of fact).

Thus, the nonmovant cannot simply rely on "metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Nor can the nonmovant's "conjecture and surmise [or] mere 'conclusory allegations of discrimination, without more' [be] sufficient to defeat a motion for summary judgment." *Carney v. American University*, 960 F. Supp. 436, 439 (D.D.C. 1997) (*quoting Grigsby v. Reynolds Metals Co*., 821 F.2d 590 (11th Cir. 1987).

A plaintiff must present substantial and credible evidence of discrimination to survive a motion for summary judgment. *See Greene v. Dalton*, 164 F. 3d 671, 675 (D.C. Cir. 1999) ("accepting [some] conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."); *Carpenter v. Federal Nat'l Mortgage Ass'n*, 165 F. 3d 69, 72 (D.C. Cir. 1999) (if plaintiff merely shows that the legitimate nondiscriminatory reason offered by the employer is a pretext

10

for a decision intending to cover up an unsavory reason – but one that is not illegal under the antidiscrimination law, the plaintiff is not entitled to try issues of fact, and summary judgment for the employer is appropriate).   A plaintiff must establish "that a reasonable jury could conclude...that the adverse employment decision was made for a discriminatory reason." *Lathram v. Snow,* 336 F.3d 1085, 1088 (D.C. Cir. 2003).

Moreover, "the inquiry involved in ruling on a motion for summary judgment… necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 at 252.  In a Title VII discrimination case, the applicable analytical framework is the three-stage, burden-shifting test set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  Under this test, the plaintiff must initially prove by a preponderance of the evidence a *prima facie* case of unlawful discrimination.  If the plaintiff makes this showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  If the employer makes this showing, the burden then returns to the plaintiff to show that the employer's reason is pretextual.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).  The ultimate burden of persuasion remains at all times on the plaintiff to prove that the employer intentionally discriminated against her.  *Burdine*, 450 U.S. at 253.

Accordingly, a summary judgment decision is appropriate when the undisputed facts show: (1) that the plaintiff has failed to establish a *prima facie* case of discrimination; or (2) the plaintiff has failed to present probative evidence that the defendant's stated legitimate reasons for its actions were a pretext for discrimination.  As discussed below, the evidence demonstrates that the Agency should be granted summary

11

judgment on all issues, as Plaintiff has failed to establish a *prima facie* case of discrimination and/or has failed to present any probative evidence that the Agency's legitimate non-discriminatory reasons are pretextual.

Alternatively, Plaintiff has failed to raise a genuine issue of fact as to the mixed motive theory of liability under Title VII. In other words, Plaintiff has not raised a genuine issue of fact that would lead a trier of fact to conclude that discrimination or retaliation was a motivating factor in the Agency's decisions. In addition, where Plaintiff has failed to exhaust by neglecting to present certain issues to an EEO Counselor, those claims must be dismissed.

### B.    <u>Executive Potential Program Nomination</u>

Plaintiff alleges that FMCSA discriminated against her because of her race and sex by denying her request to be nominated for the EPP for FY 2004. SOF 3. In support of her claim, Plaintiff asserts that management nominated a younger male Caucasian employee for the EPP in FY 2003. Complaint ¶ 21; Deposition of Elaine Walls ("Walls Dep.") at 29. As discussed below, the evidence demonstrates that the Agency should be granted summary judgment on this claim as the Plaintiff cannot establish a *prima facie* case of discrimination and cannot demonstrate that the Agency's legitimate non-discriminatory reasons constitute pretext for race or sex discrimination.

1.    Plaintiff Cannot Establish a *Prima Facie* Case of Race or Sex Discrimination.

Plaintiff bears the initial burden of demonstrating actions by her employer from which illegal discrimination can be inferred. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576 (1978). The essential elements of a *prima facie* case are flexible and will

12

vary depending upon each factual situation. *Id*. The essential elements of a *prima facie* case of race or sex discrimination are: (1) Plaintiff is a member of a protected class; (2) she was subject to an adverse employment action; and (3) the unfavorable action gave rise to an inference of discrimination. *Stella v. Mineta*, 284 F. 3d 135, 145 (D.C. Cir. 2002).

Plaintiff cannot satisfy the third element of her *prima facie* case since she can present no evidence to give rise to an inference of discrimination other than the fact that the Agency nominated Caucasian attorney Joe Solemey for the EPP in the preceding year. However, because Plaintiff's claim does not involve the contention that she should have been nominated in FY 2003, when the Agency nominated Mr. Solemey, he is not an appropriate comparator. Since the Office of Chief Counsel did not nominate anyone for the program in FY 2004, the year at issue, Plaintiff cannot avail herself of comparative evidence to raise an inference of discrimination.

Even if Mr. Solemey were chosen for the EPP in FY 2004 rather than Plaintiff, Plaintiff is not similarly situated to him so as to raise an inference of discrimination. To be similarly situated, plaintiff must establish that her employment situation was similar in all relevant regards to those with whom she seeks comparison. *See Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) ("A plaintiff ... must demonstrate that all of the relevant aspects of her employment situation were nearly identical to those" of her comparables); *Phillips v. Holladay Prop. Servs.*, 937 F.Supp. 32, 37 (D.D.C. 1996) ("it is fundamental that to make a comparison of ... plaintiff to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated *in all respects.*").

13

By comparison, Mr. Solemey's performance at the time he was nominated for the EPP had earned recognition throughout the DOT. Mr. Solomey was nominated as FMCSA Employee of the Year in 2001 for his contribution to FMCSA's enforcement program. SOF 11. In 2002, he received the Lawrence R. Schneider Award for outstanding professional abilities exhibited at DOT. SOF 10. This award is presented by the Secretary of Transportation annually to a DOT lawyer and has equal status with the Secretary's Award for Meritorious Achievement (Silver Medal). *Id.* Plaintiff's performance, however, has not been similarly recognized as outstanding. SOF 12. While Plaintiff has met expectations and fulfilled the functions of her position, she has not earned the same caliber of prestigious awards and accolades as Mr. Solomey.

2.     Plaintiff Cannot Demonstrate That the Agency's Legitimate Nondiscriminatory Reason for Not Nominating Her for the EPP Was Pretext for Sex or Race Discrimination.

Even if Plaintiff were able to establish a *prima facie* case of sex or race discrimination with respect to the EPP nomination, the Agency is still entitled to judgment as a matter of law since Plaintiff has no evidence indicating the Agency's legitimate, nondiscriminatory reasons for not nominating her are in fact a pretext for discrimination. Once a defendant comes forward with a legitimate, nondiscriminatory reason for its action, the presumption of the *prima facie* case "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 511. Moreover, an "employer need not come forward with affirmative evidence showing that its actions were not discriminatory." *Paquin v. Federal National Mortgage Association*, 119 F. 3d 23, 29 (D.C. Cir. 1997). "Rather, it is the plaintiff who must offer evidence that the action was discriminatory." *Id.* (*citing Hicks*, 509 U.S. at 511).

14

The Agency has articulated legitimate, nondiscriminatory reasons for not nominating Plaintiff for the EPP in FY 2004. Management did not believe it to be in the best interests of the office to nominate a candidate in FY 2004. SOF 14. Mr. Solomey's absence in the prior year due to his participation in the EPP had placed a strain on the office's limited resources and staffing levels. *Id.* Because EPP participation requires the employee to spend a significant amount of time on details to other agencies and on assignments specifically for the EPP, management did not wish to tax the same division two years in a row. SOF 8, 14. In addition, management felt it highly unlikely that a nominee from the Chief Counsel's Office would be selected two years in a row since the EPP is an agency-wide program. SOF 14. Therefore, management declined to nominate any attorney for the EPP in FY 2004.[4] *Id.*

Once the Agency has carried its burden of production, Plaintiff must meet her burden to prove that the Agency's legitimate, non-discriminatory reasons were not its true reasons but rather were pretextual. *See McDonnell Douglas*, 411 U.S. at 802-04; *Burdine*, 450 U.S. at 252-53. "[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center*, 509 U.S. at 515. "It is not enough, in other words, to disbelieve the employer; the factfinder must believe the plaintiff's

---

[4]     The nomination process changed in FY 2005 in that the Chief Counsel no longer served as a filter for the submissions of applications to the EPP, but allowed all attorneys who so desired to submit their applications. O'Malley Declaration at ¶ 20. Plaintiff did not choose to submit her application, casting doubt on the legitimacy of her desire to participate in the EPP program at all. *See id.* at 21; *compare* Walls Dep. at 96 (as of Aug. 11, 2005, Plaintiff claimed that she was not putting together information for future participation in the EPP because she did not believe that "management would allow me to be nominated for that program.")

explanation of intentional discrimination." *Id*. at 519.  Plaintiff bears the ultimate burden of persuasion on the issue of whether the Agency intentionally discriminated against her. *Burdine*, 450 U.S. at 253.

While the Plaintiff may disagree with the Agency's decision not to nominate her for the EPP in FY 2004, the fact-finder may not "second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Fischback v. District of Columbia Dep't of Corrections*, 86 F. 3d 1180, 1183 (D.C. Cir. 1996) (*quoting Milton v. Weinberger*, 696 F. 2d 94, 100 (D.C. Cir. 1979) ("It is axiomatic that under the statutory scheme of Title VII … an employer may make an employment decision for a good reason, a bad reason, or no reason at all so long as racial or other discriminatory distinctions do not influence the decision."), *aff'd* 595 F. 2d 888 (D.C. Cir. 1979).  As there is simply no probative evidence to even suggest that these legitimate, nondiscriminatory reasons were pretext for discrimination, the Agency is entitled to judgment as a matter of law on this issue.  The Agency is also entitled to judgment as a matter of law under a purported mixed motive theory of liability because the only reason Plaintiff was not selected for the EPP was the legitimate concerns for the Agency's needs.

### C.     Career-Ladder Promotion to GS-15

Plaintiff alleges that FMCSA discriminated against her because of her race and sex when she did not receive a career-ladder promotion to a GS-15 level in 2004.  SOF 3.  In reciting her purported evidence for this assertion, she erroneously states that Joe Solomey and Bob Brown received career-ladder promotions in FMCSA to GS-15s.  Walls Dep. at 33, 36-37.  She also claims that her years of experience and performance

16

should have warranted a career-ladder promotion. *Id.* at 37-38. The evidence, however, demonstrates that the Agency should be granted summary judgment on this claim as the Plaintiff cannot establish either a *prima facie* case of discrimination or that the Agency's legitimate non-discriminatory reasons constitute pretext for race or sex discrimination.

        1.        Plaintiff Cannot Establish a *Prima Facie* Case of Race or Sex Discrimination.

To establish a *prima facie* case of discriminatory refusal to promote, Plaintiff must show that: (1) she is a member of a protected class; (2) she sought and was denied a promotion for which she was qualified; and (3) other employees of similar qualifications were promoted at the time her request for promotion was denied. *Taylor v. Small*, 350 F. 3d 1286, 1294 (D.C. Cir. 2003). Plaintiff cannot satisfy the third element of her *prima facie* case, since she has no evidence that other employees of similar qualifications were promoted at the time her request was denied; in fact, the Chief Counsel's office has never promoted any employee to a non-supervisory GS-15 position.[5] SOF 22. *See Maye v. Gonzales,* No. Civ. A. 00-0271, 2005 WL 3544292, at *7 (D.D.C. Dec. 27, 2005) (finding that the record did not support an inference of discrimination on plaintiff's promotion claim "because it is wholly devoid of any direct proof of discrimination and also lacks any proof outside of plaintiff's own conclusory assertions that similarly situated employees who were not African-American were granted promotions to the GS-13 level at that time.").

---

[5] The non-supervisory GS-15 employees in FMCSA received their GS-15 promotions when they worked for FHWA, and maintained those levels when they transferred to FMCSA. SOF 23-25. Plaintiff transferred to FMCSA from FHWA as a GS-14, and was not recommended for promotion to GS-15 while at FHWA. SOF 2, 21.

2.    Plaintiff Cannot Demonstrate That the Agency's Legitimate,
Nondiscriminatory Reasons for not Promoting Her to a GS-15
Were Pretext for Sex or Race Discrimination.

Even if the Plaintiff could establish her *prima facie* case, the Agency had

legitimate, nondiscriminatory reasons for declining to promote her to a GS-15. The

Chief Counsel's office has very high standards for promotion to the GS-15 level, and

applies them equally and fairly to all attorneys in the office.   SOF 17.   These criterion

for promotion are based upon long-standing Departmental policy which requires

attorneys promoted to the GS-15 level to demonstrate "exceptional or outstanding"

performance" and to be "experts in their area" and  "truly distinguished."  *Id.*

Even Joe Solomey, a recipient of the Schneider award, nominee for FMCSA

employee of the year, and Caucasian man, could not perform to the satisfaction of

FMCSA management such as to merit a promotion to GS-15, causing him frustration he

expressed to Plaintiff, and left the office for another position.  SOF 25.  Robert Brown,

another Caucasian man who had already been a GS-15 at his prior agency but had taken a

downgrade to a GS-14 when hired by FMCSA, also left FMCSA.  SOF 24.  Thus,

Plaintiff was in good company.  The Chief Counsel's Office has never promoted a GS-14

attorney to a non-supervisory GS-15.  SOF 22.

Plaintiff's first, second and third-level supervisors all agreed that Plaintiff's

performance did not justify a promotion to the GS-15 level.[6]  SOF 18-20.  While Plaintiff

performed satisfactorily at the GS-14 level, the consensus among Plaintiff's supervisors

was that Plaintiff needed to develop and improve several aspects of her performance

---

[6] Plaintiff's lack of qualification to be promoted to a GS-15 renders her unable to satisfy
the second prong of the *prima facie* case as well.

18

before she reached the performance level required of a GS-15. *Id.* Among other factors, management believed that Plaintiff's knowledge of agency programmatic, policy and regulatory areas, as well as her initiative and leadership skills, did not rise to the level expected of an attorney performing at the GS-15 level. SOF 19. In her supervisors' judgment, Plaintiff lacked an in-depth knowledge and understanding of major agency programmatic regulatory initiatives, including the enforcement program, Motor Carrier Safety Assistance Program and commercial regulatory areas. *Id.* This lack of thorough knowledge impeded Plaintiff's ability to approach regulatory development and review assignments with full independence and with an adequate appreciation for the operative legal, policy and substantive considerations. *Id.* In addition, in her supervisors' judgment, Plaintiff's communication skills and lapses in diplomacy limited her ability to perform at a GS-15 level. *Id.* In this regard, and as early as 2001, her supervisors had suggested that Plaintiff take communication classes to enhance her communication and diplomacy skills. SOF 30.

This type of evidence (assessments by Plaintiff's superiors of her performance) is fully supportive of a non-discriminatory denial of a promotion. *See Mbulu v. Bureau of National Affairs, Inc.*, No. Civ. A 04-1540, 2006 WL 469971, at *9 (D.D.C. Feb. 28, 2006) (defendant successfully asserted through testimony of plaintiff's first and second-level supervisors that the "satisfactory"-rated plaintiff did not meet its criteria for a merit-based grade increase, and was denied a promotion for a non-discriminatory reason warranting summary judgment; in general, defendant did not promote an employee to the next higher grade solely because that employee performed adequately or satisfactorily at his or her current grade, but rather required overall ratings of above average or

19

exceptional in the requisite job performance categories for promotion); *Maye*, 2005 WL 3544292 at *7-9 (concluding that the defendant had successfully proffered non-discriminatory justifications for its decision not to promote plaintiff to a GS-13, namely that "several supervisors did not feel that plaintiff exhibited, at that time, the depth of experience and level of performance that is characteristic of a GS-13 level agent," and that "Plaintiff's own subjective assessment of his credentials and performance at the time that the promotion was denied are not sufficient to establish pretext.")

"Where there is no evidence that illegal discrimination played a role in an employee's non-promotion, the Court will not sit as a 'super-personnel department that reexamines an entity's business decisions.'" *Nurriddin v. Goldin*, 382 F. Supp.2d 78, 101 (D.D.C. 2005) (*quoting Fischback*, 86 F. 3d at 1183) (internal quotations omitted). While Plaintiff may disagree with the promotion policies and high standards that exist in the Chief Counsel's Office and with management's assessment of her work performance, she can present no evidence to suggest that the Agency's legitimate nondiscriminatory reasons for not promoting her were pretext for race or sex discrimination.  The record is devoid of even the slightest indication that FMCSA, through managers such as Ms. Rutledge, used race or sex in any way to differentiate among employees when applying GS-15 promotion standards.  Thus, the Agency should be granted summary judgment on this issue on any theory of liability under Title VII.

**D.     FY 2003 Performance Appraisal**

Plaintiff alleges that the Agency retaliated against her when she received a rating of "meets or exceeds requirements" rather than "outstanding" on her FY 2003 performance appraisal, which she received in February 2004.  SOF 4.  To establish a

*prima facie* case of retaliation, the plaintiff must show "(1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two." *Mitchell v. Baldridge,* 759 F.2d 80, 86 (D.C. Cir. 1985) (*quoting McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C. Cir. 1984)).  Plaintiff may also establish retaliation by showing that the Agency's actions "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination." *Rochon v. Gonzalez*, 438 F.3d 1211, 1219 (quoting *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005).

       1.     Plaintiff Cannot Make Out a *Prima Facie* Case of Retaliation.

"Just as lateral transfers do not ordinarily constitute 'adverse actions,' a similarly thick body of precedent [] refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions."  *Brown v. Brody*, 199 F.3d 446, 457-458 (D.C. Cir. 1999); *see also Russell v. Principi*, 257  F.3d 815, 819 (D.C. Cir. 2001) ("In most circumstances performance evaluations alone at the satisfactory level or above should not be considered adverse employment actions."); *Baloch v. Norton*, _ F. Supp.2d, 2007 WL 2774507, *11 (D.D.C. 2007)(noting that a reasonable person would not have been deterred from engaging in protected activity and that plaintiff was not in fact deterred because he lodged more EEO complaints).  Given that Plaintiff cannot allege any other adverse result from her "meets or exceeds requirements" rating, such as the loss of a performance award, her FY 2003 rating is not "adverse in an absolute sense."[7]

---

[7]  Plaintiff received a performance bonus of $1,500 in 2004, as compared to $550 and $650 in 2003 and 2002.  Her 2004 performance bonuses were higher than those received by white males Steve Farbman, Bryan Downey, Thomas Vining, Kirkland Foster, Florian Chess, Kyle Levine, Alan Strasser, and Marc Rigrodsky.  *Id.*

*Weber v. Battista*, __F.3d__, 2007 WL 2033254, at *6 (D.C. Cir. July 17, 2007).

Moreover, Plaintiff's FY 2003 rating did not decrease from the year before; she received

an equivalent "meets or exceeds requirements" rating on her FY 2002 performance

appraisal, prior to the time she complained of discrimination. SOF 26. Therefore,

Plaintiff cannot demonstrate the second or third element of a *prima facie* case of

retaliation based on her FY 2004 performance rating.

> 2.    Plaintiff Has No Evidence of Pretext With Regard to the
>        Agency's Fair and Merit-Based Assessment of Her
>        Performance.

Even if Plaintiff were able to establish a *prima facie* case of retaliation with

respect to her FY 2003 performance appraisal, the Agency is still entitled to judgment as

a matter of law since plaintiff can present no evidence indicating that the Agency's

assessment of Plaintiff's performance is pretext for discrimination. As set forth above,

Plaintiff performs as a competent and capable, but not extraordinary, GS-14 attorney.

Plaintiff's FY 2003 rating of "meets or exceeds requirements" was based upon

Plaintiff's performance as assessed and clearly described in her first-level supervisor Ms.

O'Malley's accompanying narrative. SOF 29. Ms. O'Malley's statements unequivocally

support the assigned rating. A comparison of the language used in Plaintiff's 2003

performance appraisal narrative with that in the narratives accompanying the

"outstanding" ratings received by attorneys Mike Falk and Charles Medalen in that time

period clearly confirms that Plaintiff was performing at a far less exemplary level.

Plaintiff's narrative, consistent with a description of an average to above average

performer, uses words such as "effectively," "measurably," "capably," and

"methodically" to describe her work performance. SOF 28. Noticeably absent from the

O'Malley write-up are words that would support an "outstanding" rating, such as "outstanding," "exceptional," "peerless," extraordinary," "superior," "remarkable," or "exceeded expectations."  *Id.*  As clearly articulated by Plaintiff's first-level supervisor, Plaintiff was a competent GS-14 attorney but did not exhibit the type of distinguished, superior performance and leadership exhibited by Messrs Falk,  Medalen and Solomey.

Thus, Plaintiff has presented no more than "conjecture and surmise (and) mere conclusory allegations of discrimination…." *Carney*, 960 F.Supp. at 439.  She has not demonstrated a genuine issue of material fact with regard to the Agency's legitimate, nondiscriminatory reasons for assessing her performance as adequate but not "outstanding" and summary judgment should be decided in favor of the Agency. Similarly, there is no factual dispute and, certainly not a genuine one, that any improper motive informed Plaintiff's appraisal that would raise even a remote suggestion of mixed motive retaliation.

### E.    Denial of Training

Plaintiff contends that the Agency denied her the ability to attend an employment law training class on the basis of her race and sex, and did not allow her to attend a "Residential Workshop for Administrative Support Staff" in Florida in retaliation for her complaints of discrimination.  SOF 3, 5.  Neither of these actions amount to actionable adverse actions, and Plaintiff failed to raise the second allegation with an EEO Counselor.  Moreover, she cannot refute the Agency's legitimate, non-discriminatory reasons for its actions and demonstrate that the real motivation was racial, sexual, or retaliatory animus.

23

 

      1.      Denial of Employment Law Course

          a.      Plaintiff Fails to State an Adverse Action and Thus Cannot Make Out a *Prima Facie* Case.

It is a well-accepted principle that a Title VII plaintiff must show that she has suffered "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that [she] has suffered objectively tangible harm." *Brown*, 199 F.3d at 457. Plaintiff's work did not involve the practice of employment law, and denial of training in this area did not in any way adversely affect the terms, conditions, or privileges of her employment. *See* SOF 31, 41. Thus, she cannot establish a *prima face* case of discrimination. *See Stella*, 284 F.3d at 145. Under the *Rochon* rubric, a reasonable person would not have been dissuaded from engaging in protected activity as a result of this appraisal.

          b.      Plaintiff Cannot Demonstrate That The Agency's Reason for Denying the Course Is Pretext for Discrimination

Because Plaintiff's job duties did not include handling employment cases, and Plaintiff did not agree to work on employment cases so that the training would benefit the Agency, Deputy Chief Counsel Rutledge did not approve Plaintiff's attendance at the employment law course. SOF 31-32. Ms. Rutledge made this decision consistently with her other determinations regarding training; she has never approved training for any employee in an area unrelated to the employee's duties. SOF 33. Plaintiff cannot refute this legitimate, non-discriminatory reason for the Agency's actions, and therefore this

claim must fail as a matter of law. Also, the only consideration in this regard was the Agency's legitimate nondiscriminatory objectives.

        2.      The Cancellation of the Training in Florida

            a.      Plaintiff Has Failed to Exhaust Her Administrative Remedies by Not Obtaining EEO Counseling on Her Retaliation Claim Regarding Training

Federal regulations require that Plaintiffs seek EEO counseling on all claims brought under Title VII. 29 C.F.R. §§ 1614.105(a)(1), 1614.202. "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. §1614.105(a)(1). A federal agency's administrative EEO office "shall dismiss" the complaint insofar as it "raises a matter that has not been brought to the attention of a Counselor and is not like or related to a matter than has been brought to the attention of a Counselor." 29 C.F.R. § 1614.107(a)(2); *see also Nichols v. Truscott*, 424 F. Supp.2d 124, 134 (D.D.C. 2006) (although the federal court complaint alleged facts going well beyond those underlying plaintiff's administrative complaint, the court limited her discrimination and retaliation claims to the six claims she listed in her administrative complaint.)

However, "[a] complainant may amend a complaint at any time prior to the conclusion of the [administrative] investigation to include issues or claims like or related to those raised in the complaint." § 1614.106(d). "As the EEOC has interpreted this provision, a new claim is 'like or related to' a pending claim if it 'could have reasonably been expected to grow out of the original complaint during the investigation.'" *Weber*, 2007 WL 2033254, at *3 (*citing Core v. Brownlee*, 2004 WL 189570, at *1 (E.E.O.C.

25

Jan. 23, 2004)).  If the new claim meets this requirement, then "'[t]here is no requirement that the amendment be subject to counseling.'"  *Weber* at *3.

Plaintiff's claims regarding training raised with the EEO Counselor involved alleged sex and race discrimination, not retaliation.  Thus, she has no basis to argue that her assertions regarding the Florida training are "like or related to" a pending claim. *Accord Park v. Howard University*, 71 F.3d 904, 908 (D.C. Cir. 1995) ("the goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship") (internal citations omitted).

        b.    Plaintiff Cannot Show that the Cancellation of the Training Constituted an Adverse Action, and Thus Cannot State a *Prima Facie* Case.

As stated above, to establish a retaliation claim, the plaintiff must show "(1) that she engaged in a statutorily protected activity; (2) that the employer took a materially adverse action; and (3) that a causal connection existed between the two." *Mitchell,* 759 F.2d at 86.  Even more so than with the employment law class, the denial of Plaintiff's attendance at the "Residential Workshop for Administrative Assistants" cannot possibly be a materially adverse action.  Given that this training, on its face, does not benefit Plaintiff's career as an attorney in any way, she is left only with the argument that she would have liked to travel to Florida and stay at a resort on the government's dime.  The fact that she could not do so does not transform FMCSA's conduct into an actionable adverse action under Title VII.  Under *Rochon*, cancellation of this trip would be so

26

insignificant to the reasonable person that such a person would not be dissuaded from pursuing a valid claim of retaliation.

        c.      Plaintiff Cannot Establish that the Agency's Legitimate, Reason for Canceling the Training was Pretext for Discrimination.

Assuming that Plaintiff were able to establish a *prima facie* case of retaliation, the Agency has articulated a legitimate, nondiscriminatory reason for canceling the second session of the training in Florida for its attorneys.  It is undisputed that the September training, which Plaintiff was scheduled to attend, was postponed and then canceled because of Hurricane Ivan.  SOF 37.   Deputy Chief Counsel Rutledge decided not to reschedule the training because it had become evident that the training was not appropriate for attorneys; rather it was specifically geared to support staff.  SOF 35, 37.  Ms. Rutledge did not become aware of this until she was informed of it by the two attorneys from the office who had attended the identical training in July in New Orleans.  SOF 35.  When the attorneys returned from New Orleans they provided Ms. Rutledge the training agenda and advised that, as stated in the agenda ("Residential Workshop for Administrative Support Staff"), the training was intended for support staff and was not worthwhile for attorneys.  *Id.*  Thus, once the September Florida training was canceled a second time, not to be offered again until the next year, Ms. Rutledge made the decision not to reschedule the training based on her judgment that training funds should be spent on courses that provided greater benefit to the employees and the office.  SOF 36, 37.

Plaintiff does not dispute Ms. Rutledge's explanation or the fact that her two colleagues from the office informed Ms. Rutledge that the training was inappropriate for attorneys.  Walls Dep. at 83.  She stubbornly insists that it did not matter if the training

was inappropriate for attorneys, and that, no matter what, "[b]ecause [the two male attorneys] went" to the administrative support staff workshop, she and the other attorney scheduled for the same training in Florida should have been allowed to go as well.  *Id*. According to Plaintiff, she should have been allowed to attend the training for administrative support staff "because it was authorized" and "[i]f your boss tells you you can go to one of five resort areas for training and then she ways I'm putting this up for everybody to boost morale, and then two people can do but the other people can't… That's not fair."  *Id*.

While Plaintiff may disagree with Ms. Rutledge's decision to conserve training funds and to not reschedule the inapplicable Florida training, "courts are not free to second-guess an employer's business judgment."  *Brown*, 199 F.3d at 458-59.  Plaintiff offers nothing beyond her own conjecture to refute the Agency's legitimate, non-discriminatory reasons for its decisions.  "[A] plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding an employer's articulated reasons for its decisions and avoid summary judgment."  *Id.* (internal citations omitted).  Nor has a genuine issue been raised that any improper motive drove the decision to cancel Plaintiff's trip under a mixed motive rubric.  Thus, the Agency is entitled to judgment as a matter of law on this issue.

F.    **McCown Refusal to Participate in Mediation**

Plaintiff alleges that the Agency retaliated against her when Chief Counsel McCown did not participate in mediation after Plaintiff contacted an EEO Counselor. First, challenges to the administrative process are not actionable under Title VII since review is *de novo* before this court.  *Chandler v. Roudebush, 425 U.S. 840 (1976).*  Not to

mention that this is a frivolous allegation because the Agency did participate in the

mediation, with Deputy Chief Counsel Rutledge as the designated official.  Ex. 22.

Plaintiff cannot identify any adverse effect whatsoever upon her from the fact that the

Agency participated with Ms. Rutledge rather than with Mr. McCown.  *Brown*, 199 F.3d

446 at 455 ("there must [] be some kind of injury for a federal employee to state a claim"

under Title VII).  Thus, Plaintiff cannot establish a *prima facie* case under the *McDonnell*

*Douglas* framework.  *See id*.

> ### G.    Non-Selection for Assistant Chief Counsel for Enforcement and Litigation

Plaintiff alleges that FMCSA acted with a retaliatory motive when it did not

select her for the GS-15 supervisory position of Assistant Chief Counsel of the

Enforcement and Litigation Division.  However, Plaintiff did not seek EEO counseling

on this claim within 45 days of the event, but rather simply attempted to amend her

formal complaint of discrimination with the Agency.  Because the claim is not "like or

related" to her other exhausted claims, she cannot now pursue it in this court.  Moreover,

Plaintiff cannot meet her burden of persuasion to prove that the Agency's legitimate,

nondiscriminatory reasons for failing to select her for the supervisory, GS-15 position of

Assistant Chief Counsel for Enforcement and Litigation constituted pretext for

discrimination.  Her only basis for her allegations is her own, unsupported opinion about

her qualifications.  Walls Dep. at 62-63.

> 1.    Plaintiff Has Failed to Exhaust her Administrative Remedies by Not Obtaining EEO Counseling on Her Non-Selection Claim.

Plaintiff failed to exhaust her claim concerning her non-selection because she

added it by amending her formal administrative complaint without seeking informal

counseling with regard to that claim within 45 days of the event.  The claim is not by any

stretch of the imagination "like or related" to her claims raised before the EEO counselor

regarding the EPP program, career-ladder promotion to GS-15, training, lack of

participation of the Chief Counsel in mediation, or her FY 2003 performance evaluation,

and therefore does not fall within the exception allowing no EEO counseling.  SOF 3, 4.

The Supreme Court's holding that "[e]ach discrete discriminatory act starts a new clock

for filing charges alleging that act," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

113 (2002); *cf. Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162, 2166-72

(2007), applies in this circumstance to preclude Plaintiff's cause of action regarding this

allegedly retaliatory act occurring after the filing of her formal complaint.

> 2.    Plaintiff Cannot Establish that the Agency's Explanation for not
> Selecting Her for the Position is Pretext for Retaliation.

The characteristics Chief Counsel McCown and Deputy Chief Counsel Rutledge

sought in an ideal candidate for the GS-15 supervisory position of Assistant General

Counsel of Enforcement and Litigation selection were aptitude for leadership, ability to

interact effectively with Agency leaders, litigation skills, and experience in enforcement

policy.  SOF 39.  They did not believe that Plaintiff was the top candidate for the position

because she did not have any characteristic that gave her a clear advantage either in the

management, leadership, communication, or substantive areas.  SOF 40.  She had not

demonstrated an ability to communicate well with the Agency heads, lead a program,

recognize key issues or make strategic plans such as is necessary to manage a program.

*Id.*  In addition, Plaintiff did not have either litigation experience working with the

Department of Justice, or any particular expertise in the enforcement area.  *Id.*  Plaintiff

had not stepped out as a leader in the office, but rather had been very much focused on assignments and not shown further initiative.  SOF 41.

Plaintiff's leadership, communication and diplomacy skills were not at the level necessary for a supervisory Assistant Chief Counsel position.  SOF 40-42.  While Plaintiff had knowledge of the agency's programs, her knowledge was not broad enough or of sufficient depth to outweigh these other lapses.  SOF 40.  Thus, while the ultimate selectee, Brian Yonish, may not have had knowledge of the motor carrier program, in the judgment of the selecting officials he more than made up for this with his considerable management experience, strong communication and leadership skills, and prior enforcement and litigation experience.  SOF 46.[8]

Plaintiff cannot present any probative evidence to even suggest that the Agency's legitimate, non-discriminatory reasons for not selecting her were pretext for retaliatory animus.  Plaintiff offers no evidence, other than her assessment of her own performance, to support her claim of discrimination.  *Oliver-Simon v. Nicholson*, 384 F. Supp.2d 298, 310 (D.D.C. 2005) ("plaintiff's evidence of her superior qualifications is based solely on her own assessment of her qualifications, which is generally not enough.")  A plaintiff who relies upon her qualifications as her sole evidence of pretext with regards to a selection decision must demonstrate that a reasonable employer would have found her to be "*significantly* better qualified for the job."  *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1294 (D.C. Cir. 1998) (*en banc*) (emphasis added); *see also Walker v. Dalton,* 94 F. Supp.2d 8, 16 (D.D.C.2000) ("slight questions of comparative qualifications do not

---

[8] Sue Lawless, the Agency's original choice for the position, had both the relevant program and policy background and the leadership and communication abilities the selecting officials sought in an ideal candidate.  SOF 45.

warrant a jury trial"). A plaintiff must make that showing in light of the teaching that the fact-finder "must respect the employer's unfettered discretion to choose among qualified candidates." *Fischback*, 86 F.3d at 1183.

Plaintiff here offers only conclusory statements and unsubstantiated allegations insufficient to withstand a summary judgment motion. *Carney v. American University,* 960 F. Supp. 436, 439 (D.D.C. 1997) (*quoting Grigsby v. Reynolds Metals Co*., 821 F. 2d 590 (11th Cir. 1987)). She has not demonstrated a genuine issue of material fact with regard to the Agency's legitimate, nondiscriminatory reasons for her non-selection, and summary judgment should be decided in favor of the Agency.

### H.    Awards and Bonuses.

Plaintiff purports to include a claim of disparate treatment in her Complaint with regard to the monetary awards received by Caucasian male attorneys in FY 2002. However, Plaintiff never raised these allegations with an EEO Counselor, foreclosing her ability to now make such assertions. Summary judgment should also be granted for the Agency because Plaintiff has failed to establish either a *prima facie* case of discrimination, failed to make the required initial showing that her work is "substantially equal" to another attorney outside her protected class, and failed to present any evidence to show that the Agency's legitimate nondiscriminatory reasons are pretextual.

1.    Plaintiff's Allegations Regarding Awards and Bonuses Should be Dismissed for Failure to Seek EEO Counseling.

Plaintiff never sought EEO counseling on her allegation that her Caucasian male counterparts received higher awards and bonuses in FY 2002. SOF 3, 4. Thus, as

32

discussed previously, these allegations must be dismissed for failure to exhaust administrative remedies.

> 2.     Summary Judgment is Appropriate Because Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination.

In order to establish a *prima facie* case of discrimination with regard to a discrepancy in bonuses and cash awards under Title VII, a plaintiff must either produce direct evidence of discrimination or prove that she received less pay than an individual not in her protected class who performed substantially equal work. *See, e.g., Buettner v. Arch Coal Sales Co., Inc.,* 216 F.3d 707, 719 (8th Cir. 2000), *cert. denied,* 531 U.S. 1077 (2001) (addressing whether two jobs entail equal skill, effort, or responsibility for purposes of a Title VII wage discrimination claim requires practical judgment on the basis of all the facts and circumstances of a particular case); *Anderson v. Zubieta,* 180 F.3d 329, 339 (D.C. Cir. 1999) (discussing prima facie case of wage discrimination based on race, where plaintiffs must show membership in a protected class and that they were performing work substantially equal to that of white employees who were compensated at higher rates than they were); *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1087 (3d Cir. 1996) (stating that in order to establish case of unequal pay based on race in violation of Title VII, plaintiffs must demonstrate that they were performing work substantially equal to that of employees of other races who were compensated at higher rates than they were).

In order for Plaintiff's work to be "substantially equal," the work must be "closely related" or "very much alike." In comparing work, the focus is on the primary duties of each job. *See Jenkins v. U.S.*, 46 Fed.Cl. 561, 563 (Fed. Cl. 2000) (internal

citations omitted). Comparison of executive or professional employees is problematic because of their specialized and unique areas of responsibilities; consequently, courts routinely reject the comparisons of executive or professional employees when used to prove that two employees perform equal work. *Ratts v. Bus. Sys., Inc.*, 683 F. Supp. 546, 550 (D.D.C. 1987).

Plaintiff alleges that her male co-workers receive higher monetary awards and bonuses, and that the "only reason for a male employee to receive a higher award" than Plaintiff has to be discrimination. Walls Dep. at 87. This general and conclusory allegation is insufficient to make out a *prima facie* wage discrimination claim under Title VII because Plaintiff does not point to any comparator receiving higher bonuses and awards who performs substantially equal work. Nor does Plaintiff present any other evidence that would raise the inference of discrimination.

First, while Plaintiff summarily claims that she received less bonuses and monetary awards than several male attorneys in FY 2002, the record shows that she has in fact received higher total bonus amounts than many of these individuals in other years. (*See* Table 1, *infra*.) For example, in 2004, she received higher total performance bonuses than Steve Farbman (white male), Bryan Downey (white male), Thomas Vining (white male), Kirkland Foster (white male), Florian Chess (white male), Kyle Levine (white male), Alan Strasser (white male), and Marc Rigrodsky (white male). In 2003, she received higher total performance bonuses than Kirkland Foster (white male), Thomas Vining (white male), and Marc Ridrodsky (white male) and a nearly identical bonus as Steve Farbman (white male) *Id*. and SOF 48 and accompanying Table.

34

Moreover, to the extent Plaintiff received less bonuses or monetary awards in FY 2002, there is absolutely no evidence to show that she performed substantially equal work for which a comparator outside her protected class received a bonus or award and she did not. The work in her Division is quite varied and no two attorneys perform the same functions. SOF 51. Moreover, there is a significant distinction in the complexity of the work that is performed by Plaintiff and the three male attorneys in her Division who received higher awards than she did (Medalen, Falk and Solomey), as well as the amount of independence, discretion and judgment that they exercised versus the Plaintiff. *Id*. These types of factors are particularly critical for professional positions and explain why courts almost always reject comparisons of professional employees. *See Ratts*, 686 F. Supp. at 550.

Accordingly, as there is no genuine issue of material fact regarding whether the Plaintiff's job duties are "substantially" equal to the job duties of employees not in her protected class, the Plaintiff cannot establish a *prima facie* case of discrimination and summary judgment should be granted to the Agency.


### I.      Leave Policies, Telecommuting

Plaintiff failed to state allegations regarding discriminatory leave policies or telecommuting in her informal complaint or amended informal complaint to the EEO Counselor. For the reasons stated above, she has failed to exhaust with regards to these claims and they must be dismissed.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, the Agency respectfully requests that summary judgment

be granted on Plaintiff's Complaint.

Respectfully submitted,

/s/

_____

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/

_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/

_____

KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington DC 20530
Phone: 202-307-0406
Fax: 202-514-8780
Kenneth.Adebonojo@usdoj.gov

*Of Counsel*:
RAYMOND C. FAY, D.C. Bar #188649
LAURA C. FENTONMILLER, D.C. Bar #450813
Constantine Cannon LLP
1627 Eye Street, N.W., 10th Floor
Washington, D.C. 20006
Phone: 202-204-3500

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of a copy of the Defendant's Motion for Summary

Judgment and all accompany documents were filed with the Clerk of the Court and

served upon counsel of record, via the ECF system on this 16th day of October, 2007.

_____s/_____
Kenneth Adebonojo
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington DC 20530
Phone: 202-307-0406
Fax: 202-514-8780
Kenneth.Adebonojo@usdoj.gov

37