## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELAINE WALLS,              )
                                  )
                Plaintiff,     )
                                  )
        v.                   )     Civil Action No.  06-1259 (TFH)
                                  )     ECF
MARY E. PETERS,         )
                                  )
              Defendant.   )
_____)

## DEFENDANT'S STATEMENT OF MATERIAL
## FACTS NOT IN GENUINE DISPUTE

Defendant Mary E. Peters, in her official capacity as Secretary of Transportation and by through counsel, submits this statement of material facts not in genuine dispute in support of her motion for summary judgment in the above-captioned Complaint.

**Background**

1.   In October 2000, Plaintiff Elaine Walls transferred from the Federal Highway Administration ("FHWA") Office of Chief Counsel to the Office of Chief Counsel at the Federal Motor Carrier Administration ("FMCSA") pursuant to a transfer of motor carrier functions from the FHWA to the newly created FMCSA. Ex. 1 (Affidavit of Elaine Walls ("Walls Aff.") at 1)).

2.   The Plaintiff was a GS-14 attorney at the FHWA and transferred to the FMCSA at the same grade and pay.  Ex. 2 Elaine Walls Deposition ("Walls Dep.") at 21.

**Procedural Background**

3.   On February 12, 2004 Plaintiff initiated contact with an EEO Counselor. Her allegations included claims of discrimination on the basis of her sex and race (African American) when she was denied: (1) a career-ladder promotion to a GS-15: (2) an opportunity to participate in the Executive Potential Program: and (3) other

opportunities for professional development in the Chief Counsel's Office.  Ex. 3 (Feb.

18, 2004 Equal Employment Opportunity Informal Complaint).

    4.   Plaintiff amended her pre-complaint intake on March 19, 2004 to add

claims of retaliation for: (4) Chief Counsel McCown's failure to participate in EEO

mediation; and (5) Plaintiff's failure to receive an "outstanding" rating on her FY

2003 performance evaluation.  Ex. 4 (Mar. 19, 2004 Addendum to the Pre-Complaint

Intake Interview Summary)

    5.   Plaintiff filed a formal complaint on May 13, 2004, and subsequently

amended it to include two claims of retaliation for: (6) failure to select Plaintiff in

September of 2004 for the Assistant Chief Counsel of Enforcement and Litigation

position; and (7) the cancellation by management of a pre-approved trip to Florida for

training in September 2004.  Ex. 5 (Apr. 2, 2004 Formal Complaint of

Discrimination); Ex. 6 (Amended Complaint).  Plaintiff did not seek EEO counseling

on either of these claims.  *See* Exs. 2 and 3.

**Executive Potential Program**

    6.   In December 2003, Plaintiff expressed an interest to her management in

being nominated for the Executive Potential Program ("EPP") in FY 2004.  Ex. 5 at p.

2 of attachment to Complaint.

    7.   The EPP is open to one FMSCA employee per year and FMCSA's training

office solicits nominations annually from all offices with the entire agency.  Ex. 7

(Affidavit of Judith Rutledge ("Rutledge Affidavit")) at 5.

93848.3

8.   The EPP program requires the participant to spend a significant amount of time on detail to other agencies and on assignments related to the EPP program.  Ex. 8 (Deposition of Suzanne O'Malley ("O'Malley Dep.")) at 186-88.

9.   The management of the Office of Chief Counsel has selected as a nominee only one candidate since the office was established in October 2000.  That nominee (Joe Solomey), who was employed in Plaintiff's division, was selected in FY 2003 as the FMCSA EPP participant.  Ex. 7 (Rutledge Affidavit) at 5.

10.  Mr. Solomey had received the 2002 Lawrence R. Schneider Award for outstanding professional abilities, which is presented by the Secretary of Transportation annually to a DOT lawyer and has equal status with the Secretary's award for Meritorious Achievement (Silver Medal).  Ex. 7 (Rutledge Affidavit) at 9.

11.  Mr. Solomey was nominated as FMCSA's Employee of the Year in 2001 for his contribution to FMCSA's enforcement program.  Ex. 7 (Rutledge Affidavit) at 9.

12.  Plaintiff has neither received the Lawrence R. Schneider Award, the Silver Medal nor been nominated as FMCSA Employee of the Year.  Ex. 7 (Rutledge Affidavit) at 9.

13.  FMCSA Chief Counsel management did not nominate any candidate for the EPP program from the Counsel's office in FY 2004.  Ex. 7 (Rutledge Affidavit) at 5.

14.  FMCSA Chief Counsel management determined that it was not in the best interests of the office to nominate a candidate for the EPP in FY 2004 because of the strain placed on the office's limited resources and staffing levels when an

3

93848.3

employee participates in the EPP program, and because they believed it highly unlikely that the agency would select its sole EPP participant from the Counsel's office in consecutive years.  Ex. 7 (Rutledge Affidavit) at 4-5; Ex. 9 (Deposition of Judith Rutledge ("Rutledge Dep.")) at 230; Ex. 10 (Deposition of Brigham McCown ("McCown Dep.")) at 37-38; Ex. 8 (O'Malley Dep.) at 189, 196-97.

**Career-Ladder Promotion to GS-15**

15.  In February 2004, the Plaintiff requested a career-ladder promotion to the GS-15 level.  Ex. 5 (Formal EEO Complaint).

16.  The Secretary of Transportation's January 13, 2005 memorandum on the Attorney Promotion Policy in DOT provides that attorney promotion potential to the GS-15 level should be based on "quality of performance as a lawyer" and that "substantial deference should be given to the judgment and recommendations of the attorneys who manage the attorney in question as to when promotions are warranted." *See* Ex. 11 (January 13, 2005 Memorandum on Attorney Promotion Policy at DOT).

17.  The Chief Counsel's office has very high standards for promotion to the GS-15 level, but the standards are applied equally and fairly to all attorneys in the office.  Ex. 8 (O'Malley Dep.) at 139-40, 245-47.  These criteria for promotion are based upon long-standing Departmental policy which requires attorneys promoted to the GS-15 level to demonstrate "exceptional or outstanding performance" and to be "experts in their area" and  "truly distinguished"...."  Ex. 12 (May 6, 1994 Memo on Promotion Policy); Ex. 10 (McCown Dep.) at 23 (an employee had to be either a supervisor or a recognized expert in some specialized field to be promoted to GS-15).

93848.3

18.  Plaintiff's supervisors in the Chief Counsel's Office at FMCSA did not believe that Plaintiff's performance justified a promotion to a GS-15; they believed that she needed to improve her performance in several areas in order to receive such a promotion.  Ex. 13 (Agency Response to Plaintiff's Interrogatories 1 and 2; Ex. 7 (Rutledge Affidavit) at 6-8, 11; Ex. 9 (Rutledge Dep.) at 191-92, 186-87,  224-25; Ex. 8 (O'Malley Dep.) at  201-02, 209-13, 218, 240, 262-63; Ex. 14 (Affidavit of Suzanne O'Malley ("O'Malley Affidavit")) at 3-4; Ex. 10 (McCown Dep.) at 17, 30-31, 165-66; Declaration of Suzanne O'Malley ("O'Malley Decl.") at ¶ 7, filed herewith.

19.  Management believed that Plaintiff's knowledge of agency programmatic, policy, and regulatory areas, as well as her initiative and leadership skills, did not rise to the level expected of an attorney performing at the GS-15 level.  In her supervisors' judgment, Plaintiff lacked an in-depth knowledge and understanding of major agency programmatic regulatory initiatives, including the enforcement program, Motor Carrier Safety Assistance Program and commercial regulatory areas.  This lack of thorough knowledge impeded Plaintiff's ability to approach regulatory development and review assignments with full independence and with an adequate appreciation for the operative legal, policy and substantive considerations.   Ex. 10 (McCown Dep.) at 31, 168-69; Ex. 8 (O'Malley Dep.) at 209-16; Ex. 9 (Rutledge Dep.) at 240.  In addition, in the judgment of Plaintiff's first-level supervisor, Plaintiff's communication skills and lapses in diplomacy limited her ability to perform at a GS-15 level.  Ex. 8 (O'Malley Dep.) at 213-15, 218.

20.  The Chief Counsel and Deputy Chief Counsel advised Plaintiff at a meeting in February 6, 2004 that they did not believe her performance met the level

93848.3

required of GS-15s in the office. Ex. 9 (Rutledge Dep.) at 240. Plaintiff's first level

supervisor and the Deputy Chief Counsel had another follow-up meeting with her on

February 10, 2004 where they discussed steps to be taken toward the goal of a

promotion to a GS-15. Ex. 8 (O'Malley Dep.) at 232-33.

21. Thomas Holian, Assistant Chief Counsel for Legislation and Regulations

at FHWA, and Plaintiff's first-level supervisor while at FHWA, did not recommend

Plaintiff for promotion to GS-15 in 2000. Ex. 15 (Affidavit of Thomas Holian) at **2**.

22. No employee in the FMCSA Chief Counsel's Office has ever received a

career-ladder promotion to a non-supervisory GS-15 position. Ex. 7 (Rutledge

Affidavit) at 7; Ex. 9 (Rutledge Dep.) at 138.

23. The non-supervisory GS-15s in the FMCSA Chief Counsel Office had

achieved their GS-15 grade level prior to transferring to the office from FHWA. Ex.

7 (Rutledge Affidavit) at 7; Ex. 9 (Rutledge Dep.) at 177.

24. Robert Brown was a GS-14 for his entire tenure at FMCSA and was not

promoted to a GS-15 at FMCSA. *See* Ex. 16 (SF-50 documenting Robert Brown's

resignation from FMCSA); Ex. 8 (O'Malley Dep.) at 167-68.

25. Joseph Solomey was a GS-14 for his entire tenure at FMCSA and was not

promoted to a GS-15 at FMCSA. Ex. 17 (Affidavit of Joseph Solomey) at 2. Mr.

Solomey believed he would never receive a promotion to a GS-15 while Ms.

Rutledge was the Deputy Chief Counsel, and ultimately left the office for another

position. *Id.*; Ex. 8 (O'Malley Dep.) at 279-80, 323-24; Ex. 2 (Walls Dep.) at 36.

**Performance Evaluation**

26. For the performance appraisal period ending September 30, 2002 (FY

93848.3

2002), Plaintiff received a rating of "meets or exceeds requirements." Ex. 18 (Elaine

Walls FY 2002 Performance Appraisal) at 1.

     27.  For the performance appraisal period ending September 30, 2003 (FY

2003), Plaintiff received a rating of "meets or exceeds requirements." Ex. 19 (Elaine

Walls FY 2003 Performance Appraisal) at 1.

     28.  All Chief Counsel Office employees received a rating of "meets or

exceeds requirements" for the period ending September 30, 2003 with the exception

of six employees (three males and three female) who received a rating of

"outstanding." Ex. 14 (O'Malley Affidavit) at 6.  Attorneys Mike Falk and Charles

Medalen are examples of employees whose performance warranted an "outstanding"

rating.  O'Malley Decl. at ¶¶ 6-9; Exs. A and B to O'Malley Decl. (Michael Falk and

Charles Medalen FY 2003 Performance Appraisals).

     29.  Plaintiff's FY 2003 rating of "meets or exceeds requirements" was based

upon her performance and work products as assessed and clearly described in her

first-level supervisor Ms. O'Malley's accompanying narrative.  Ex. 19 (Walls FY

2003 Performance Appraisal) at 1; O'Malley Decl. at ¶¶ 12-13.

**Training**

     30.  Plaintiff was scheduled to take seminars on improving communication

and diplomacy skills in 2001.  *See* Ex. 20 (Training Authorizations).  Her first and

second-level supervisors recommended that Plaintiff attend these courses due to her

tendency to be dictatorial or dismissive in her written and verbal communications.

O'Malley Decl. at ¶ 19.

     31.  Plaintiff's position as a GS-14 attorney in the office of the Assistant Chief

93848.3

Counsel for Regulatory Affairs does not in any manner involve EEO related work. Ex. 8 (O'Malley Dep.) at 78; Ex. 2 (Walls Dep.) at 76; Ex. 9 (Rutledge Dep.) at 59-62.

32. In 2004, Plaintiff expressed a desire to take an employment law course. Because Plaintiff's job duties did not include handling employment cases, and Plaintiff did not agree to work on employment cases so that the training would benefit the Agency, Ms. Rutledge did not approve the course. Ex. 9 (Rutledge Dep.) at 58-60; Ex. 8 (O'Malley Dep.) at 333-34 (O'Malley told Plaintiff that her workload in regulatory affairs would be adjusted accordingly to compensate for the fact that she would be taking on another case from another division).

33. The Deputy Chief Counsel has never approved training for any employee in an area unrelated to the employee's duties. Ex. 9 (Rutledge Dep.) at 64-65.

34. In 2004, it came to the attention of Deputy Chief Counsel Rutledge that a wellness/stress-relief-type workshop would be offered at various locations and times. Ex. 9 (Rutledge Dep.) at 309-10. Ms. Rutledge originally approved the training for all employees who wished to attend, because the office had plenty of travel money. *Id.*

35. Upon their return from the wellness workshop in New Orleans in July 2004, FMCSA Chief Counsel office attorneys Mike Falk and Charles Medalen advised Ms. Rutledge that the training was designed for administrative support staff and was not worthwhile for attorneys. Ex. 9 (Rutledge Dep.) at 310-11; Ex. 21 ("Residential Workshop for Administrative Support Staff"). Ms. Rutledge did not know the training was for administrative assistants and improper for attorneys until

93848.3

alerted to that fact by Mr. Falk and Mr. Medalian.  Ex. 9 (Rutledge Dep.) at 312-13;

Ex. 8 (O'Malley Dep.) at 285-87 (brochure posted prior to anyone attending did not

say training was for administrative support staff).

36.  Despite learning of the nature of the workshop, Ms. Rutledge did not

immediately cancel the training for the two attorneys, including Plaintiff, who had

signed up to take the same course in Destin, Florida on September 13-16, 2005.  Ex. 9

(Rutledge Dep.) at 311.

37.  Due to Hurricane Ivan, the Florida course was postponed once, then

cancelled.  Ex. 9 (Rutledge Dep.) at 311-12.  Once it was cancelled, and the providing

agency indicated that it would not be offered until the next year, Ms. Rutledge told

the Assistant Chief Counsels to have their staff sign up for more appropriate training

instead.  *Id.* at 312.

38.  Reserved.

## Selection for Assistant Chief Counsel for Enforcement and Litigation Position

39.  The characteristics Chief Counsel McCown and Deputy Chief Counsel

Rutledge sought in an ideal candidate for the GS-15 supervisory position of Assistant

Chief Counsel of Enforcement and Litigation, selection for which occurred in

September 2004, were aptitude for leadership, ability to interact effectively with

Agency leaders, litigation skills, and experience in enforcement policy.  Ex. 9

(Rutledge Dep.) at 278-79**;** Ex. 23 (Excepted Service Vacancy Announcement)**.**

40.  Plaintiff had not demonstrated an ability to communicate well with the

Agency heads, lead a program, recognize key issues or make strategic plans such as is

necessary to manage a program.  Ex. 9 (Rutledge Dep.) at 279-80, 288.  In addition,

93848.3

Plaintiff did not have either sufficient litigation experience working with the Department of Justice, or any particular expertise in the enforcement area. *Id*. at 279; Ex. 2 (Walls Dep.) at 63-66 (Walls cannot identify any specific enforcement cases or investigative issues she worked on from 2000 to 2004, and lists her litigation experience as working as an AUSA at the Department of Justice on a six-month detail "sometime in the 90's.")  Plaintiff did not have any characteristic that gave her a clear advantage either in the management, leadership, communication, or substantive area. Ex. 9 (Rutledge Dep.) at 280.

41.  In the judgment of the former Chief Counsel and the Deputy Chief Counsel of FMCSA, the Plaintiff was not the most qualified applicant for the supervisory position of Assistant Chief Counsel for Enforcement and Litigation.  Ex. 7 (Rutledge Affidavit) at 10-11; Ex. 9 (Rutledge Dep.) at 277-80, 288-89;  Ex. 10 (McCown Dep.) at 104-05.  Plaintiff had not stepped out as a leader in the office, but rather had been very much focused on assignments and not shown initiative beyond that. Ex. 9 (Rutledge Dep.) at 288; Ex. 10 (McCown Dep.) at 104.

42.  According to Plaintiff, her management or supervisory experience was limited to: "[f]rom time to time when my supervisors are unavailable in the office, I act as the acting chief counsel in whichever division I've been employed." Ex. 2 (Walls Dep.) at 66.

43.  Prior to the creation of the Enforcement and Litigation division, Plaintiff's primary responsibilities involved regulatory affairs.  Ex. 8 (O'Malley Dep.) at 40-41; Ex. 2 (Walls Dep.) at 15-16; Ex. 9 (Rutledge Dep.) at 34-35.

44.  Prior to her involvement in the post litigation environmental impact study

93848.3

for the NAFTA rules, Plaintiff had little or no experience in the environmental law area.  Ex. 8 (O'Malley Dep.) at 50-53; Ex. 9 (Rutledge Dep.) at 139-40; Ex. 2 (Walls Dep.) at 15-16.

45.  Sue Lawless was the first candidate selected and offered the position of Assistant Chief Counsel for Enforcement and Litigation at FMCSA.  Ex. 9 (Rutledge Dep.) at 277.  She had both the relevant program and policy background and the leadership and communication abilities the selecting officials sought in an ideal candidate.  *Id.* at 280.  Lawless was an enforcement attorney for FMCSA at the time of her interview, overseeing the Eastern region and responsible for bringing all enforcement actions in that area.  Ex. 10 (McCown Dep.) at 88-89.  She had a wealth of background in the enforcement area.  *Id*.; *see also id*. at 101 (only Lawless and Yonish were offered the position of Assistant Chief Counsel for Enforcement and Litigation).

46.  Brian Yonish was chosen for the position of Assistant Chief Counsel for Enforcement and Litigation because of his leadership and communication abilities.  Ex. 9 (Rutledge Dep.) at 281-83.  When he interviewed for the position, Yonish held the commission of Captain in the United States Navy, a GS-15 equivalent, and had a long history of supervision both in the military as well as in the civilian application.  Ex. 10 (McCown Dep.) at 105, 119-20.  In addition, he had experience working with investigators in the enforcement context.  Ex. 9 (Rutledge Dep.) at 290.

**<u>Awards and Bonuses</u>**

47.  Plaintiff received a $1500 Special Act or Incentive Award in 2004 for her work on the NEPA environmental issues team. Ex. 24 (July 30, 2004

11

Recommendation for Quality Step Increase, Performance Cash, Time-Off, or Honor

Award); Ex. 7 (Rutledge Affidavit) at 14.

48.  Attorneys in the Office of Chief Counsel of FMCSA received the

following bonuses and monetary awards in FY 2000 through 2004:

| Motor Carrier Attorneys Total Annual Bonus and Cash Award Amounts[1] | | | | | | |
|---|---|---|---|---|---|---|
| Employee | Grade | 2004 | 2003 | 2002 | 2001 | 2000 |
| *Elaine Walls/Plaintiff* | *GS 14/10* | *1500* | *550* | *650* | *1500* | *1000* |
| Caucasian Male | GM | 2250 | 600 | 0 | 1600 | 200 |
| Caucasian Male | GS 14/01 | 500 | | | | |
| Caucasian Male | SES | 750 | 500 | 1072 | 0 | 300 |
| Caucasian Male | GS 14/03 | 500 | 500 | 500 | | |
| Caucasian Male | Deceased | 1000 | 1100 | 1750 | | |
| Caucasian Male | GS 15/10 | 3900 | 1600 | 3500 | 2200 | 950 |
| Caucasian Male | Resigned | | 750 | 500 | | |
| Caucasian Male | GS 15/07 | 5750 | 3600 | 2600 | 1700 | 1350 |
| Caucasian Female | GS 15/10 | 900 | 1500 | 1700 | 3200 | 300 |
| Caucasian Female | GS 15/06 | 1500 | 600 | 0 | 1000 | 1500 |
| Caucasian Female | GS 13/01 | 0 | 400 | | | |
| Caucasian Male | Resigned | | 1750 | 1750 | 1900 | 1000 |
| Caucasian Female | Resigned | | 900 | 500 | 3250 | 500 |
| Asian Female | GS 13/01 | 800 | 300 | 0 | | |
| Caucasian Female | GS 13/07 | 500 | 400 | 0 | | |
| Caucasian Male | GS 15/07 | 750 | 0 | | | |
| Caucasian Female | GS 09/01 | 750 | | | | |
| Caucasian Male | GS 14/04 | 0 | | | | |
| Caucasian Male | GS 12/01 | 0 | | | | |
| Caucasian Male | GS 13/05 | 0 | | | | |
| Caucasian Female | GS 14/06 | 0 | | | | |
| Caucasian Male | GS 13/01 | | | | | |
| Caucasian Male | GS 15/10 | | | | | |

[1] Bonus data received from Office of Human Resources, Federal Motor Carrier Safety Administration. Grade information reflects personnel status as of the end of FY 2004.

| Key | |
|---|---|
| [black] | Data N/A |
| [gray] | Male Attorneys Receiving Lower Total Bonuses Than Plaintiff |

49.  The work in Plaintiff's Division is quite varied and no two attorneys

perform the same functions.  O'Malley Decl. at ¶ 5.  There is also a significant

93848.3

distinction in the complexity of the work that is performed by Plaintiff and the male attorneys in her Division who received higher awards than she did (Medalen and Falk), as well as the amount of independence, discretion and judgment that they exercised versus the Plaintiff.  *Id*. at ¶ 11**;** Ex. 7 (O'Malley Dep.) at 111-14.

93848.3

Dated: October 16, 2007                    Respectfully submitted,


                                                \_\_s/_____

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney



     \_\_s/_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney



     \_\_s/_____

KENNETH ADEBONOJO
Assistant United States Attorney
555 - 4th Street, N.W.
Washington D.C.  20530
Phone: 202-514-7157

*Of Counsel:*
RAYMOND C. FAY, D.C. Bar #188649
LAURA C. FENTONMILLER, D.C. Bar #450813
Constantine Cannon LLP
1627 Eye Street, N.W., 10th Floor
Washington, D.C.  20006
Phone: 202-204-3500

93848.3