# EXHIBIT 1

Case 1:06-cv-01259-TFH-DAR   Document 17-2   Filed 10/17/2007   Page 1 of 14

UNITED STATES DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
DEPARTMENTAL OFFICE OF CIVIL RIGHTS

AFFIDAVIT

========================================================================

STATE OF MARYLAND

CITY OF FORT WASHINGTON
========================================================================

I, **Elaine Walls**, being first duly sworn on oath, make the following statement freely and voluntarily to **Lisa C. Hetrick** who has identified herself to me as an EEO Investigator, for the U.S. Department of Transportation, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any party who has an official interest.

========================================================================

Allegation:

You are alleging that you were discriminated against based on your **race (African American), color (Black), sex (female), age (49, DOB 03-11-55)** and **reprisal (EEO activity)** when: 1) in February 2004, you were denied a promotion to the GS-15 level; 2) management denied your participation into the Executive Potential Program (EPP); 3) you learned that your Caucasian male counterparts received higher performance ratings, awards, and bonuses; 4) on September 14, 2004, you were not selected for the position of Assistant Chief Counsel of Enforcement; and 5) pre-approved training was cancelled for you and two female co-workers while the training for your male counterparts was permitted one month before.
========================================================================

1. **For the record, please state your position, series and grade and how long you have been with the FMCSA.**

   Answer:

   I am employed by the Federal Motor Carrier Safety Administration's (FMCSA) Office of the Chief Counsel's Regulatory Division as a GS-14 level Attorney-Advisor. I have been employed by the FMCSA since October 2000.

2.  **For the record, please list your chain of command.**

    **Answer:**

    My immediate supervisor is Ms. Suzanne O'Malley, the Assistant Chief Counsel of the Regulations Affairs Division (MC-CCR) (formerly, the Assistant Chief Counsel of the Enforcement and Regulatory Affairs Division); the Deputy Chief Counsel is Ms. Judith A. Rutledge; the Chief Counsel is Mr. Brigham A. McCown (MC-CC); the Assistant Administrator is Mr. John Hill; the Deputy Administrator is Mr. Warren E. Hoemann; the Administrator of FMCSA is Ms. Annette M. Sandberg, and her boss is the Secretary of Transportation, Norman Y. Mineta.

3.  **You state in your complaint that in the early part of 2000, your prior supervisor, Thomas Holian, recommended you for a promotion to a GS-15. Shortly afterwards, Judy Rutledge approached you and asked if you would join her at the newly created FMCSA.**

    A.  **What stage was your promotion in when Ms. Rutledge approached you about joining FMCSA? Please explain in detail.**

        **Answer:**

        My promotion was in the initial stage when Ms. Rutledge approached me about joining the FMCSA. My promotion had been approved by my supervisor.

    B.  **Did Ms. Rutledge indicate or promise you a GS-15 when you joined FMCSA? Please explain in detail.**

        **Answer:**

        Yes. When Ms. Rutledge came to my office to ask me if I would join her in Counsel's Office at the FMCSA, I explained to her that Mr. Holian had recommended me for a promotion to the GS-15 level. Mr. Rutledge said that she would honor it. At no time did Ms. Rutledge indicate that she would not promote me to the GS-15 Attorney level. I would not have taken the job in FMCSA if I had known she would rescind the promotion offer.

    C.  **Was your promotion discussed at all prior to going to FMCSA or afterwards? Please explain in detail.**

        **Answer:**

        Yes, my promotion to the GS-15 Attorney level was discussed with FMCSA Management prior to my transfer to FMCSA's Chief Counsel's Office.

2

> In performance rating years 2001 and 2002, I was told that the budget for Counsel's Office would not support promoting anyone to the GS-15 Attorney level. However, Ms. Patricia Burke, our former Acting Assistant Chief Counsel of the General Law Division, indicated that there would be additional funds in the fiscal year 2004 budget to promote attorneys in our office to the GS-15 Attorney level. I did not receive my 2003 performance rating until February 2004. By that time, however, I had already asked FMCSA Management again to be promoted to the GS-15 Attorney level (January 2004). I believe that Ms. Rutledge promoted Mr. Robert Brown, a Caucasian male, to the GS-15 Attorney level. Also, in January 2004, Mr. McCown offered Joe Solomey, a Caucasian male attorney, a promotion to the GS-15 Attorney level. Yet, in January 2004, at a meeting with Mr. McCown and Ms. Rutledge, they told me they would not promote me to the GS-15 Attorney level.

4.  **You also state in your complaint that you spoke with Suzanne O'Malley in December 2003 about being nominated as a participant in the EPP. Ms. Rutledge informed you that you would not be nominated for 2004 because Joe Solomey had been nominated last year. She also advised you to speak with Brigham McCown regarding your interest.**

    A.  **What was Ms. O'Malley's opinion of your being nominated as a participant in the EPP? Please explain in detail.**

    *Answer:*

    > Ms. O'Malley said it was a good idea for me to be nominated to participate in the EPP. She knew it would broaden my professional development.

    B.  **Did Ms. O'Malley speak with upper management about nominating you? If so, what was the outcome? Please explain in detail.**

    *Answer:*

    > Ms. O'Malley spoke with both Ms. Rutledge and Mr. McCown about nominating me for the EPP. I do not know if she spoke with anyone else. The outcome of these discussions was that Mr. McCown refused to nominate me for the EPP in 2004, even though the Chief Counsel's Office had nominated a similarly situated male attorney (Joe Solomey) the previous year.

    C.  **When Ms. Rutledge called you into her office and indicated that MC-CC had already decided they would not recommend you for the EPP in 2004, what justification did she give you? Please explain in detail.**

3

*Answer:*

> Ms. Rutledge said that they would not recommend me for the EPP in 2004 because they recommended Mr. Solomey the previous year. I told Ms. Rutledge that Mr. Solomey's participation in the EPP in 2003 had nothing to do with me being nominated in 2004. Nonetheless, my supervisor's request to nominate me for the EPP was denied without further explanation. Management denied my request because they do not want female attorneys to advance professionally.

    **D. Also, please explain in detail your conversation with McCown regarding the EPP.**

*Answer:*

> When I talked with Mr. McCown, he told me he had already decided he would not nominate anyone to participate in the EPP. Mr. McCown explained that he did not know much about the program but would check on it and get back to me. I never heard anything else about my nomination as a participant in the EPP.

5. **You allege that on February 6, 2004, you met with Rutledge and McCown regarding your opportunity to participate in the EPP, other options for your professional development and your request for a promotion to the GS-15. During this meeting, Rutledge informed you that you were almost at the GS-15 level, but she needed to develop a plan to get you there.**

    **A. What sort of plan was Rutledge talking about? Please explain in detail.**

*Answer:*

> I have no idea. She never gave me a plan.

    **B. Did she state to you when she thought you would be at the GS-15 level? Please explain in detail.**

*Answer:*

> Ms. Rutledge told me at the meeting with Mr. McCown that I was almost there (at the GS-15 Attorney level) but at no time did she tell me what would get me there even recognizing that I had over 20 years of legal experience in the transportation field.
>
> At a later meeting with Ms. Rutledge and my supervisor, Ms. O'Malley, it was apparent that Ms. Rutledge did not intend to promote me to the GS-15 Attorney level at all. Ms. Rutledge said that she would no longer "sugar coat" the issue and would call a "spade a spade" and, in her view, I was nothing more than a high paid GS-14 level attorney and she would never promote me

4

to the GS-15 level. This was the first time Ms. Rutledge ever said that she would not promote me to the GS-15 Attorney level.

6. **You also allege that McCown informed you that your immediate supervisor, Ms. O'Malley, stated that she did not believe that you were qualified for the promotion.**

    A. **Did you ask Mrs. O'Malley about this statement and if so, what was her response? Please explain in detail.**

    *Answer:*

    Yes. Ms. O'Malley was very upset that Mr. McCown and Ms. Rutledge would misquote her. Ms. O'Malley says that she never told them that I was not qualified for a promotion to the GS-15 Attorney level. In fact, Mrs. O'Malley has always tried to promote my professional development and obtain an "outstanding" rating and promotion to the GS-15 Attorney level on my behalf, but Management officials continue to deny the requests. Ms. O'Malley told me that she would clarify this matter with both Mr. McCown and Ms. Rutledge and it is my understanding that this was done.

7. **You go on to allege that a second meeting took place on February 10, 2004, between you, Ms. O'Malley and Ms. Rutledge. Ms. Rutledge denied your request for a promotion and denied your request to recommend you as a candidate for EPP program until both she and Ms. O'Malley had a chance to develop a plan for you to accomplish this.**

    A. **Did Ms. Rutledge give you an indication of when these plans were to be put into effect and did she mention any of her reasons for denying? Please explain in detail.**

    *Answer:*

    No. Ms. Rutledge never told me what plans she had in mind to accomplish my promotion to the GS-15 Attorney level or to be recommended for the EPP. Initially, Ms. Rutledge stated that I was not ready to be promoted to the GS-15 Attorney level. While I was close, Mr. Rutledge continued to believe that she had to develop a plan for me to get there. To my knowledge, no plan was ever developed.

    As indicated above, Ms. Rutledge later said she would no longer "sugar coat" the issue and would call a "spade a spade" and in her view I was nothing more than a high paid GS-14 level attorney and she would never promote me to the GS-15 Attorney level.

   B. **To your knowledge, has anyone else been put on a plan in order for them to attain their GS-15? Please identify.**

*Answer:*

   No. In fact, I'm the only attorney who has "conditions" placed on her before Ms. Rutledge will recommend or approve anything for me, including training. For example, Ms. Rutledge told me that before she would recommend me for my promotion to the GS-15 Attorney level she had to develop a plan for me to accomplish this. She also told me that she would not recommend me for the EPP because Mr. Solomey was chosen as the nominee from our office the previous year, but never said that she would revisit the issue or send my name for consideration despite this fact. Ms. Rutledge has also denied several of my training requests unless I agreed to take on additional work or she makes the process so unpleasant that it is not worth the effort.

   Nonetheless, Ms. Rutledge agrees to most of the requests made by my male counterparts for travel, training, leave, etc. For example, Ms. Rutledge approved Mr. Medalen's request to attend a training seminar at Harvard University. That course had to be in excess of $4,000, yet it was approved. Female attorneys in this office must cross every "t" and dot every "i" before Ms. Rutledge approves our requests for training. She denied 95% of the female requests.

   C. **To your knowledge, has anyone else been put on a plan to be eligible and nominated for the EPP? Please explain in detail.**

*Answer:*

   No. To my knowledge, Mr. Joe Solomey was MC-CC's first and only employee to be nominated for the EPP.

8.   **You further allege that on September 14, 2004, you learned that you were not selected for the Assistant Chief Counsel of Enforcement position.**

   A. **What justification were you given for not being selected? Please explain in detail.**

*Answer:*

   None.

   B. **What was the race, color, sex and age of the Selectee?**

*Answer:*

   The name of the selectee for this position was Mr. Brian Yonish. He is a Caucasian male. I do not know his age. I was not selected for this job even

6

though I was the most qualified applicant. Mr. Yonish did not have any prior enforcement or motor carrier experience. In his first staff meeting held by mangers at MC-CC, Mr.Yonish admitted that he was on a "big learning curve" and it would take him some time to get up to speed in his current position. Mr. Yonish was the fourth individual that Mr. McCown and Ms. Rutledge offered this job to. Complainant was never told about FMCSA's Management decision to hire Mr. Yonish. I read about the selectee for this position in the General Counsel's Monthly Report.

**D. Are you aware if the Selectee has had prior EEO activity? Please explain in detail.**

*Answer:*

No.

9. **You contend that on September 14, 2004, Rutledge and McCown abruptly cancelled a pre-approved trip to Destin, Florida for training for you and two other female employees.**

A. What reason were you given for the training to be abruptly cancelled? Please explain in detail.

*Answer:*

Ms. Rutledge canceled the trip because she did not want me and two other female attorneys to attend a training course in Destin, FL. As soon as she found out we were looking forward to the training, she made us cancel it. She did not give us a reason for the cancellation, but all three of us had testified against her in an EEO investigation.

**B. What was the identical training your two male colleagues attended in New Orleans a month earlier? Please explain in detail.**

*Answer:*

The training was entitled "Residential Professional Development Programs." The training entailed several workshops intended to "revitalize your career," given in several different locations on various dates. The workshops included were: Managing the Challenge of Change, Maintaining Balance in an Unbalanced World, Tally Up – A Value Based Goal Setting Program, and The Art of the Difficult Conversation. A brochure which included these workshop topics and details were hung in the MC-CC suite for a period of several weeks to advertise its availability to all staff. Thus, the basic agenda and the intent of the training course were readily apparent from the beginning. Ms. Rutledge stated to MC-CC's Administrative Officer (Ms. Dolores Hodge) that the training course would be open to anyone in the office who expressed the

7

interest to attend. No restrictions were placed on who would be eligible to attend. Ms. Hodge circulated at least two e-mail messages to MC-CC asking if anyone would like to attend the training.

I chose to attend the session held in Destin, FL, during the week of September 14th through the 17th, along with 4 other female colleagues. Ms. Rutledge allowed our male colleagues, Mr. Medalen and Mr. Falk, to attend the exact training session in New Orleans, LA, during the last week of July 2004. Ms. Rutledge allowed them to go to New Orleans for the training, but would not let any female attorneys attend the training in Destin.

### C. What is the race, color, and age of your female colleagues?

*Answer:*

**Female Colleagues that transferred from the Federal Highway Administration (FHWA) and worked in FMCSA's Counsel's Office from periods between October 2000 through January 2004.**

- Ms. Judith A. Rutledge (SES)-Deputy Chief Counsel; Race – white; Age – over 50.
- Ms. Charlene Sanders (GS-15)-Senior Attorney assigned to work under the Deputy Chief Counsel – 48.
- Ms. Suzanne O'Malley (GS-15) - Assistant Chief Counsel of the former Enforcement and Regulatory Affairs Division; Race – white; Age – 50.
- Ms. Patricia Burke (GS-15), Acting Assistant Chief Counsel of the General Law Division (resigned – now works at the Research and Special Programs Administration (RSPA)); Race – white; Age – approximately 50.

**Female Colleagues that did not transfer from the FHWA, but were hired by MC-CC between October 2000 and January 2004:**

- Ms. Sonya White (GS-14) – Attorney, General Law Division (resigned); Race – African-American; Color – black; Age – unknown.
- Ms. Rosemary Dettling (GS-13) -Attorney, General Law Division; Race – white; Age – 39.
- Mrs. Jackie Cho (GS-13), Race-Attorney, Enforcement Division; Race – Asian; Age – 30.
- Mrs. Annmarie Ottman (GS-13)-Attorney, Enforcement Division (resigned, but now works as an FMCSA legal contractor); Race – white; Age – 30.

**Female Colleagues Hired after February 2004:**

Cheryl Walker (GS-14); Race – white; Age 40.
Suzanne Newhouse (GS-11) (Mr. McCowan's Special Assistant); Race – white; Age 27.

8

**D. What is the race, color, and age of the male colleagues?**

*Answer:*

**Male Attorney Colleagues that transferred from FHWA and worked in Counsel's Office between October 2000 through January 2004.**

- Steve Farbman (GS-15), Adjudications Counsel; Race — white; Age – over 50.
- Tom Vining (former SES), Adjudications Counsel; Race — white; Age – over 50.
- Mike Falk (GS-15), Attorney, Enforcement and Regulatory Affairs; Race — white; Age – 55.
- Warren Cohen (GS-15), Adjudications Counsel (deceased); Race – white; Age – over 50.
- Charles Medalen (GS-15), Attorney, Enforcement and Regulatory Affairs; Race – white – over 50.
- Joe Solomey (GS-14), Attorney, Enforcement and Regulatory Affairs Division, (Resigned - now works at RSPA (GS-15)); Race — white, Age – 46

**Male Attorney Colleagues that did not transfer from the FHWA, but were hired by MC-CC between October 2000 and January 2004:**

- Brigham McCown (SES), Chief Counsel; Race — white; Age – approximately 37.
- Florian Chess (GS-14), Attorney, General Law Division (deceased); Race – white; Age – 46 at his time of death on April 13, 2004.
- Robert Brown (GS-15), Attorney, General Law Division (resigned); Race – white; Age – mid 40's.
- Kirk Foster (GS-14), Attorney, General Law Division (hired at the GS-13 grade level, promoted to the GS-14 grade level); Race — white; Age – between 44 and 48.
- Marc A. Rigrodsky (GS-15), Assistant Chief Counsel, General Law Division; Race — white; Age – approximately 48.
- Bryan Downey (GS-14), Attorney, General Law Division; Race — white; Age – approximately 34.
- Kenneth William (GS-14), Attorney, General Law Division; Race — white; Age – between 34 and 40.

**Male Attorney Colleagues Hired after April 2004:**

- Brian Yonish (Assistant Chief Counsel for Enforcement and Litigation (GS-15)); Race – white; Age – between 44 and 49.
- Charles J. Fromm (Attorney, General Law Division (GS-14)); Race – white; Age – unknown.

9

- Kyle Levine (Attorney, Enforcement & Litigation Division (GS-12)); Race- white; Age - approximately 27.
- Allan Strasser (Attorney, Regulatory Affairs (GS-13); Race – white; Age – mid 40's.

### E. To your knowledge, have any of your colleagues, male or female, had any prior EEO activity? Please explain in detail.

*Answer:*

Ms. Rosemary Dettling filed an EEO complaint in 2004. Ms. Ottman and Ms. Cho testified in her EEO investigation. I also testified in Ms. Dettling's EEO investigation. I do not know if any of my male colleagues have had any prior EEO activity.

10. **You also contend that you learned that your Caucasian male counterparts received higher performance ratings, awards, and bonuses.**

### A. What was your last performance rating?

*Answer:*

In 2004, FMCSA's performance rating methodology changed whereby the FMCSA Managers could no longer give employees an outstanding, commendable, satisfactory or unsatisfactory performance rating.

The new performance rating methodology now requires FMCSA Managers to rate employees with either a **"meets or exceeds"** or **"fails to meet or exceed"** performance rating. I received a "meets or exceeds" rating with an explanation from my immediate supervisor, Ms. O'Malley. It submitted with this affidavit as supporting information.

### B. What were the performance ratings of your male counterparts?

*Answer:*

I do not know the last performance ratings of my male counterparts.

### C. What awards and bonuses were received by the male counterparts?

*Answer:*

I do not have information on the awards and bonuses that were received by my male counterparts during <u>most</u> of the performance rating periods unless they tell me. In 2003, I was told by one of the male colleagues in my Division that he had received an outstanding rating so I assumed that all of the males in my Division at that time (Mr. Medalen, Mr. Falk and Mr. Solomey) received similar ratings as well.

10

I obtained information from the Washingtonpost.com web site about the awards and bonuses that were received by most MC-CC employees during fiscal year 2002 as follows:

**2002 Performance Rating Period**

**Male Attorney Colleagues:**

|  | **Bonuses/Awards** |
|---|---|
| - Steve Farbman - | none listed |
| - Tom Vining - | Individual cash award: $1,072 (08/11/2002) |

**Bonuses/Awards**

| - Mike Falk – | Individual cash award: $ 900 (02/10/2002)<br>Individual cash award: $ 3,000 (08/11/2002)<br>Individual cash award: $ 500 (08/12/2002) |
|---|---|
| - Charles Medalen - | Individual cash award: $ 900 (02/10/2002)<br>Individual cash award: $ 500 (08/11/2002)<br>Individual cash award: $ 500 (08/25/2002)<br>Individual time off award: 16 hours (08/11/2002) |
| - Joe Solomey - | Individual cash award: $ 900 (02/10/2002)<br>Individual cash award: $ 850 (08/11/2002) |
| - Florian Chess - | Individual cash award: $ 500 (02/10/2002)<br>Individual cash award: $ 750 (06/16/2002)<br>Individual cash award: $ 500 (08/11/2002)<br>Individual time off award: 18 hours (08/11/2002) |
| - Robert Brown - | Individual cash award: $ 500 (06/16/2002) |
| - Kirk Foster - | Individual cash award: $ 500 (06/16/2002) |

**Female Attorneys:**

|  | **Bonuses/Awards** |
|---|---|
| - Judith A. Rutledge | Individual cash award: $ 2,000 (06/16/2002)<br>Individual cash award: $ 500 (08/11/2002)<br>Individual cash award: $ 2,000 (08/25/2002) |
| - Suzanne O'Malley – | none listed. |

11

|   |   |   |
|---|---|---|
| - Patricia Burke – | Individual cash award: $ 500 (02/10/2002) |
|   | Individual time off award: 18 hours (08/11/2002) |
| - W. Elaine Walls - | Individual cash award: $ 300 (02/10/2002) |
|   | Individual cash award: $ 350 (08/11/2002) |
|   | Individual time off award: 16 hours (08/11/2002) |

**D. Did you receive any awards/bonuses?**

*Answer:*

During fiscal year 2004, I received two team awards from the Secretary of the Department of Transportation. I was selected to receive one Secretarial Award for being a member of the North American Free Trade Agreement (NAFTA) litigation team and the other for being on the Mandamus Regulatory Development team. These awards did not include monetary bonuses.

I also received a Special Act award (monetary) for developing the environmental procedures for the FMCSA to ensure that the agency is in compliance with the National Environmental Policy Act of 1969.

11.  **Are there any other comments you would like to make at this time?**

*Answer:*

Yes.

FMCSA Management officials have engaged in unfair and illegal hiring practices. Not only have they discriminated against me in the employment process, but they have done so to others by continuing to make job offers to individuals who are not on applicable certification lists for the positions they accept. In fact, these new hires are often less qualified that those that have gone through the legally established employment process.

In addition to the hostile work environment created by the Agency over the years, Complainant has suffered a severe loss of self esteem and her physical health has deteriorated as the result of the stress related to this investigation, preparing for this EEO case and thinking about the costs associated with it, and the Agency's continued desire to discriminate against me. No matter what I do, it's not enough and FMCSA Management officials always want more.

I have suffered emotional pain and mental anguish, loss of the enjoyment of life, injury to my professional standing, and injury to my character and reputation as a result of the discriminatory conduct of FMCSA Management's decisions not to promote me to the GS-15 Attorney level. The Agency continues to inhibit my professional development not only by <u>not</u> promoting me, but by refusing my

requests for details, training, etc., as explained in this Affidavit. I spend many sleepless nights and suffer extreme depression, stress, humiliation and excessive fatigue from the anxiety of worrying about the outcome of this EEO case and my professional well being on this job. It has been very humiliating and embarrassing to see my younger colleagues and professional counterparts who have been hired after me receive their promotions to the GS-15 level. Equally as painful is for my younger colleagues to see me go through this process for an Agency that I have worked for since 2000. Because of the substantial long term and permanent harm I have suffered over the years from the Agency's actions, discriminatory and retaliatory conduct, it has impaired my professional enhancement to the Senior Attorney level. There is sufficient evidence in this record to demonstrate that this is an extremely stressful job and hostile working environment, and that the Agency has, and continues to discriminate against me.

I HEREBY SOLEMNLY ___*AFFIRM*___ THAT:
(SWEAR OR AFFIRM)

I DECLARE UNDER PENALTY OF PERJURY THAT THE INFORMATION CONTAINED IN THE ABOVE PAGES IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. SEE 28 U.S.C. § 1746. I UNDERSTAND THAT THE INFORMATION I HAVE PROVIDED HEREIN IS NOT TO BE CONFIDENTIAL AND THAT AGENCY REPRESENTATIVES MAY SHOW IT TO THE INTERESTED PARTIES. HOWEVER, I ALSO UNDERSTAND THAT I AM NOT TO PERSONALLY DISSEMINATE THE INFORMATION CONTAINED IN THIS AFFIDAVIT AS SUCH ACTION COULD INTERFERE WITH THE PROCESSING OF THE INVESTIGATION AND COULD VIOLATE PROVISIONS OF THE PRIVACY ACT AND AGENCY POLICIES.

Signature: *Elaine Walls*    Date: *December 7, 2004*
(Affiant's Signature)