# EXHIBIT 6

Amended Complaint

Act of Retaliation #3–

I was retaliated against on September 14, 2004, when I learned I was not selected for the Assistant Chief Counsel of Enforcement position. In June and July 2004, the FMCSA's Office of the Chief Counsel interviewed candidates for the position of Assistant Chief Counsel of the Enforcement Division (MC-CCE) at the GS-15 level. I submitted my resume on time to Human Resources and interviewed with Mr. Brigham McCown (Chief Counsel) and Ms. Judy Rutledge (Deputy Chief Counsel). Although my qualifications were superior to all the other candidates, Mr. McCown and Ms. Rutledge made offers to three or four less qualified attorney applicants outside of the office before they found an applicant who was willing to accept the job. In FMCSA's September 2004 report to the General Counsel, Mr. McCown, announced that he hired Brian Yonish as the new Assistant Chief Counsel for the Enforcement and Litigation Division. A review of his resume will show that Mr. Yonish lacks the necessary enforcement experience and knowledge of motor carrier issues. Despite his inexperience, Ms. Rutledge and Mr. McCown hired Mr. Yonish over me. They disregarded my many years of experience and knowledge in handling issues of this nature. Mr. McCown and Ms. Rutledge refused to hire me because I filed an EEO Complaint against them. The hiring of Mr. Yonish demonstrates how management officials continue to discriminate against women and retaliate against those who engage in protected EEO activity. Management continues to hinder my professional development in any way they possibly can.

Act of Retaliation #4 - Ms. Rutledge and Mr. McCown discriminated and retaliated against me and two other female employees who engaged in prior EEO activity (Rosemary Dettling and Jackie Cho) when, on September 14, 2004, they abruptly canceled our pre-approved trip to Destin, Florida for training. Mr. McCown and Ms. Rutledge refused to permit us to attend the training even though they permitted two male colleagues (Mike Falk and Charles Medalen) to attend the identical training session in New Orleans a month earlier.

As relief, in addition to the other items mentioned in my complaint, I also request:

That I be transferred to my former agency, the Federal Highway Administration.

*Elaine Walls*

I deserve a promotion to the GS-15 level for the following reasons:

(1) I perform at the GS-15 level and have no performance problems;

(2) My immediate supervisor, Suzanne O'Malley, supports me in this effort and recommends I be promoted;

(3) I continue to work hard to accomplish the missions of this agency, as well as the initiatives of this office;

(4) Many of my colleagues and program staff indicate they appreciate my good work and how I support them on their projects and assignments, and have received allocates from other individuals both in the agency (such as, Mr. Hoeman and Mr. Hill) and out (staff at OST, CEQ and EPA);

(5) I have approximately 23 years of Government service as an attorney in various fields of the law; and

(6) I have worked on many projects with national importance, such as:
    a) The President's initiative to open the U.S.-Mexico border:
    b) The agency's NAFTA Programmatic Environmental Impact Statement (EIS) task force and our procurement initiative to obtain a contractor and program manager for this effort:
    c) The FMCSA's "Reeper Report" to the Deputy Secretary involving the agency's timeline to complete the NAFTA EIS; and
    d) My development of FMCSA's own environmental procedures to comply with the National Environmental Policy Act of 1969 (published on March 1, 2004 (69 FR 9680));

(7) Management states that even if they wanted to promote me to the GS-15 level they do not have a position available or that to do so would require a desk audit, a male employee (Mr. Solomey) was offered a promotion to the GS-15 attorney level when management found out that he had accepted another job at the Research and Special Programs Administration (RSPA). No desk audit was performed for Mr. Solomey, nor had the reorganization (see attachment) in this office taken place at the time of this offer. Mr. Solomey declined the offer and took the job at RSPA; and

4

(8) The Department of Transportation's (DOT) policy for promoting GS-14 attorneys to the GS-15 level supports it.

I strongly believe that I have been subjected to disparate treatment based on sex, race and age when management continues not to promote me to the position of a GS-15 Attorney nor to offer me the same professional opportunities as my white male counterparts. Management has a history of subjecting female employees in this office to disparate treatment in ways that follow:

(1) **Hiring and Promotion Practices**.

    a) Management hired a white male attorney (Mark Rigrodsky) from outside of this agency to hold the position of Assistant Chief Counsel of General Law. Yet, an equally qualified female attorney, Patricia Burke, held that same position for about three years and was not selected; and

    b) Management primarily hires male attorneys at mid-level GS-14s or at the GS-15 level (Joe Solomey, Mark Rigrodsky, Florian Chess, Bob Brown, Bryan Downey and Kenneth Williams). Management only hired another male attorney (Kirk Foster) at the GS-13 level, but Management did not treat him unfairly nor were his promotion papers held up when he requested to be promoted to the GS-14 attorney level. Yet, female attorneys (Elaine Walls, Rosemary Dettling, Annmarie Ottman and Jackie Cho) continuously have their promotion requests either denied or delayed for extended periods of time. Also, numerous conditions are placed on female attorneys while male attorneys are automatically promoted;

(2) **Executive Potential Program.** Management officials nominated a male attorney (Joe Solomey) to the Executive Potential Program and offered him a promotion to the GS-15 attorney level without a desk audit or an available GS-15 position to place him, when a similarly situated female attorney (Elaine Walls) was denied the same opportunities;

(3) **Bonuses and Monetary Awards**. Management provides signing bonuses and greater recognition and monetary awards to male attorneys (Steve Farbman, Joe Solomey, Mike Falk, Charles Medalen, Florian Chess, Robert Brown, Mark Rigrodsky, Bryan Downey and Kenneth Williams), but not to females attorneys

5

(Elaine Walls, Rosemary Dettling, Annmarie Ottman and Jackie Cho);

(4) **Performance Ratings**. Management gives male attorneys more favorable ratings, higher and more frequent "outstanding" performance awards, and greater professional and training opportunities than to female attorneys. For over two years, my Division employed three white male attorneys and myself. Each year, all the white male attorneys who were similarly situated received outstanding ratings and more performance award money than me. In fact, my immediate supervisor (Suzanne O'Malley) told me that she tried to obtain an outstanding rating for me, but Ms. Rutledge denied the request;

(5) **Telecommuting**. Male attorneys are afforded greater telecommuting privileges than our female attorneys. Last year, our newest female attorneys (Rosemary Dettling, Annmarie Ottman and Jackie Cho) were promised telecommuting privileges when they were hired. However, when they became employed at the FMCSA's Office of the Chief Counsel, they were denied telecommuting privileges. My existing telecommute privileges were eventually taken away as well. Management, however, continued to permit another male employee (Mike Falk) privileges to telecommute.

(6) **Reorganization**. When Management began to discuss their plans to reorganize the Chief Counsel's Office, no one approached me about the possibility of taking one of the available GS-15 positions, nor did they think about creating one for me. Another male attorney (Mike Falk), however, was asked to serve as the Acting Assistant Chief Counsel in the newly created Enforcement Division in this office until a replacement could be found. Ms. Rutledge also told him that if he wanted the new position he didn't need to apply for it.

(7) **Training**. When I asked Management to cross-train, I was either denied or ignored. I even asked Ms. Rutledge to attend an Employment Discrimination Law workshop, but was told I could only attend if I agreed to take on some of the employment law cases. As I explained, my current workload would not allow me to take on any additional cases. Ms. Rutledge said that this showed no initiative. But, no other attorney in this office has such conditions placed on them to attend training; and

(8) **Retaliation**. I was subjected to retaliation for engaging in the EEO process when:

   a) Management has continued to deny me the same opportunities as my white male counterparts;

   b) Although I have over 20 years of experience in the regulatory development and motor carrier arena, Management does not give me important assignments nor do they invite me to relevant meetings. This only happens if someone is on vacation or out of the office;

   c) Although I began the NAFTA EIS task force and was instrumental in the procurement effort for this project, Ms. Rutledge has kept me out of the loop in this matter. In fact, I am no longer consulted on any of the issues. If the NAFTA issue comes up in another meeting, I am asked to leave the room so that others can talk about the project;

   d) Management does not include me in any of the hiring decisions for new attorneys;

   e) When I filed an informal complaint, Mr. McCown refused to participate in mediation. And, my performance rating was not an "outstanding," although my immediate Supervisor's write-up supports it; and

   f) Management instituted new performance standards that would require me to do more tasks to receive an acceptable rating. This was done, I believe, in retaliation for the filing of several EEOC cases in this office.

Overall, the attorneys in the FMCSA's Chief Counsel's Office work harder than most in this agency and we have continued to do so with limited staff and resources. Yet, we continue to see our program counterparts promoted to management and senior level positions at more rapid speeds. Even the Program Office has female employees that have been promoted to the GS-15 level. The FMCSA's Chief Counsel's Office has promoted no female attorneys since its creation nor have they filled an Assistant Chief Counsel position with a female. FMCSA needs to begin to create a more diverse and fair working environment for all employees and not just a few.

7

As relief, I request:

(1) My promotion to the GS-15 level, backdated to December 2003, with incremental step increases from the time my immediate supervisor approved it, including a desk audit if necessary;
(2) An opportunity to be nominated to the EPP program without Management developing a plan for me to qualify;
(3) Fair treatment to all female attorneys in this office;
(4) A bonus and benefits comparable to the ones given to male attorneys at this agency;
(5) Telecommute privileges to resume;
(6) Compensatory (liquidated) damages; and
(7) Attorney fees.