# EXHIBIT   13

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Washington Field Office

| | |
|---|---|
| Elaine Walls,<br>    Complainant | )<br>)<br>) |
| v. | ) EEOC No. 100-2005-00093X<br>) |
| Norman Y. Mineta, Secretary<br>U.S. Department of Transportation,<br>    Agency | ) Agency No. DOT 2-04-2061<br>)<br>)<br>) Date: August 12, 2005 |

## AGENCY RESPONSE TO COMPLAINANT'S INTERROGATORIES

Pursuant to EEOC regulations and the Acknowledgement and Order dated June 9, 2005, the Agency hereby responds to the Complainant's Interrogatories to the Agency as follows:

1. Identify and describe, with specificity and detail, why the Agency contends that Complainant has not demonstrated ability to perform successfully at the GS-15 level and set forth, with specificity and detail, the Agency's decision-making or reasons for its contention, including but not limited to any alleged performance deficiencies by Complainant, specific assignments, projects, performance criteria or goals that were allegedly insufficient, or anything else that the Agency alleges that supposedly supports its contention.

    **Response:** The Agency's contention that Complainant has not demonstrated ability to perform successfully at the GS-15 level is premised on the fact that Complainant has not yet achieved a sufficiently high or sustained level of proficiency in any of the performance attributes required for promotion to the GS-15 level. Among other factors, discussed below, Complainant's personal motivation, initiative and leadership skills do not yet rise to the level expected of an attorney performing at the GS-15 level. Considerations relevant to this conclusion are as follows: ( See also, Rutledge

and O'Malley affidavits in the ROI and response to Interrogatory nos. 8 and 9).

(1) Complainant does not have a sufficiently strong working knowledge of a broad range of FMCSA programs, rules, policies and procedures to qualify for promotion to the GS-15 level. Her lack of in depth knowledge and understanding of major agency programmatic and regulatory initiatives, including the enforcement program, Motor Carrier Safety Assistance Program, and commercial regulatory areas, impedes her ability to approach regulatory development and review assignments with full independence and with an adequate appreciation for the operative legal, policy and substantive considerations. This lack of in depth knowledge not only impedes her ability to thoroughly analyze issues and expeditiously complete assignments, but also undermines the confidence of her program office clients in her competence to address all pertinent issues when she provides legal sufficiency reviews. To elevate her performance to the GS-15 level, Complainant needs to develop an awareness of the policy and political context in which agency programs operate and to apply that information with an analytical focus during her review of rules and preparation of regulatory interpretations related to the programs.

Complainant's lack of adequate program knowledge was recently exhibited when, in briefing the Deputy Chief Counsel on the rulemaking support paper for the Certification of Safety Auditors rule, she was unable to adequately explain relevant safety inspection protocols and procedures. Complainant's limited knowledge is also reflected in her tendency to devote a disproportionate amount of time to the stylistic, editorial or other insignificant aspects of an item presented for her review while overlooking major considerations relevant to legal sufficient, regulatory policy or agency strategic mission. Illustrative of this tendency was Complainant's recent one-dimensional insistence that the Hours of Service rulemaking required more extensive environmental assessment notice as a "unique and precedent setting" initiative.

(2) Another consequence of Complainant's lack of depth in agency programmatic, policy and regulatory areas is her failure to independently produce on a

2

regular or sustained basis high quality, effective work products requiring virtually no oversight or revision. Complainant's first attempts at briefing papers, memoranda or executive summaries at times are laboriously detailed and lacking in focus, necessitating extensive editing by her reviewers. Examples include Complainant's work on a withdrawal notice concerning the Limited English Proficiency rule, a letter to David Stonefield concerning environmental policy assistance and various briefing documents for office and agency managers.

(3) The lack of analytic focus, definitive direction and brevity in some of Complainant's written work products also define her oral communication style and markedly limit her ability to provide highly effective managerial briefings and executive presentations expected of GS-15 attorneys. Chief Counsel Suzanne TeBeau and Deputy Chief Counsel Judith Rutledge each have observed that in briefing sessions Complainant has not provided sufficiently direct or definitive information and when confronted with questions has become defensive.

Inappropriate tone and failure to observe commonly understood communication protocols also have found their way into Complainant's informal communications. On more than a few occasions, Complainant's e-mails have included inappropriate directives to higher level management (Example: a "tasking to the Deputy Chief Counsel) or have utilized terminology that was perceived by recipients as condescending or demeaning (Example: directives to Regulatory Development Division staff noted as inappropriate by Pamela Pelcovits).

(4) Complainant's insensitivity to communication protocols and her occasional laspses in diplomacy not only jeopardize her abilities to interact productively and effectively with upper level management, but also undermine her rapport with client offices. As a consequence, Complainant has not demonstrated responsiveness to client program office needs and interests with focus and consistency sufficient to warrant promotion to the GS-15 level. Complainant needs to be proactive in seeking out program office needs for support from Counsel and needs to open and maintain lines of

communication with program staff. Complainant similarly could benefit from increased and more positive collegial contact within the Office of Chief Counsel. Contrary to the office norm, she keeps her office door closed at all times, suggesting a lack of receptivity to interactions with colleagues as well as program clients. Complainant also projects an attitude of negativity, skepticism and cynicism concerning office and agency norms and policies. On a number of occasions, suggestions from Complainant's immediate supervisor that Complainant undertake "knowledge transfer," program outreach or client developmental activities have been ignored. On other occasions, Complainant has challenged such suggestions as unrealistic or not feasible in light of her existing work load.

(5) While Complainant has made definitive strides in developing expertise in several specialty legal areas, including the Agency's NEPA implementation order, the Paperwork Reduction Act and the Small Business Regulatory Enforcement Fairness Act, in none of these areas has her expertise reached the level where she can credibly be considered a "national authority" for the agency as reflected in the applicable expectations for promotion to the GS-15 level. Moreover, until Complainant responds to the previously referenced needs for improvement in such areas as communication practices and client outreach initiatives, her accessibility and receptivity are not likely to rise to the level anticipated by the subject matter expertise factor for GS-15 performance.

2. Identify and describe, with specificity and detail, each and every alleged conversation, discussion, communication, offer of assistance, feedback, advice and/or counseling session, involving Complainant Walls, Brigham McCown, Judith A. Rutledge and/or Suzanne O'Malley, concerning Complainant's request for promotion to the GS-15 level, including but not limited to the date(s) the alleged counseling or mediation occurred; the management officials involved; whether Complainant Walls was informed of the steps she supposedly needed to take in order to qualify for a GS-15 position; any actions or inactions taken as a result; and/or any documentation or memorization of the meeting and/or discussions.

4

**Response:** Complainant has expressed her interest in attaining a GS-15 level position since very early in her supervisory relationship with Assistant Chief Counsel Suzanne O'Malley, a relationship which commenced in January 2000. Since several employees under Ms. O'Malley's supervision were interested in attaining a GS-15, in 2000 and 2001, Ms. O'Malley discussed with Acting Chief Counsel Judith Rutledge the office's performance expectations for promotion to the GS-15 level on several occasions. These discussions were exploratory in nature and did not focus on performance patterns of any particular employee. Rather they were initiated by Ms. O'Malley to develop an understanding of office promotion policies and expectations which she might in turn pass along to employees inquiring about promotability to the GS-15 level.

Specifically with regard to Complainant's interest in and goal of attaining a promotion to the GS-15 level, Ms. O'Malley has discussed with Complainant the office's expectations for GS-15 attorneys in most, if not all, of the interim and final performance appraisal discussions with Complainant. Performance appraisal discussions between Complainant and Ms. O'Malley occurred on the following dates:

| Interim Appraisal discussion | Final Appraisal discussion |
|---|---|
| August 16, 2001 | November 20, 2001 |
| June 13, 2002 | November 27, 2002 |
| August 14, 2003 | March 18, 2004 |
| March 31, 2004 | July 29, 2004 |
| March 31, 2005 | July 28, 2005 |

Although specific recommendations have varied from one performance appraisal discussion to another, areas for recommended focus and improvement consistently noted have included greater proactiveness in reaching out to and conveying an interest in clients, increased accessibility to program offices and colleagues within Counsel's Office, heightened initiative in presenting ideas and implementing plans for improved legal services and knowledge transfer, greater sensitivity to communication protocols within

5

the agency, and increased knowledge with agency program initiatives and policy considerations.

During the March 18, 2004, final performance appraisal discussion, Ms. O'Malley provided Complainant with a list of suggested focus areas for the upcoming appraisal period. ( See Agency response to document request no. 14  ). Prior to the July 29, 2005 final performance appraisal discussion, Ms. O'Malley prepared a set of performance expectation notes to guide the discussion with Complainant (See Agency response to document request no. 16  ). Those discussion notes likewise reflected suggestions for future performance initiatives to assist Complainant in achieving and sustaining performance at the Gs-15 level. Ms. O'Mally used those notes as an outline to guide her most recent performance appraisal conversation with Complainant.

In addition to the performance appraisal conversations referenced above, Complainant's GS-15 promotion prospects were addressed at a meeting with Ms. Rutledge, Ms. O'Malley and Complainant on February 10, 2004. At that meeting, Ms. Rutledge advised Complainant that she was performing acceptably at the GS-14 level and noted that Complianant would have to elevate her performance considerably to be considered for a promotion to the GS-15 level, were such a position to become available in Counsel's office. Ms. Rutledge then asked Ms. O'Malley to provide Complainant with examples of performance areas in which she would need to demonstrate a high level of proficiency before she could be considered qualified for a GS-15 position. The information provided to Complainant by Ms. O;Malley essentially paralleled that subsequently shared with Complainant in greater detail at the March 18, 2004 final performance appraisal discussion referenced above. Both Ms. O'Malley and Ms. Rutledge assured Complainant during the February 10, 2004 meeting that they were confident she was capable of achieving the required level of proficiency in the areas for improvement. (See response to Document Request no. 14)

In addition to the performance discussions on February 10, 2004, Ms. Rutledge and Mr. McCown met with Complainant on February 6 and discussed similar information related

to skills and performance as described above. Ms. Rutledge offered to assist Complainant identify skills for development and outline training and assignments that would her develop her skills.

3. If the Agency contends that Complainant has not demonstrated "leadership and performance attributes essential to the GS-15 level," identify and describe, with specificity and detail, why the Agency contends that Complainant has not demonstrated ability to perform at the GS-15 level and set forth, with specificity and detail, the Agency's decision-making or reasons for its contention, including but not limited to any alleged performance deficiencies by Complainant, specific assignments, projects, performance criteria or goals that were allegedly insufficient, or anything else that the Agency alleges that supposedly supports its contention.

**Response:** See Agency response to Interrogatory No. 1.

4. If the Agency contends that Complainant has not demonstrated "the initiative, leadership, motivation and analytical skills required at the GS-15 level," identify and describe, with specificity and detail, why the Agency contends that Complainant has not demonstrated ability to perform beyond her current level and set forth, with specificity and detail, the Agency's decision-making or reasons for its contention, including but not limited to any alleged performance deficiencies by Complainant, specific assignments, projects, performance criteria or goals that were allegedly insufficient, or anything else that the Agency alleges that supposedly supports its contention.

**Response:** See Agency response to Interrogatory No. 1

5. If the Agency contends that Complainant "needs to expand her knowledge of FMCSA programs and regulations" and/or "needs to develop an awareness of the policy and political considerations related to those programs," identify and describe, with specificity and detail, why the Agency contends that Complainant has not demonstrated such knowledge and set forth, with specificity and detail, the Agency's decision-making or

7

reasons for its contention, including but not limited to any alleged performance deficiencies by Complainant, specific assignments, projects, performance criteria or goals that were allegedly insufficient, or anything else that the Agency alleges that supposedly supports its contention.

**Response**: See Agency response to Interrogatory No. 1

6. If the Agency contends that Complainant needs to improve her interaction with program and/or office clients, identify and describe, with specificity and detail, why the Agency contends that Complainant's performance is deficient and set forth, with specificity and detail, the Agency's decision-making or reasons for its contention, including but not limited to any alleged performance deficiencies by Complainant, specific assignments, projects, performance criteria or goals that were allegedly insufficient, or anything else that the Agency alleges that supposedly supports its contention.

**Response:** See Agency response to Interrogatory No. 1

7. From January 2000 to the present, identify and describe, with specificity and detail, each and every project and/or assignment given to Complainant that involved an issues of national importance, the supervisor making the assignment, all employees involved on the project, and for each, identify with specificity the performance of Complainant with respect to each project and/or assignment.

**Response:** In responding to this interrogatory, "an issues [sic] of national importance" is understood to mean highly significant matters with precedent-setting and extreme policy-altering impact on the motor carrier industry or the Federal Motor Carrier Safety Administration. In this context, Suzanne O'Malley, Complainant's immediate supervisor would identify Complainant's assignment as the lead attorney responsible for development of an agency policy to implement NEPA. This assignment was made to Complainant by Ms. O'Malley. Responsibilities for completing the assignment included

8

coordinating development of a draft order providing public notice and soliciting comment on proposed procedures for carrying out agency responsibilities under NEPA and then coordinating development of the agency's final NEPA Order (issued on March 1, 2004).

In carrying out these responsibilities, Complainant was required to convene a panel of agency, Departmental, and external NEPA experts to provide advice, coordinate the agency's NEPA Order development process with Office of the Secretary's Policy staff and Office of the General Counsel's litigation staff, and oversee an agency rulemaking development team including environmental program and regulatory development staff members. In addition to Ms O'Malley and Ms. Rutledge who provided policy direction and review to Complaints during the NEPA Order development process, other agency employees who supported this initiative included Charlene Sanders of the Office of Chief Counsel, David R. Miller of the Regulatory Development Division and FMCSA economist Chuck Rombro.

Complainant worked diligently on this long-term assignment and was a key contributor to successful completion of the NEPA Order. In recognition of her contributions to this initiative, she received a monetary Special Act Award in FY 2004.

8. Identify and describe, with specificity and detail, any and all policies, procedures, factors, criteria, professional judgment or any other indicia utilized by Brigham McCown, Judith A. Rutledge and/or Suzanne O'Malley to determine whether or not Complainant demonstrated ability to work successfully at the GS-15 level.

   **Response:** Many factors and criteria apply to determine whether an employee meets the standards of a GS-15 non-supervisory attorney. OPM standards governing classification of attorneys at all levels, including the GS-15 level, are explained on the following link to OPM;s website: http://www.opm.gov/fedclass/gs0905.pdf. Counsel's management's evaluation of Complainant's qualifications for a GS-15 has been guided by those standards. The responses to Interrogatories 1,3,4,5, and 6 above explain how Counsel management has evaluated Complainant's performance compared to the GS-15

standards. In addition, the May 6, 1994 memorandum from former General Counsel Kaplan, at tab 7 of Volume II of the ROI, also contains applicable standards.

9. Identify and describe, with specificity and detail, MC-CC's policies, rules, regulations, and/or directives, whether formal or informal, relied upon, or referring or relating to the competitive or noncompetitive promotion of attorneys to the GS-15 level.

**Response:** Secretary's memorandum of January 2005 provided in response to Document request no. 28 and memorandum from former General Counsel Kaplan referenced in response to Interrogatory no. 8.

10. Identify and describe, with specificity and detail, the Agency's decision-making with respect to denying Complainant Walls participation into the Executive Potential Program (EPP).

**Response:** Complainant asked to be nominated for the EPP in FY 2004. Deputy Chief Counsel Rutledge and Assistant Chief Counsel O'Malley discussed the staffing situation in the Enforcement and Regulatory Affairs Division and the strain placed on limited resources when an employee is not available to work full-time on office assignments. Another attorney in the Division was FMCSA's EPP participant in FY 2003 and was required to spend significant time on detail to other agencies and on assignments related to the EPP program. His absence required other attorneys to pick up the extra work. From this experience, Ms. Rutlege determined that Counsel's office could not afford to have an employee in the program each year at its existing staffing level. She also doubted the agency would select its sole EPP participant from Counsel's office in consecutive years. For these reasons, she informed Complainant that Counsel's office would not nominate a candidate for the EPP program in FY 2004. She suggested Complainant prepare for a future nomination by soliciting and handling assignments that demonstrate her leadership qualities and by developing a plan to demonstrate her qualification for the program. Ms. O'Malley and Ms. Rutledge offered to work with Complainant to prepare a plan of action but Complainant has not accepted the offer.

10

11. From 2000 to the present, identify each and every employee in MC-CC who participated in the EPP, including but not limited to, the rational and/or decision-making as to why the employee was selected for EPP, the supervisors/management officials involved in the decision making to select the employee, the race, gender and age of the employee who participated, and whether s/he has participated in any EEO activity.

**Response:** The only employee from MC-CC who participated in the EPP was Joe Solomey, Caucasian, Male, DOB May 4, 1958; No EEO activity in FMCSA. Ms. Rutlege and Ms. O'Malley nominated Mr. Solomey. See Agency Response to Document Requests No. 19 for an explanantion of the basis for the nomination and the selection process.

12.    Identify and describe, with specificity and detail, the Agency's decision-making with respect to the promotion of Mr. Joe Solomey to a GS-15 level.

**Response:** Mr. Joe Solomey was not promoted to the GS-15 level while employed at MC-CC.

13. Identify and describe, with specificity and detail, the Agency's decision-making with respect to the selection of Mark Rigrodsy for the Assistant Chief Counsel of General Law position, GS-15 level.

**Response:** The Agency objects to this interrogatory as irrelevant to the issues in this complaint and unlikely to lead to relevant evidence since Complainant did not apply for this position. Without waiving this objection, Mr. Rigrodsy was selected as the most qualified candidate for the position. See Agency Response to Document Request no. 6 for an explanation of why Mr. Rigrodsy was selected.

14.    Identify and describe, with specificity and detail, the Agency's decision-making with respect to the non-selection of Patricia Burke for the Assistant Chief Counsel of

11

General Law position, GS-15 level.

      **Response:** The Agency objects to this interrogatory as irrelevant to the issues in this complaint and unlikely to lead to relevant evidence since Complainant did not apply for this position and the position is not at issue in this complaint.

15. Identify and describe, with specificity and detail, the Agency's decision-making with respect to the selection of Sue Lawless for the position of Assistant Chief Counsel of the Enforcement Division, GS-15 level.

      **Response:** Ms. Lawless knows the motor carrier laws, regulations, programs, enforcement process and employees at the Federal Motor Carrier Safety Administration. She has litigation experience from her days in private practice and knows the Rules of Evidence, the Rules of Civil Procedure, how to prepare briefs and how to interact with the Department of Justice. Ms. Lawless knows the policies and procedures that apply to the agency's enforcement program. She has worked with State officials who administer FMCSA's safety program at the state level and is familiar with MCSAP program. As a leader, Ms. Lawless has participated on key FMCSA taskforces to develop new approaches to the compliance review process and enforcement programs. In that capacity, she has worked with program staff and lawyers and bridged the gap productively. As a field attorney, she has demonstrated an understanding of how to balance policy and program considerations for the long term viability of a program. In summary, Ms. Lawless knows the motor carrier programs, has litigation experience, is aware of policy issues and possesses leadership/teamwork ability and skills. These characteristics made her well-qualified for the Assistant Chief Counsel position.

16. Identify and describe, with specificity and detail, the Agency's decision-making with respect to the selection of Brian Yonish for the position of Assistant Chief Counsel of the Enforcement Division, GS-15 level.

      **Response:** The Assistant Chief Counsel of the Enforcement and Litigation

12

Divison must lead a staff of attorneys, manage legal services for the enforcement program, oversee litigation and advise FMCSA and DOT leadership on a variety of legal issues related to FMCSA's Program. By interview and experience, Mr. Yonish demonstrated the attributes for the position. Through his career, Mr. Yonish has learned new programs and applicable laws. His experience demonstrated that he was able to learn the motor carrier program. For a further and detailed explanation of why Mr. Yonish was selected, see Judith Rutledge's affidavit in Volume I of the ROI, p. 10.

17. Identify all candidates or individuals who were considered by management for the Assistant Chief Counsel of the Enforcement Division position, GS-15, including, but not limited to, the date of birth, race, gender of the candidate, whether the candidate engaged in protected activity; the candidate's position, salary, grade level, experience and educational background; the date the candidate applied for the position; the reasons why the individual was and/or was not selected; the person(s) responsible for the Agency's decision-making; the candidate's background and experience, including experience in enforcement and knowledge of motor carrier issues; and the date each candidate achieved a GS-14 grade level or higher.

    **Response:** See response to Document Request no.11 where the Agency has produced the resumes of the 12 candidates who were interviewed for the position. Of the 12 candidates, eight (8) were male and (4) were female. No record of their race exists beyond what is on their resumes. For further information as to the reasons why the top 4 candidates were rated so highly, see Agency response to Document Request nos. 3 and 5.

18. If you claim that the person selected for the for the Assistant Chief Counsel of the Enforcement Division position, GS-15, was more qualified than Complainant, describe in detail and with specificity, all facts, discussions or other criteria which form the basis for your contention.

    **Response:** See Agency Response to Interrogatory nos 1 and 16 and 17.

13

19. Identify and describe, with specificity and detail all communications, conversations, meetings, and/or discussions concerning the selection process for the Assistant Chief Counsel of the Enforcement Division position, GS-15, including but not limited to the decision-makers involved in the selection process, the dates these communication(s) took place and the substance of the communication(s).

**Response:** Chief Counsel Brigham McCown and Deputy Chief Counsel Judith Rutledge were the selecting officials in the selection process. Discussions took place at various times between June 2004 and August 2004. Interviews were conducted on June 21, 2004 (Barrios, Glasser, Hart, Bell), June 22 (Yonish), June 23 (Booker, Convertino, Stokols), June 24 (Walls), June 25 (Kirk and Snyder), June 28 (Lawless); July 6 (Kirk, Yonish, Snyder); July 8 (Lawless); August 10 (Snyder); August 13 (Yonish). Between interviews, Mr. McCown and Ms. Rutledge discussed the candidates match with the position: experience, personality, leadership characteristics, background, job history, litigation experience, knowledge of the litigation process, experience with enforcement and working with investigators, and strengths and weaknesses of the candidates, how their experience matched the job requirements and how their personality and demeanor might fit in the office. No notes exist of the discussions but the resumes produced in response to Document Request no.11 provide information about the candidates.

20. Identify and describe, with specificity and detail, all facts, discussions, policies, procedures, regulations, customs, manuals, instructions, reports, memoranda, or directives, whether formal or informal, or any other criteria which relates to the Agency's decision-making with respect to denying Complainant a GS-15 Level position, a promotion, or otherwise the denial of a pay increase to the GS-15 level.

**Response:** See responses to Interrogatories 1,2,3,4,5,6,8, and 9

21. Identify and describe, with specificity and detail, why the Agency re-posted, re-

14

announced and/or selected several different candidates for the position of Assistant Chief Counsel of the Enforcement Division, GS-15 level.

**Response:** After interviewing 12 candidates, the Chief Counsel and Deputy Chief Counsel narrowed the list to 4 top prospects. Sue Lawless led the list as the best qualified for the position. The Chief Counsel obtained concurrence from the General Counsel on July 20, 2004 to hire Ms. Lawless and offered her the job. She declined. The Chief Counsel and Deputy Chief Counsel considered the other three top candidates, David Snyder, Brian Yonish and Dennis Kirk to be well-qualified and obtained concurrence from the General Counsel on August 6, 2004, to hire any of the three. After discussing the three candidates, the Chief Counsel and Deputy Chief Counsel invited Mr. Snyder to meet with them on August 10. During the interview, all parties agreed the position, as envisioned by Counsel's office, was not right for Mr. Snyder. He withdrew his name from consideration. On August 13, Brian Yonish met with the Chief Counsel and Deputy Chief Counsel for a final discussion about the position. At the meeting, the decision was made that Mr. Yonish was an excellent match for the Assistant Chief Counsel position.

22. From 2000 to the present, identify all employees in MC-CC at the GS-14 and GS15 level, including but not limited to the position, race, gender and age of the employee, whether s/he has participated in any EEO activity, and state, with specificity and detail, when any of these employees received the GS-15 pay grade level, setting forth the supervisors/management officials involved in the decision making, and the rationale or decision-making for the change in the employee's pay grade level.

**Response:** See documents produced for Request for Document no. 13.

23. From January 2000 to the present, identify all candidates who were offered signing bonuses in MC-CC, including but not limited to, the amount of the bonus, the rationale or reasons for giving the bonus, the supervisors/management officials involved in the decision making, and the age, race, gender of the employee and whether s/he has

participated in any EEO activity.

**Response:** Brian D. Downey, age 33, Caucasian, male; $7,000 recruitment bonus; Managers involved: Marc Rigrodsky and Brigham McCown. Participation in EEO activity – not at FMCSA. See response to Request for Admissions no.3.

24. From January 2000 to the present, identify all employees in MC-CC, who have received any type of monetary award or bonus, including but not limited to, the amount of the awards or bonus, the rationale or reasons for giving the monetary award or bonus, the supervisors/management officials involved in the decision making, the age, race, gender of the employee and whether s/he has participated in any EEO activity.

**Response:** See documents produced for Request for Documents no. 20

25. From January 2000 to the present, identify all training programs, guidance, classes and/or instruction received by employees in MC-CC, including but not limited to, the employee who received such training, the cost of the training, they type of training received, the supervisors/management officials involved in the decision making, and the age, race, gender of the employee who received the training, and whether s/he has participated in any EEO activity.

**Response:** See documents produced for Request for Documents no. 21.

26. From January 2000 to the present, identify all employees in MC-CC who have participated in any form of protected activity, whether formal or informal, including but not limited to the filling of an administrative grievance or complaint, such as EEO, EEOC, MSPB, or Federal Court litigation.

**Response:** To the best of the Agency's knowledge and belief the following employees in MC-CC have participated in protected activity: Rosemary Dettling and Elaine Walls.

16

27. Identify and describe, with specificity and detail, any and all allegations, charges, complaints, correspondence, or claims made, whether formal or informal, in any forum, administrative, court or alternative dispute resolution, by any current or former employee which names and/or involves accusations concerning the management or supervision by Brigham McCown, Judith A. Rutledge and/or Suzanne O'Malley, including but not limited to any type of employment discrimination claim and/or adverse employment/personnel action claim.

**Response:** Rosemary Dettling has filed an EEO complaint with the EEOC which is still in the investigative process ( the hearing stage before an EEOC administrative judge) and thus not public information. The Complainant and Ms. Dettling have also filed wage discrimination claims at the Court of Federal Claims which is enclosed in response to Document Request no. 26.

28. Identify and describe, with specificity and detail, the circumstances surrounding the development of the Secretary of Transportation's (Secretary) memorandum of January 13, 2005, concerning the Promotion of DOT attorneys to the GS-15 attorney level.

**Response:** The Agency objects to this interrogatory to the extent that it is seeking information protected by the Agency's deliberative process. Without waiving this objection, the Agency has produced the action memorandum to the Secretary describing the circumstances surrounding the development of the Secretary's January 13, 2005 memorandum as well as the latter document in response to Document request no.28.

29. Identify and describe with specificity and detail, any and all legal or factual defenses you intend to raise in this litigation and at trial, and state all facts upon which you rely or base your defenses.

**Response:** The Agency objects to this Interrogatory on the grounds that it seeks information that is protected by the work product doctrine or subject to a claim of privilege, including, but not limited to, the attorney-client privilege. The Agency also

objects to this request to the extent that it seeks a legal conclusion or legal analysis. Without waiving this objection, the Agency has not yet developed all legal and factual defenses that it intends to raise in this litigation and at trial, however, in general it is the Agency's position that all of its actions that are at issue were legitimate, non-discriminatory management decisions/actions. See the Agency's response to previous Interrogatories and management's affidavits in the ROI for the facts upon which the Agency bases its defenses.

30.    Identify and state the name, position or title, and if known, the address and telephone number of each person who may have information or knowledge relevant to the allegations in the Complaint, including but not limited to witnesses you intend to call in your case and whether the witness has provided a statement, and provide a detailed description of the facts you believe each person may know and/or the nature and substance of their intended testimony.

**Response:** Persons who may have information or knowledge relevant to the allegations in the complaint are identified in the Report of Investigation (ROI) in Complainant's possession. The Agency has not yet determined which witnesses it intends to call at hearing.

Respectfully Submitted,

Debra J. Rosen
Agency Representative
U.S. Dept. of Transportation
Office of General Counsel, C-10
400 7th Street, SW
Washington, DC  20590
(202) 366-9165
fax: (202) 366-9170

18

## CERTIFICATE OF SERVICE

I herby certify that the foregoing Agency Response to Interrogatories was sent on this 12th of August, 2005 :
By fax to:

Camilla C. McKinney
1100 15th Street, NW, Suite 300
Washington, DC  20005-1720
Fax (202) 517-9111

By first class mail to:

Elaine Walls
9905 Edgewater Terrace
Fort Washington, MD  20744

_____
Debra J. Rosen
Agency Representataive

19