# EXHIBIT 14

Case 1:06-cv-01259-TFH-DAR   Document 17-16   Filed 10/17/2007   Page 1 of 8

UNITED STATES DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
DEPARTMENTAL OFFICE OF CIVIL RIGHTS

AFFIDAVIT

**STATE OF** District of Columbia

**CITY OF** Washington

I, <u>Suzanne O'Malley</u>, being first duly sworn on oath, make the following statement freely and voluntarily to <u>Lisa C. Hetrick</u> who has identified herself to me as an EEO Investigator, for the U.S. Department of Transportation, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any party who has an official interest.

### Allegation:
The Complainant, **Elaine Walls**, is alleging that she was discriminated against based on her **race (African American), color (Black), sex (female), age (49, DOB 03-11-55) and reprisal (EEO activity)** when: 1) in February 2004, she was denied a promotion to the GS-15 level; 2) management denied her participation into the Executive Potential Program (EPP); 3) she learned that her Caucasian male counterparts received higher performance ratings, awards, and bonuses; 4) on September 14, 2004, she was not selected for the position of Assistant Chief Counsel of Enforcement; and 5) pre-approved training was cancelled for her and two female co-workers while the training for their male counterparts was permitted one month before.

1. For record, please state your race, color, age, sex, position, series and grade and how long you have been with the FMCSA.
   I am a Caucasian, white female, 51 years of age. I am the Assistant Chief Counsel for Regulatory Affairs in the Office of Chief Counsel, Federal Motor Carrier Safety Administration, U.S. Department of Transportation (GS-0905). I have been employed by the FMCSA since October 1, 2000.

2. For the record, please list your chain of command.
   My direct supervisor is FMCSA Deputy Chief Counsel Judith A. Rutledge. My second-line supervisor is FMCSA Chief Counsel Brigham A. McCown.

Page 1 of 7                                                                                      Initials

3. For the record, please explain if have had any prior EEO activity. Also, please identify if the Complainant was a party to or involved in any way in your prior EEO activity.
   I have not been involved in any prior EEO activity.

4. Please identify in what capacity you know or have known the Complainant and for how long.
   I have supervised Elaine Walls since I assumed my current position in October 2000. From April 1996 until that time I worked as a colleague of Ms. Walls in the Federal Highway Administration's Office of Chief Counsel. Prior to that, I worked as a colleague of Ms. Walls in the Interstate Commerce Commission from 1980 until January 1996.

5. She states in her complaint that she spoke with you in December 2003 about being nominated as a participant in the EPP. Judy Rutledge informed her that she would not be nominated for 2004 because Joe Solomey had been nominated last year. Rutledge also advised her to speak with Brigham McCown regarding her interest in the EPP.
   A. What was your opinion of the Complainant being nominated as a participant in the EPP? Please explain in detail.
   When she expressed her interest, I advised Ms. Walls that it was Counsel's policy to make EPP nominations at the office level and told her I would apprise Ms. Rutledge of her interest. I also cautioned her that, since a Counsel's Office employee had been selected to participate in the EPP in the previous nominating cycle and since the office was particularly short-staffed, I did not think it was likely that the office would be in a realistic position to nominate a member of Counsel's staff to participate in the EPP at that time.

   B. Did you speak with Rutledge and/or McCown about nominating the Complainant? If so, what was the outcome? Please explain in detail.
   I spoke to Ms. Rutledge and conveyed Ms. Walls' interest in the nomination. Ms. Rutledge indicated that she did not believe the office would be in a position to make a nomination that year and, in any event, given our successful nomination the previous year, she did not anticipate that a nominee from Counsel would have a likelihood of success as the prevailing agency nominee. Ms. Rutledge subsequently confirmed in a conversation with me that she had discussed the EPP with Mr. McCown and that, indeed, the office would not be submitting a nomination.

   C. How often are employees nominated for the EPP? Please explain in detail.
   Counsel's Office nominated an employee for the EPP in 2003. I am not familiar with the timing cycle for soliciting EPP nominations in general, but believe the program annually initiates a new class and solicits nominations from the agency on an annual cycle.

   D. Was anyone nominated for 2004 or 2005?

   No Counsel employees were nominated for the 2004 EPP. I am not aware that

nominations have been solicited for the 2005 program.

6. The Complainant alleges that on February 6, 2004, she met with Rutledge and McCown regarding her opportunity to participate in the EPP, other options for her professional development and her request for a promotion to the GS-15. During this meeting, Rutledge informed her that she was almost at the GS-15 level, but she needed to develop a plan to get her there.

   **A. Why doesn't Rutledge think the Complainant is working at a GS-15 level currently? Please explain in detail.**
   This question should be posed to Ms. Rutledge.

   **B. What sort of plan is Rutledge going to develop in order for the Complainant to attain the GS-15 and why? Please explain in detail.**
   This question should be posed to Ms. Rutledge.

   **C. What does the Complainant need or need to do in order for her to obtain the GS-15? Please explain in detail.**
   It is my understanding that there currently are no vacant non-supervisory GS-15 positions available within Counsel's Office. Even if positions were available into which qualified employees could be promoted, however, there is no single prescription or developmental plan for ensuring that a GS-14 employee is able to qualify for or obtain a GS-15 position in Counsel's Office. I have suggested to Ms. Walls that, should a GS-15 position become available, her prospects for favorable consideration could be enhanced by presenting more draft work products that do not require revision and that are fully responsive to initial instructions provided to her; increasing the frequency of her contacts with program office clients and encouraging their perception of her accessibility; projecting a "proactive" attitude in offering to support program clients and providing legal input to program initiatives; and undertaking some long-range assignments to develop regulatory support materials for agency clients (for example, preparation of a regulatory evaluation guidance document). There is no "promotability checklist," however.

   **D. Have any other employee been put on a plan in order to obtain a GS-15? Please explain in detail.**
   I am not aware of any plans of this nature. To the extent this question implies that Ms. Walls was put on such a plan, I do not agree. See response to Question 6C above.

   **E. How did other employees qualify for their GS-15? Please explain in detail.**
   No other employees have been promoted to a GS-15 while under my supervision.

7. The Complainant also alleges that at the meeting McCown informed her that her you stated that you did not believe that the Complainant was qualified for the promotion.

   **A. Were you aware the McCown made this statement to the Complainant? Please**

explain in detail.

I learned of the statement from Ms. Rutledge after the meeting between Ms. Walls and Mr. McCown took place

**B. Why would McCown make this statement to the Complainant? Please explain in detail.**
This question should be posed to Mr. McCown.

**C. As the Complainant's immediate supervisor, do you believe that she is qualified for the promotion to the GS-15? Please explain in detail.**
I believe Ms. Walls is a competent and solid performer at the GS-14 level and is making significant strides toward promotability to the GS-15 level. At this time, however, I do not believe Ms. Walls has fully achieved a level of performance at the GS-15 level that, in the estimation of her full MC-CC supervisory chain, would qualify her for a GS-15 position, were one to become available in the office.

8.  The Complainant goes on to allege that a second meeting took place on February 10, 2004, between her, you and Rutledge. She explains that you continued to support her in her effort obtain a promotion in the meeting. Rutledge denied her request for a promotion and denied her request to be recommended as a candidate for EPP program until both you and Rutledge had a chance to develop a plan for her to accomplish this.

**A. What was Rutledge's justification for denying the Complainant's request for a promotion to the GS-15? Please explain in detail.**
This question should be posed to Ms. Rutledge.

**B. Did Rutledge give the Complainant an indication of when these plans were to be put into effect and for how long? Please explain in detail.**
As referenced in my responses to Questions 6C and 6D, I do not agree that Ms. Walls was to be placed under a specific "plan" directed at qualifying her for a GS-15. She was advised by Ms. Rutledge that we would continue to provide her with specific feedback and suggestions for performance that, if followed, should enhance her prospects for promotability.

**C. What kind of plan was Rutledge talking about putting the Complainant on to obtain her promotion? Please explain in detail.**
This question should be posed to Ms. Rutledge. See my response to Question 9A above.

**D. What kind of plan was Rutledge talking about putting the Complainant on to obtain a recommendation as a candidate for the EPP? Please explain in detail.**
This question should be posed to Ms. Rutledge.

**E. Has any other employee been put on a plan in order for them to attain their GS-15? Please explain in detail and identify their race, color, sex and age.**

Page 4 of 7                                                                                               Initials

I am not aware of any plans of this nature applicable to any employee in Counsel's Office. No employee has been promoted to a GS-15 level or been placed under a promotability plan while under my supervision.

**F. Has any other employee been put on a plan to be eligible and nominated for the EPP? Please explain in detail and identify their race, color sex and age.**
I am not aware of any plans of this nature.

**G. Did Joseph Solomey have or need a plan to become eligible and nominated for the EPP? Please explain in detail.**
No, a plan of this nature was not imposed on Mr. Solomey to qualify him for the EPP.

9. The Complainant also contends that she learned that her Caucasian male counterparts received higher performance ratings, awards, and bonuses.

**A. What was the Complainant's last performance rating?**
Under the "meets requirements/does not meet requirements" (pass/fail) rating system employed by the FMCSA in FY 2004, Ms. Walls received a "meets requirements" performance rating.

**B. What were the performance ratings of her male counterparts?**
Each of Ms. Walls' male counterparts received the same performance rating as she -- "meets requirements."

**C. What awards and bonuses were received by the male counterparts?**
Two of Ms. Walls' male counterparts (and two of her female counterparts) received performance awards for FY 2004. Like Ms. Walls, the majority of Counsel employees did not receive performance awards for the FY 2004 appraisal cycle. (All employees in Counsel's Office received a "meets requirements" performance rating for FY 2004.)

**D. Did the Complainant receive any awards/bonuses?**
In FY 2004, Ms. Walls received a $1500 Special Act or Incentive Award for her performance on a specific assignment relating to developing agency guidance for complying with the National Environmental Policy Act. This represented the highest monetary award for a permanent member of Counsel's staff that year. (Higher awards were presented to a female FHWA attorney and a male OST attorney who assisted Counsel's Office in conducting an environmental impact study.) Special Act or Incentive Awards presented to other Counsel's Office employees for FY 2004 included one at $1400, one at $1000, and 14 other awards ranging from $500 to $900. Five employees did not receive an award for FY 2004.

E. **Please identify the ratings of the females in the office and the ratings of the males in the office. Also please identify any awards or bonuses given and the race, color, sex and age of the recipients.**

As noted in FY 2004, all Counsel's Office employees received a "meets requirements" performance rating under the pass/fail appraisal system then in place. Under the three-tiered rating system in place during FY 2003, Ms. Walls received a "meets or exceeds" performance rating. Six employees (three males and three females) received a higher ("outstanding") performance rating. All other Counsel's Office employees received a "meets or exceeds" performance rating, as did Ms. Walls. I do not have available to me the additional information requested concerning the race, color, and age of the recipients.

10. **Based on the allegations accepted for investigation, do you believe that the Complainant was discriminated against?**

   No, I do not.

11. **Are there any other comments you would like to make at this time?**

   Not at this time.

I HEREBY SOLEMNLY _swear_ THAT:
(SWEAR OR AFFIRM)

I DECLARE UNDER PENALTY OF PERJURY THAT THE INFORMATION CONTAINED IN THE ABOVE PAGES IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. SEE 28 U.S.C. ' 1746. I UNDERSTAND THAT THE INFORMATION I HAVE PROVIDED HEREIN IS NOT TO BE CONFIDENTIAL AND THAT AGENCY REPRESENTATIVES MAY SHOW IT TO THE INTERESTED PARTIES. HOWEVER, I ALSO UNDERSTAND THAT I AM NOT TO PERSONALLY DISSEMINATE THE INFORMATION CONTAINED IN THIS AFFIDAVIT AS SUCH ACTION COULD INTERFERE WITH THE PROCESSING OF THE INVESTIGATION AND COULD VIOLATE PROVISIONS OF THE PRIVACY ACT AND AGENCY POLICIES.

Signature: _Suzanne O'Malley_  Date: _December 15, 2004_
(Affiant's Signature)

Page 7 of 7                                                                 Initials SOM