# EXHIBIT 17

UNITED STATES DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
DEPARTMENTAL OFFICE OF CIVIL RIGHTS

## AFFIDAVIT OF JOSEPH SOLOMEY

**Allegation:**

The Complainant, **Elaine Walls,** is alleging that she was discriminated against based on her **race** (African American), **color** (Black), **sex** (Female), **age** (49, DOB 03-11-55) and **reprisal** (EEO activity) when: **(1)** in February 2004, she was denied a promotion to the GS-15 level; (2) management denied her participation into the Executive Potential Program (EPP); (3) she learned that her Caucasian male counterparts received higher performance ratings, awards, and bonuses; (4) on September 14, 2004, she was not selected for the position of Assistant Chief Counsel of Enforcement; and (5) pre-approved training was cancelled for her and two female co-workers while the training for their male counterparts was permitted one month before.

I, Joseph Solomey, do declare and say under the provisions of 28 U.S.C. § 1746, that:

1. I am a Caucasian, white, 46-year old, male supervisory attorney currently employed by the Research and Special Programs Administration (RSPA). I serve as the Assistant Chief Counsel for Hazardous Materials Safety and Emergency Transportation Law at RSPA, and have held this position since December 14, 2003. This position is a supervisory GS-0905-15 classification. I was employed with the Federal Motor Carrier Safety Administration (FMCSA) as a Trial Attorney from October 1999 to December 13, 2003. I served as a Trial Attorney in the Motor Carrier Law Division at the Federal Highway Administration (FHWA) from June 1993 until October 1999, prior to my transfer to the FMCSA.

2. My current chain of command at RSPA is as follows: Joseph Ahern, Deputy Chief Counsel and Elaine E. Joost, Chief Counsel. While at FMCSA my chain of command on the last day of my employment was: Suzanne O'Malley, Assistant Chief Counsel, Judith A. Rutledge, Deputy Chief Counsel, and Brigham McCown, Chief Counsel.

3. I have had no prior EEO activity.

4. In my capacity at the FMCSA, Elaine Walls, the Complainant, was a co-worker.

5. Question Presented: "Did McCown and Rutledge offer at (sic) GS-15 when they found out you had another job?" Please explain in detail.

Answer: No. Ms. Rutledge never offered me a promotion to a GS-15 attorney level. Mr. McCown, after finding out I had accepted a supervisory GS-15 position at RSPA, made me a promise that he would secure a GS-15 promotion if



I would immediately declined the RSPA job and remain at the FMCSA. In fact, Mr. McCown offered to escort me immediately into Administrator Sandberg's office and secure her promise (because he said he had the power to do just that) of a promotion in the near future if I remained at FMCSA. Mr. McCown merely made a promise, not an offer, and I believed at the time, and believe today that his actions were merely empty promises designed to secure my continued employment at FMCSA at the then GS-14 level.

6. Question Presented: "At the time of the offer, were you eligible for a promotion to the GS-15 level?"

   Answer: Yes, I was eligible for a promotion to the GS-15 level. However, as stated in answer #5 above, there was no offer of a promotion to the GS-15 level.

7. Question Presented: "Prior to their offer of the GS-15, was there any previous talks of promoting you to the GS-15 level?" Please explain in detail.

   Answer: As stated in answer # 5 above, there was no offer of a promotion to the GS-15 level. For the last three rating periods at FMCSA, I had discussions with my immediate supervisor, Suzanne O'Malley, about my potential promotion to the GS-15 level. She was supportive of my request and made the argument for my promotion but Ms. Rutledge steadfastly refused to consider the potential for various reasons. Ms. O'Malley and I spoke to Ms. Rutledge on several occasions about a promotion. Ms. Rutledge would outline various shifting benchmarks that I needed to reach before she would consider such a promotion. I never seemed to be able to satisfy Ms. Rutledge concerns and was even denied the opportunity for a promotion after being awarded the Lawrence A. Schneider Award in 2002, as the Department's attorney of the year with 10 or less years of experience.

8. Question Presented: "In your opinion, do you think you would have been promoted to the GS-15 within a year or so if you had not taken the other job?" Please explain in detail.

   Answer: No. I believe the denial of a promotion to the GS-15 level after being awarded the Department's highest award for an attorney with 10 or less years experience explains the situation I was in and nothing more needs said.

9. Question Presented: "How were you nominated for the EPP?" Please explain in detail.

   Answer: The Executive Potential Program (EPP) is administered by the USDA Graduate School. The EPP is a year-long competency-based leadership program designed to develop senior-level public service employees into more effective leaders through a series of learning experiences. The program is open to any full-time permanent public service employee at the GS-13, 14, or 15 grade levels. You may visit the EPP web-site at www.grad.usda.gov.

2

On October 12, 2002, Retta Besse, the Division Chief for Professional Development and Training sent a memorandum to the FMCSA Associate Administrators, Field Administrators, Division Administrators, and Office Directors seeking the nomination of one employee who may possess exceptional leadership potential. Suzanne O'Malley, my immediate supervisor, and I were looking for management training opportunities as part of my yearly training plan when the memorandum was received by the Chief Counsel's Office. Ms. O'Malley suggested that I apply. I completed the extensive application process, secured Judith Rutledge's signature, and the office forwarded the application to the Training Division. On February 19, 2003, the USDA Graduate School sent me a letter of enrollment in the 2003/2004 EPP Program.

10. Question Presented: "Were you subject to being put on some sort of a plan in order for you to be nominated?" Please explain in detail.

    Answer: No. Every employee of the agency was supposed to develop a yearly training plan. Generally, attorneys have difficulty finding specific training classes to complete a training plan and simply find course during the year in their field of expertise. I was looking for management training classes when the announcement was made that the agency was looking for candidates for the EPP program.

11. Question Presented: "How long did the EPP last?"

    Answer: One year. See answer #9 above.

12. Question Presented: "Did other attorneys take over your workload while you in (sic) the detail."

    Answer: This would be a question for my supervisor. However, as part of my verbal agreement with Judith Rutledge and Suzanne O'Malley I was, and did, retain as much work as possible while going through the EPP program. As an example, I participated in one of my rotational assignments as a Special Assistant to the Chair of the Equal Employment Opportunity Commission (EEOC) from August thru October 2003. I continued to provide litigation support while on that assignment to the office and the Department of Justice, I mentored a junior attorney (Annemarie Ottman) on issues as they arose, and I provided enforcement support to the field attorneys who called with frequency.

13. Question Presented: "Are you familiar with the Complainant's workload?" Please explain in detail.

    Answer: No.

3

14. Question Presented: "Is her workload prohibitive to her being nominated to the EPP?" Please explain in detail.

   Answer: I have no basis to answer the question.

15. Question Presented: "Do you have knowledge of the Complainant being subject to disparate treatment, discrimination and forced to work in a hostile work environment?" Please explain in detail.

   Answer: I agree that a hostile work environment exists at FMCSA (December 2003), but it appears to be is an equal opportunity, non-discriminatory hostile work environment. Everyone feels the wrath of "Judy." The environment at the FMCSA's Chief Counsels Office can be unbearable at times for everyone and this is one of the reasons I sought other employment. Ms. Rutledge is a most difficult supervisor to please and her attitude towards the office and its employees runs hot and cold and can change by the minute. Generally, it is difficult to know how to handle any assignment because you realize no matter how you proceeded the course you plotted would be wrong in her eyes.

   As for Mr. McCown, the attorneys general came to realize he did not know much about the work of the office and he attempted to demoralize his staff by belittling them. I chose to ignore him and seek opportunities elsewhere.

16. Question Presented: "Based on the allegations accepted for investigation, do you believe that the Complainant was discriminated against?"

   Answer: I have no idea. However, I do know that there were two employees in FMCSA's Chief Counsels Office (December 2003) who I'd expect would never get promoted to the GS-15 level while Ms. Rutledge was the Deputy: Elaine Walls and Joseph Solomey.

17. Question Presented: "Are there any other comments you would like to make at this time?"

   Answer: No.

18. This affidavit consists of 5 pages.

The above statement was prepared at the request of Lisa C. Hetrick, who identified herself to me by e-mail on December 1, 2004, as an EEO Investigator, for the United States Department of Transportation. I understand that this statement may be used in evidence and is not confidential, and may be shown to any party who has an official interest in these matters.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

4

Executed on the 10th Day of December, 2004.

_____
Joseph Solomey, Assistant Chief Counsel For
     Hazardous Materials Safety and Emergency
     Transportation Law
Research and Special Programs Administration
400 7th Street, SW., Room 8417
Washington, D.C. 20590
(202) 366-0977

5