# PLAINTIFF'S
# EXHIBIT 22

## UNITED STATES DEPARTMENT OF TRANSPORTATION
## OFFICE OF THE SECRETARY
## DEPARTMENTAL OFFICE OF CIVIL RIGHTS

## AFFIDAVIT

===========================================================================

**STATE OF VIRGINIA**

**CITY OF ARLINGTON**

===========================================================================

I, **Rosemary Dettling**, being first duly sworn on oath, make the following statement freely and voluntarily to **Lisa C. Hetrick** who has identified herself to me as an EEO Investigator, for the U.S. Department of Transportation, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any party who has an official interest.

===========================================================================

**Allegation:**
The Complainant, **Elaine Walls**, is alleging that she was discriminated against based on her **race (African American), color (Black), sex (female), age (49, DOB 03-11-55)** and **reprisal (EEO activity)** when: 1) in February 2004, she was denied a promotion to the GS-15 level; 2) management denied her participation into the Executive Potential Program (EPP); 3) she learned that her Caucasian male counterparts received higher performance ratings, awards, and bonuses; 4) on September 14, 2004, she was not selected for the position of Assistant Chief Counsel of Enforcement; and 5) pre-approved training was cancelled for her and two female co-workers while the training for their male counterparts was permitted one month before.

===========================================================================

1.    For record, please state your race, color, age, sex, position, series and grade and how long you had been with the FMCSA.

Rosemary Dettling, White, age 39, female, Attorney, GS-13, step 7. I have been with FMCSA since November 3, 2002.

2.    For the record, please list your chain of command.

Marc Rigrodsky is my first-line supervisor. Judith Rutledge is my second-line supervisor. Brigham McCown is the Chief Counsel. He oversees all attorneys and signs off on all

1

**Page** 1 **of** 7                                                          **Initials** _RO_

promotions, hires, bonuses, etc.

3.    For the record, please explain if you have had any prior EEO activity. Also, please
      identify if the Complainant was a party to or involved in any way in your prior EEO
      activity.

I filed an EEO complaint against FMCSA in February 2004. I claimed I was subjected to sex
discrimination when I was forced to take a demotion upon hire (from a GS-14 to GS-13). I was
nine months pregnant when I interviewed for the GS-13/14 position. Complainant testified as a
witness in my EEO investigation.

4.    Please identify in what capacity you know or have known the Complainant and for how
      long.

I have known Complainant for two years. We both work in the Office of Chief Counsel as
attorneys. Complainant works in the Enforcement section. I work in the General Law section.

5.    The Complainant states in her complaint that you can provide information regarding the
      following:

      A.    In 2003, male employees were permitted to telecommute while female employees
      who performed the exact job duties were not permitted to telecommute. Please explain in
      detail.

During the first week of January 2004, I found out Mike Falk and Steve Farbman were allowed
to telecommute throughout 2003 while working on enforcement/adjudication cases. In fact, all
the men in the office were permitted to telecommute at that time. Three female attorneys (me,
Jackie Cho, and Annmarie Ottman), who also worked on enforcement/adjudication cases in
2003, were not permitted to telecommute. As soon as the women in the Office complained about
this policy to an EEO Counselor, Mr. McCown canceled telecommuting privileges for everyone.
There is a policy on the books that DOT/FMCSA is pro-telecommuting, but Mr. McCown does
not permit us to telecommute. He eventually withheld telecommuting privileges from men, but it
was after-the-fact and only after we filed EEO complaints.

      B.    In 2004, Joe Solomey, male Caucasian, was offered a promotion to the GS-15
      level, while the Complainant with similar qualification was denied a promotion to the
      GS-15 level. Please explain in detail.

It is well-known in the office that Mr. Solomey was offered a promotion to a GS-15. Before the
promotion went into effect, he accepted a GS-15 in another office in DOT. Complainant should
have received a promotion to a GS-15 because she has done the same work as Mr. Solomey and
other male GS-15s in the office. She has more government time in service and more motor

2

**Page** 2 **of** 9                                    **Initials** RO

carrier experience than any male GS-15 attorney, but men are compensated at a higher level. Although Complainant had more experience than Mr. Solomey, Mr. McCown offered him a GS-15. Mr. McCown only promotes men to GS-14 and GS-15 positions. Since we instituted our EEOC and federal court cases, he hired one woman at a GS-14. Prior to our filing formal complaints, Mr. McCown had not promoted a woman to a GS-14 or GS-15. If you look at the resumes of the men Mr. McCown has hired or promoted over the last two years, you will see 95% of the selectees are male and almost all have military or law enforcement experience. Mr. McCown prefers hiring and promoting male candidates with military and law enforcement experience. This policy has a disparate impact on female candidates.

> C.    Male attorneys hired in late 2003/early 2004 were allowed to take Regular Days Off (RDOs) immediately, while female attorneys hired in 2002 were told they could not take RDOs until they had worked in the office for four (4) months. Please explain in detail.

Males attorneys hired in 2004 were given RDOs (Regular Day Off) as soon as they were hired. Ken William and Bryan Downey were hired in 2004 and were given RDOs immediately. The female attorneys hired in 2002 (Ms. Dettling, Ms. Cho, and Ms. Ottman) were required to wait four months before we were permitted to take RDOs. The male attorneys hired before us in 2000 and 2001 were permitted to take RDOs immediately. Kirk Foster, Bob Brown, and Florian Chess were hired in 2000 and 2001 and were all permitted to take RDOs immediately. They were also permitted to telecommute immediately. Management implements different policies and practices for men and women. After we filed EEO complaints, management countered by saying the disparate treatment is due to a "new office policy." However, the policies change depending on the sex of the applicant or employee. Management has policies that favor men, and then when women are hired, they change the policy. The next year, when men are hired, management changes the policy back to its original form.

Although Mr. McCown eventually took away RDO privileges from Mr. Downey and Mr. William, and made them wait three months, he did it after-the-fact and only after we filed EEO complaints against him.

> D.    Management hires less qualified male employees from outside FMCSA for supervisory positions and rejects more qualified female applicants within FMCSA. Please explain in detail.

Management retaliated against Complainant when they hired Brian Yonish for the supervisor of Enforcement position. It is common knowledge in the office that he is less qualified than Complainant for the position. Complainant was not hired because she is a black woman and she filed an EEO complaint against Mr. McCown. When Mr. McCown received the list of eligibles, I'm sure he saw Complainant was the most qualified applicant on the list. He was determined not to hire her. He instead offered the position to a female candidate, Sue Lawless, who did not

3

even apply for the position. She wasn't even on the cert list. Mr. McCown asked Ms. Lawless if she would accept the position. He did that because he did not want to hire Complainant and he knew Ms. Lawless, unlike the applicants on the list, had some enforcement experience. When Ms. Lawless rejected the position, Mr. McCown offered it to two or three unqualified male candidates. They had absolutely no enforcement or motor carrier experience. I have been litigating federal employment law cases for many years and I have never seen a more egregious, clear-cut case of retaliation. Mr. McCown is the deciding official on all promotions and hires, and he is ultimately responsible for this retaliation. In 2003, when I first asked about Mr. Rigrodsky's reinstatement to a GS-14, he told me Mr. McCown wanted me to write a "promotion justification" memo addressed to Mr. McCown. Ms. Ottman, Ms. Cho, and Ms. Walls were also required to submit justification paperwork directly to Mr. McCown. Mr. McCown tries to distance himself from the hiring decisions and acts like Ms. Rutledge is the "deciding official," but it's a fabrication. Mr. McCown was personally involved in the promotions, bonuses, compensation, and hiring of all employees in the last two years.

My supervisor, Mr. Rigrodsky, and Complainant's supervisor, Ms. O'Malley, know Ms. Rutledge and Mr. McCown discriminate against women and retaliated against individuals who engage in the EEO process. Both of our supervisors have recommended that we receive promotions. They are reluctant to repeatedly voice their recommendations because Ms. Rutledge has a bad temper and she often screams and curses at them. Mr. Rigrodsky officially recommended that I be promoted to a GS-14 last June 2004. He said he is afraid to keep bringing it up to Mr. McCown and Ms. Rutledge because they don't want to hear about it. Mr. Rigrodsky is so intimidated by Mr. McCown and Ms. Rutledge that he does whatever they want. Just last week, he helped Ms. Rutledge write her responses to these interrogatories. He compromised his ethics. As the Assistant Chief Counsel of General Law, he knows it's unethical to coach her on sworn responses.

Although Ms. Rutledge screams and curses at everyone, she treats women worse than men. Our last secretary, Bernadette Nutsch, abruptly quit her job last year because she was fed up with the hostile work environment. When she resigned, she submitted a resignation letter to FMCSA Administrator Annette Sandberg stating she was resigning because of the "hostile environment." Mr. McCown permits this abuse to continue.

      E.     Management hires men at mid-level GS-14 and GS-15 Attorney positions, but refuses to hire similarly situated female Attorneys at the commensurate salary and grade level. Please explain in detail.

Up until Complainant and I filed EEO complaints, management had never hired or promoted a woman to a GS-14 or GS-15 level. All of the GS-14 and GS-15 positions have historically gone to men. Complainant has a GS-14 because another agency gave it to her before she came to FMCSA. I was demoted to a GS-13 upon hire, and was not given my prior grade, even though I had worked as a GS-14 at the Department of Justice and at the Department of Commerce. I

4

worked at DOJ for over ten years, but I was forced to take a downgrade when I was hired. This is consistent to the way Complainant is treated. The position I was hired into was a GS-13/14 position, but they would not give me the GS-14. Last year, Mr. McCown hired two male attorneys, Mr. Downey and Mr. William, at the GS-14 level. Both men had much less experience than me. Mr. William graduated from law school in 1996 and Mr. Downey graduated from law school in 1995. I gradated from Notre Dame Law School in 1991 and immediately started working at the Department of Justice. I worked as a GS-14 attorney at DOJ before Mr. William even graduated from law school! And yet, I was forced to take a downgrade to a GS-13 upon hire while he was given a GS-14. If you look at Mr. William's resume, you will see he only has one job listing (at the U.S. Department of Treasury) for one or two years. I had over twelve years solid government attorney experience on my resume. There is a distinct pattern of sex discrimination with respect to hiring and promoting attorneys. The evidence will show that from 2000 to 2004, management hired less experienced male attorneys even though they had less government service than me. Bob Brown, who was hired as a GS-14, graduated from law school in 1992 and worked as an attorney at INS for only a few years. That was his only legal work experience, and yet he was hired at a higher grade than me. Kirk Foster was hired as a GS-13, but he was given his GS-14 exactly one year later. He did not have to write up a "promotion justification memo" like the female attorneys. His p4romotiomn was not held up. Mine has been held up two years. He will freely admit that the promotion policy is very different for men and women. Florian Chess (now deceased) was hired as a GS-14 even though he had a break in government service.

     F.     Management gives signing bonuses and moving expenses to male Attorneys, but not to female Attorneys. Please explain in detail.

Mr. McCown and Ms. Rutledge gave Mr. Downey a signing bonus and paid relocation costs for Mr. William – even though both their positions were easy to fill. Ms. Rutledge was well-aware of the strict standards regarding signing bonuses and relocation bonuses. In 2002, Florian Chess wrote a lengthy memo informing Ms. Rutledge that bonuses are only justified when the position is difficult to fill and the applicant pool is scarce. That was not the case with these selections. Mr. McCown and Ms. Rutledge knew that. They gave Mr. Downey and Mr. William bonus money because it was a way of paying the men more than the women. It's that simple.

     G.     Management gives male employees more favorable performance ratings, higher performance bonuses, including "signing bonuses," greater training opportunities, more frequent performance and incentive awards, moving expenses, etc., than female employees. Please explain in detail.

All of the men in the office receive higher bonuses than the women. This can be confirmed through discovery. Last month, the male attorneys received bonuses in excess of $3000. I only received $500 – the same amount as the office secretary. I should have received much more because I won more personnel cases last year than any other attorney in the history of the General

5

Law section. To the best of my knowledge, Complainant only received $300 awards. That's insulting considering how much work she has done for this office. The Office fo Chief Counsel would not have gotten off the ground if it weren't for her hard work over the years.

       H.     Management officials nominate male Attorneys to the Executive Performance Program, but not female attorneys. Please explain in detail.

Mr. McCown and Ms. Rutledge recommended Mr. Solomey be nominated for the EPP, but they denied Complainant's request. They do not want female attorneys to succeed or climb up the career ladder.

6.     Complainant also states that at an MC-CC staff meeting, Ms. Dettling and Ms. Cho also heard Mr. Yonish say that he was on a "big learning curve" and had to "get up to speed" for the Assistant Chief Counsel's position he was hired to fill over Ms. Walls. Please explain in detail.

It was well-known throughout the office that the male attorney hired by Mr. McCown for the GS-15 Enforcement position had no experience in motor carrier issues. Everyone became aware Mr. Yonish was not familiar with the workings of the Agency and had no prior experience working on enforcement or motor carriers issues because he openly told people. Mr. Yonnish previously worked for the Department of Defense on General Law issues. He would have been qualified for a General Law position at FMCSA, but he certainly was not qualified for a supervisory Enforcement position. He even admitted at a staff meeting in front of everyone that he was on a "big learning curve." He had no idea what FMCSA did. As I recall, at the meeting he asked everyone to be patient with him. It's nonsensical to hire someone who has no enforcement or supervisory experience for a "supervisory enforcement position." Complainant had the best experience out of all the applicants. She should have been hired for that position. She was not hired because she was female and engaged in prior EEO activity.

7.     The Complainant contends that on September 14, 2004, Rutledge and McCown abruptly cancelled a pre-approved trip to Destin, Florida for training for her and two other female employees.

     A. What reason was given for the training to be abruptly cancelled? Please explain in detail.

Ms. Rutledge canceled the trip because she did not want me and two other female attorneys to attend the training course. As soon as she learned we were looking forward it, she made us cancel it. She did not give us a reason for the cancellation. I assume it's because all three of us are women and we testified against her in an EEO investigation.

6

B. Why were the male colleagues allowed to go to their training and the females not? Please explain in detail.

Ms. Rutledge allows the male attorneys to go to whatever training they want. Mike Falk and Charles Medalen were permitted to go to the residential workshop in New Orleans because they are men and they were not involved in these EEO complaints. They write their own training tickets and Ms. Rutledge always approves them.

**8.**    Based on the allegations accepted for investigation, do you believe that the Complainant was discriminated against?

Absolutely. Management treats women less favorably with respect to hiring, promotion, bonuses, compensation, training, career opportunities, assignments, etc. Management offers excuses for its discriminating actions, but the reasons are always after-the-fact and fabricated. When I filed a complaint alleging my forced downgrade to a GS-13 was discriminatory, they said it was legitimate because my position "only went to a GS-13." That was patently untrue. I have a SF form from Human Resources that shows my position goes to a GS-14. I answered a GS-13/14 vacancy announcement. Once we complained about not being promoted, management fabricated "performance issues" to justify the continual denial of our promotions. Neither Complainant nor I have any record of performance problems. Management justifies higher grades for men because they have "specific" experience, but then they justify higher grades for men who have "general" experience. They give men higher grades because they worked for the Navy or Dept of Defense – things that have nothing to do with motor carrier issues. They say what is convenient for them. Mr. McCown said Mr. William deserved a GS-14 upon hire because he had "specialized employment law" experience. Then he said Mr. Downey deserved a GS-14 because he was a "generalist." I was a specialist in employment law and had a lost of "general law" experience. And, I worked as a GS-14 at two federal agencies. For women, it doesn't matter how good your experience is, management will justify why men deserve more. If you look closely at the resumes of the male employees, you'll see the only consistent attribute management looks for when they give out GS-14s or GS-15s is that the owner of the resume be a man.

9.    Are there any other comments you would like to make at this time?

It is common knowledge in the office that Ms. Rutledge and Mr. McCown are doing a lot of illegal things and that Mr. McCown does not promote women because we do not go along with his unethical fiscal policies. Although I received fiscal law training last year and successfully worked on a number of fiscal law assignments, my supervisor, Mr. Rigrodsky, has been directed to stop giving me procurement assignments. Mr. McCown does not want me to see their illegal use of government funds. The last procurement assignment I worked on, a high ranking member of Administrator Sandberg's staff approached Mr. Rigrodsky and told him I did an excellent job on the assignment. Despite that praise, I am no longer permitted to work on procurement issues.

7

I HEREBY SOLEMNLY _____ S wen _____ THAT:
                              (SWEAR OR AFFIRM)


I DECLARE UNDER PENALTY OF PERJURY THAT THE INFORMATION CONTAINED
IN THE ABOVE PAGES IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE
AND RECOLLECTION. SEE 28 U.S.C. ' 1746. I UNDERSTAND THAT THE
INFORMATION I HAVE PROVIDED HEREIN IS NOT TO BE CONFIDENTIAL AND
THAT AGENCY REPRESENTATIVES MAY SHOW IT TO THE INTERESTED PARTIES.
HOWEVER, I ALSO UNDERSTAND THAT I AM NOT TO PERSONALLY DISSEMINATE
THE INFORMATION CONTAINED IN THIS AFFIDAVIT AS SUCH ACTION COULD
INTERFERE WITH THE PROCESSING OF THE INVESTIGATION AND COULD VIOLATE
PROVISIONS OF THE PRIVACY ACT AND AGENCY POLICIES.

Signature: _____    Date: _December 14, 2004_
              (Affiant's Signature)