# PLAINTIFF'S
# EXHIBIT 24

UNITED STATES DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
DEPARTMENTAL OFFICE OF CIVIL RIGHTS

AFFIDAVIT

STATE OF          District of Columbia

CITY OF           Washington, D.C.

I, <u>Dolores M. Hodge</u>, being first duly sworn on oath, make the following statement freely and voluntarily to <u>Lisa C. Hetrick</u> who has identified herself to me as an EEO Investigator, for the U.S. Department of Transportation, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any party who has an official interest.

Allegation:
The Complainant, Elaine Walls, is alleging that she was discriminated against based on her race (African American), color (Black), **sex (female)**, age (49, DOB 03-11-55) and reprisal (EEO activity) when: 1) in February 2004, she was denied a promotion to the GS-15 level; 2) management denied her participation into the Executive Potential Program (EPP); 3) she learned that her Caucasian male counterparts received higher performance ratings, awards, and bonuses; 4) on September 14, 2004, she was not selected for the position of Assistant Chief Counsel of Enforcement; and 5) pre-approved training was cancelled for her and two female co-workers while the training for their male counterparts was permitted one month before.

1.  For record, please state your race, color, age, sex, position, series and grade and how long you have been with the FMCSA.
    Black; Female; 51; Administrative Officer; GS-0341; Grade 12; Hired on January 30, 2000.

2.  For the record, please list your chain of command.
    Chain as of Nov 28, 2004:
    Robert W. Miller, Special Assistant to the Chief Safety Officer
    John H. Hill, Assistant Administrator/Chief Safety Officer

Page 1  of  5                                              Initials _Dind_

Chain During Complaint Period, Jan 2002- Nov 2004:
Judith A. Rutledge, Deputy Chief Counsel
Brigham A. McCown, Chief Counsel

3. For the record, please explain if you have had any prior EEO activity. Also, please identify if the Complainant was a party to or involved in any way in your prior EEO activity.

   I have had no prior EEO activity.

4. Please identify in what capacity you know or have known the Complainant and for how long.

   Ms. Walls has been a coworker in my assigned work unit since my arrival in January 2002. I had no formal association with her prior to that time.

5. The Complainant states in her complaint that you can provide information on all matters involving personnel actions for MC-CC promotions, training, bonuses, and awards. Please provide a copy of all personnel actions involving promotions, bonuses and awards from January 2002 through present for all employees in the office type a C-1. Also please provide a copy of all approved training requests from January 2002 to present.

6. Based on the allegations accepted for investigation, do you believe that the Complainant was discriminated against?

   Yes, no question.

7. Are there any other comments you would like to make at this time?

It would be quite difficult to defend the actions of the leadership of this organization against what can only be termed as blatant discrimination with respect to Ms. Walls. Clearly, when factually studied, the records speak for themselves. I respond to each allegation as follows:

1. Denied promotion to GS-15 level:  My memory of Ms. Walls' promotion denial is vivid. Clearly she was more than disappointed, perhaps stunned is a more appropriate assessment, at management's less than adequate reason(s) why her promotion would not be forthcoming. As Administrative Officer, I am normally privy to all personnel actions, both

positive and adverse. I am aware of no adverse actions against Ms. Walls with respect to her job performance, professional comportment, attendance history, representation as a status member of the Office of Chief or any of the myriad of other circumstances which can rightfully warrant impediment of normal professional progression. If any of these instances are truly the basis of denial, it is management, not Ms. Walls who is at fault. One cannot be expected to "improve" if one is totally unaware that "improvement" is necessary. It is leadership's responsibility to inform an employee of deficiencies, if that is in fact the case, and assist in overcoming any shortcomings in the employee development process. It is neither professional nor acceptable to punish an employee by withholding advancement due to supervisory incompetence. (EXHIBIT 5)

2. <u>Denied participation into the Executive Potential Program (EPP):</u> It would logically follow from the first allegation that clearly Ms. Walls has been forced into a" Catch 22" scenario. She is being denied promotion seemingly because she's not on par with her peers, yet her efforts to remain/become competitive are thwarted. During my tenure, I have witnessed her Caucasian, male counterparts granted approval of each request submitted for upward mobility training opportunities. I have no knowledge or recollection of any denials. As with most organizations, whether government or private sector, management level advancement is tied to and in most cases contingent upon fulfilling certain requirements. These denials are tantamount to a systemic proclivity to embrace institutional bigotry through the disparate treatment of people of color and women.

3. <u>Caucasian male counterparts received higher...:</u> Again, in my capacity as Administrative Officer, I am positioned to witness employee recruitment and recognition initiatives. Today's employment outlook boasts an "employers' market". On average, each attorney job vacancy has netted no fewer than 28 applicants and a total of 139 in one instance; yet the last seven attorneys hired on my watch have been Caucasian, without exception, and male, save two women litigators. I cannot believe there was not one qualified Black, Hispanic or Asian male or female candidate among them. In fact four of the seven were offered and received monetary incentives as a condition of their acceptance of employment. How is it that Ms. Walls, who has been performing well in her position for multiple years, has experience within the Department and the Agency, is familiar with its mission, programs and goals, is not qualified to receive monetary compensation by dint of promotion, but four people with no experience in the organization, clearly required to navigate the learning curve inherent in a new position just to get up to speed, merit above and beyond compensation incentives just to work in the organization? In kind, the disparity in giving performance and incentive awards is equally biased. Again, white males are the recipients of the lion's share of the funds allotted for employee recognition. Actual merit or arrogance of perceived entitlement? (EXHIBITS 1, 2, 3(1))

Page 3 of 5

Initials _____

4.  <u>Not selected for the Assistant Chief Counsel, Enforcement and Litigation position</u>: Ms. Walls worked in the Counsel Enforcement division from the Agency's inception in 2000 until our recent reorganization in January of this year. The organizational restructuring created two additional divisions as follows: 1-General Law; 2-Enforcement & Litigation; 3-Legislation; and 4-Regulatory Affairs, generating a necessity for three GS-15 level positions. In management's estimation, the recruitment process yielded only four acceptable, <u>qualified</u> candidates for the Enforcement division head. Ms. Walls applied for the position, but was not selected. Three candidates declined the position before the fourth and final selectee accepted. Once again, a blatant slight in my view, with no credible or supporting rationale. It is essentially impossible for any of the candidates to be more <u>qualified</u> than Ms. Walls who was a sitting member of the Enforcement legal team for many months. It would appear that rather than select black female Walls, any other person was preferred, even the fourth choice, who just happens to be a white male. (EXHIBIT 3(2))

5.  <u>Pre-approved training was canceled for the complainant and two female coworkers</u>: The fiscal closeout of 2003 resulted in an unanticipated availability of funds for training initiatives. Staff members were afforded the opportunity to select from several cities around the country to attend a USDA sponsored Residential Management course. Two white male attorneys chose attendance in New Orleans, LA, July 27-30. Ms. Walls and four additional female staff members selected Destin, FL, Oct 14-17. The latter session was cancelled due to inclement weather/destruction of property and rescheduled for a later date; however, the Deputy Chief Counsel made the decision to disallow the rescheduled training altogether citing the course was inappropriate for attorneys. This same course was attended by two male attorneys in New Orleans. The course was supposedly inappropriate for attorneys, yet the two males elected to remain in New Orleans for the duration and made no attempt to return to duty early, notifying the Deputy only after they had returned. (EXHIBIT 4)

Initials

I HEREBY SOLEMNLY __AFFIRM__ THAT:
            (SWEAR OR AFFIRM)


I DECLARE UNDER PENALTY OF PERJURY THAT THE INFORMATION
CONTAINED IN THE ABOVE PAGES IS TRUE AND CORRECT TO THE BEST OF MY
KNOWLEDGE AND RECOLLECTION. SEE 28 U.S.C. '1746. I UNDERSTAND THAT
THE INFORMATION I HAVE PROVIDED HEREIN IS NOT TO BE CONFIDENTIAL
AND THAT AGENCY REPRESENTATIVES MAY SHOW IT TO THE INTERESTED
PARTIES. HOWEVER, I ALSO UNDERSTAND THAT I AM NOT TO PERSONALLY
DISSEMINATE THE INFORMATION CONTAINED IN THIS AFFIDAVIT AS SUCH
ACTION COULD INTERFERE WITH THE PROCESSING OF THE INVESTIGATION
AND COULD VIOLATE PROVISIONS OF THE PRIVACY ACT AND AGENCY
POLICIES.

Signature: _____. Date: December 16, 2004
        (Affiant's Signature)

Initials _____