# PLAINTIFF'S EXHIBIT 29

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELAINE WALLS** | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 06-1259 (TFH) |
| v. | ) |
| | ) |
| | ) |
| **MARY E. PETERS,** | ) |
| **SECRETARY** | ) |
| **U.S. DEPARTMENT OF TRANSPORTATION** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN GENUINE DISPUTE**

Plaintiff, Elaine Walls ("Plaintiff Walls" or "Ms. Walls"), by and through her undersigned attorney, hereby submits this Statement of Material Facts in Genuine Dispute pursuant to Local Rule 7(h) and Rule 56 of the Federal Rules of Civil Procedure in support of Plaintiff's Opposition to Defendant's Motion to Dismiss for Summary Judgment.

Plaintiff also respectfully refers the Court to the factual statements in Plaintiff's Opposition to Defendant's Motion for Summary Judgment which sets forth a detailed accounting of the facts in this case, disputed or otherwise. Plaintiff further reserves the right to challenge Defendant's contentions concerning its statement of undisputed facts in this case.

As set forth in Plaintiff's accompanying Opposition and Memorandum of Points and Authorities, Plaintiff states a claim upon which relief can be granted and there are material facts in dispute which should be tried before a trier of fact.

1. Plaintiff is an Attorney Advisor, GS-0905-14, with over 25 years of legal experience in the area of transportation and enforcement regulations relating to the Motor Carrier Act (Pl. Opp. at 2, PEX#6). In 2000, Plaintiff transferred from the Federal Highway Administration ("FHWA") Office of Chief Counsel to the Federal Motor Carrier Administration's ("FMCSA") Office of Chief Counsel with the expectation that the FMCSA would honor the FHWA's commitment to non-competitively promote her to a GS-15 (PEX#7). Despite being eligible for, and qualified, to be non-competitively placed in the GS-15 level for her position, Plaintiff was never given a career-ladder promotion because of her race and sex.

2. Defendant also denied Plaintiff a competitive promotion to the Assistant Chief Counsel position in the Office of Chief Counsel, GS-15, in retaliation for her participation in protected activities. Ms. Walls has significant experience as an attorney in Federal transportation regulations, litigation matters and enforcement of motor carrier safety laws and Defendant selected an individual who had absolutely no experience whatsoever in transportation regulatory matters. (Pl. Opp. at 11-12, PEX#6).

3. In addition to the foregoing, Plaintiff suffered many other adverse employment actions, such as the Agency's denial of the opportunity to participate in the Executive Potential Program ("EPP") and other opportunities for professional development. (Pl. Opp. at 3).

**EEO PROCEDURAL BACKGROUND**

4. Plaintiff contacted an Agency EEO Counselor on February 12, 2004, regarding her non-selection for a career-ladder GS-15 position, the Agency's denial of the opportunity to participate in the Executive Potential Program ("EPP") and other opportunities for

professional development, such as training, that were denied her in the Chief Counsel's Office. PEX#1. Plaintiff then had her EEO Intake, or Pre-Complaint Intake Interview, with an EEO Counselor on February 18, 2004 for her Informal Complaint with the Agency. PEX#1. The Agency's EEO Office attempted informal resolution with the Agency, which was unsuccessful, and held a final interview with Ms. Walls on April 2, 2004, where it advised Ms. Walls of her right to file a formal EEO Complaint. Id. That same day, April 2, 2004, Ms. Walls filed her formal EEO Complaint which was accepted for investigation by the Agency on May 13, 2004. PEX#2.

5. Shortly thereafter, Plaintiff learned that she was not selected for the Assistant Chief Counsel position and that the Chief Counsel's Office selected Ms. Sue Lawless. Upon learning from Judith Rutledge of her non-selection on July 13, 2004, Plaintiff quickly amended her EEO Complaint by initially contacting the Agency's EEO Counselor via e-mail on July 20, 2004. PEX#3. The selectee, Ms. Lawless, did not accept the job offer.

6. Ms. Walls then amended her EEO complaint again after learning on September 14, 2004 that the Agency selected Mr. Yonish for the position she sought. PEX#4.

7. The Agency waited until November 22, 2004 to acknowledge receipt of Plaintiff's Amended Formal EEO Complaint, which included her complaint for retaliatory non-selection for the Assistant Chief Counsel position. PEX#5. Thereafter, Plaintiff's claim for retaliatory non-selection for the Assistant Chief Counsel position, as well as other claims, were administratively processed by the Agency.

## DENIAL OF EXECUTIVE POTENTIAL PROGRAM PARTICIPATION AND DENIAL OF CAREER LADDER GS-15 PROMOTION

8. Ms. Walls was well qualified and deserved a career-ladder promotion to the GS-15 level (Resume, PEX#6). See also Pl. Opp. at 7.

9. Prior to being recruited to join the FMCSA, Plaintiff's Supervisor, Thomas Holian, told Plaintiff that he would promote her to a GS-15 (PEX#7) See also Pl. Opp. at 7.

10. Ms. Walls accepted the transfer to the FMSCA because Ms. Rutledge told her that FMCSA would honor FHWA's promise to promote her to the GS-15 level. (PEX#7). See also Pl. Opp. at 7.

11. In or about December 2003, Ms. Walls approached her immediate supervisor, Ms. O'Malley about being nominated as a participant in the Executive Potential Program ("EPP"). PEX#7, p. 3. Ms. Walls hoped that her participation in EPP would broaden her professional development and assist her in obtaining the GS-15 level. Ms. O'Malley concurred and believed it would be a great opportunity for Ms. Walls. Id.

12. EPP is a DOT management program that gives employees an opportunity to be detailed to other agencies throughout the Washington, D.C. metropolitan area to gain management experience. Walls Dep. at 27 (PEX#8). Mr. Joseph Solomey, a similarly situated Caucasian male attorney in FMCSA, had been selected for EPP the previous year. PEX#7, p. 3.

13. Shortly after speaking to Ms. O'Malley about her career goals and interest in EPP, Ms. Rutledge informed Ms. Walls that the Counsel's Office would not recommend her for EPP in 2004. PEX#7, p. 4. Ms. Rutledge told Ms. Walls that they could not recommend her because they had recommended Mr. Solomey the previous year. Id. However,

management denied Ms. Walls' request because they did not want female attorneys to advance professionally. Id.

14. On February 6, 2004, Ms. Walls met with Ms. Rutledge and Mr. McCown about being nominated for participation in the EPP program and about her career ladder, non-competitive promotion to the GS-15 level. PEX#7, p. 4. At this meeting, Ms. Rutledge and Mr. McCown denied Ms. Walls' career ladder promotion and refused to recommend her for EPP. Id. See also Pl. Opp. at 8-9.

15. On February 10, 2004, Ms. Walls again met with Ms. Rutledge and Ms. O'Malley to discuss these issues. PEX#7, p. 4-5. Ms. O'Malley was upset that Mr. McCown and Ms. Rutledge had misquoted her because she never told them that Ms. Walls not qualified for a GS-15 career ladder promotion. PEX#7, p. 5. When asked about her promotion at this meeting, Ms. Rutledge initially indicated that while Ms. Walls was close to getting a GS-15 level, non-competitive promotion, Ms. Rutledge believed she was not quite there. PEX#7, p. 5. Ms. Rutledge then told Ms. Walls that she would no longer "sugar coat" the issue and would call a "spade a spade." Walls Dep. at 56. In her view, Ms. Walls was nothing more than a high paid GS-14 level attorney and she would never promote Ms. Walls. Id.

16. The Agency denied Ms. Walls the opportunity to participate in the EPP and the career-ladder promotion despite the fact that her experience was extensive and recognized by management in her performance appraisals, awards and bonuses. As a point of fact, in her General Workforce Performance Appraisal Record, dated from October 1, 2003 to June 30, 2004, management indicates that Ms. Walls provided highly effective service during the rated year. PEX#9. Management praised her for her contributions to the

Regulatory Affairs Division and for her leadership in the highly significant FMSCA National Environment Policy Act (NEPA) Policy Statement and for numerous other accomplishments. Id. Management also awarded Ms. Walls with bonuses. See PEX#18, 19 and 20.

### DISCRIMINATORY 2003 PERFORMANCE APPRAISAL

17. On or about March 18, 2004, in retaliation for Ms. Walls' EEO complaint, management in the Office of Chief counsel gave Ms. Walls a "Meets or Exceeds Requirements" rating for her 2003 Performance Evaluation despite the fact that Ms. Walls' performance, as well as Ms. O'Malley's evaluation comments, supported an Outstanding rating. Complaint at ¶ 32. See also PEX#9.

18. Management was aware of Ms. Walls' EEO Complaint because Mr. McCown refused to participate in Mediation of the Complaint. (See Complaint at ¶31).

### DENIAL OF GS-15 ASSISTANT CHIEF COUNSEL POSITION

19. On March 22, 2004, the Agency posted a Vacancy Announcement, No. HM4823EX, for the Assistant Chief Counsel position, Office of Chief Counsel, Enforcement and Litigation Division with a closing date of April 12, 2004. PEX#10. Ms. Walls applied for the position on April 12, 2004. PEX#6.

20. Ms. Walls' name appears on the list of qualified applicants. PEX#25.

21. Ms. Walls' was the best qualified applicant because she has held a series of positions in the transportation regulation field, and had experience working in the Agency's Regulatory Affairs Division, which, until March 2004, handled all of FMCSA's legal enforcement and

regulatory affairs issues. (PEX#6) See also Pl. Opp. at 48-49. Ms. Walls also served as the Agency's principal contact for the National Environmental Policy of 1969 (NEPA) issues on environmental matters. Id. Significantly, she prepared and developed the Agency's final NEPA Order to ensure that FMCSA considered environmental impacts, including Clean Air Act impacts, in all of its decision making. Id. Additionally, Ms. Walls created the NAFTA Programmatic Environmental Impact Statement (PEIS) interagency task force, a team of experts to assess the agency's environmental study needs in response to a decision by the U.S. Court of Appeals for the Ninth Circuit which set aside NAFTA implementing rules. Id. Ms. Walls has also been recognized for her achievements by the Agency. In appreciation of her diligent work in these subject areas, she has received two Special Act cash awards, a Secretary's Team Award, and the Secretary's "Thanks a Million Award." Id.

22. Sometime after the closing date of the Vacancy Announcement, Ms. Rutledge approached an Agency employee, Ms. Sue Lawless, and encouraged Ms. Lawless to apply even though the closing date for the position had passed. PEX#11, p. 276-77.

23. On July 9, 2004, Mr. McCown submitted Ms. Lawless' name as the selectee for the Assistant Chief Counsel position. PEX#12. As alternatives, Mr. McCown suggested David F. Snyder and Dennis D. Kirk. Id. Mr. Yonish was not listed as an alternative candidate in this first Memorandum. Id.

24. On August 3, 2004, Mr. McCown and Ms. Rutledge were informed that Ms. Lawless declined the job offer. PEX#13. Accordingly, they reviewed the candidates and, once again, ignored Ms. Walls for the position. On August 6, 2004, Mr. McCown recommended Mr. David F. Snyder for the Assistant Chief Counsel position. PEX#14.

As an alternative, Mr. Kirk and Mr. Yonish were proposed. Apparently, Mr. Snyder and Mr. Kirk declined the offer and the fourth choice, Mr. Yonish, was selected. In an E-mail dated August 25, 2004, Mr. McCown and Ms. Rutledge were informed that Mr. Yonish accepted the job offer. PEX#15.

25. On September 14, 2004, Mr. McCown issued his Monthly Chief Counsel Report. PEX#16. In this Report, on the last page, Mr. McCown informed FMCSA that Mr. Yonish had accepted the position and would be starting on October 4, 2004. Mr. Yonish's appointment to the Assistant Chief Counsel position was approved on October 6, 2004. PEX#17.

26. The Agency selected Mr. Yonish for the position, even though he had absolutely no Motor Carrier Program experience whatsoever at the time he was hired. See Rutledge Dep. at 290 (admitting that it was correct that Mr. Yonish "did not know the Motor Carrier Program.") Mr. Yonish, who has a legal background as a litigator for the United States Navy, has approximately two years, and not over twenty years like Ms. Walls, of regulatory law experience. (PEX#27). Furthermore, Mr. Yonish's regulatory experience is limited to working with the Federal Aviation Administration, not the FMCSA, the Motor Carrier Act or even DOT. (PEX#27). In contrast, Ms. Walls has undeniably superior experience working on Motor Carrier regulations directly related to the type of experience that is required for the position she sought. See also Pl. Opp. at 47-49.

**DENIAL OF AWARDS AND BONUSES**

27. On or about October 28, 2004, Ms. Walls was informed that she was selected to receive the Secretary's Team Award based upon her work on both the Mandamus Regulatory

Development Team, as well as her work on the NAFTA Litigation Team.  <u>See</u> PEX#18, 19 and 20.  Although receiving the Secretary's Team Award was a high honor, in previous years, Ms. Walls had been passed over for such awards and she did not receive the same level of recognition or bonuses as her male colleagues.  PEX#7, p. 10-12.  <u>See also</u> Complaint at ¶ 34.

                              Respectfully submitted,

                              _____/s_____
                              Camilla C. McKinney, Esq.
                              McKinney & Associates, PLLC
                              1100 Fifteenth Street, N.W., Suite 300
                              (202) 861-2934/(202) 517-9111(fax)
                              Washington, D.C.  20005
                              *Attorneys for Elaine Walls*