UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELAINE WALLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No.: 06-1259 (TFH) |
| | ) |
| MARY E. PETERS, | ) |
| | ) |
| Defendant. | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Mary E. Peters, in her official capacity as Secretary of the Department of Transportation ("Defendant" or the "Agency"), by and through undersigned counsel, respectfully submits this reply memorandum of law to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and in further support of same pursuant to Fed. R. Civ. P. 56. For the reasons stated below and in Defendant's Motion for Summary Judgment, there are no material facts in dispute, and the facts in this case establish that summary judgment should be granted in the Agency's favor as a matter of law.

**PRELIMINARY STATEMENT**

In her opposition to Defendant's motion for summary judgment, Elaine Walls ("Plaintiff"), an African American GS-14 Attorney Advisor in the Chief Counsel's Office at the Federal Motor Carrier Safety Administration ("FMCSA"), argues that the FMCSA discriminated against her by not promoting her to a GS-15 position in two ways: (1) Plaintiff claims that she was discriminated against on the basis of race and sex by being denied a "career-ladder," noncompetitive promotion to a nonsupervisory GS-15 level attorney position; and (2) Plaintiff

claims that the FMCSA retaliated against her for filing an EEO complaint when it did not competitively select her, among more than 40 candidates, for the GS-15 position of Assistant Counsel for Enforcement and Litigation.

Plaintiff's failure to attain a GS-15 position on either a competitive or noncompetitive basis is not rooted in discrimination or retaliation, but rather in a fair, unbiased assessment of Plaintiff's strengths and weaknesses under the FMCSA's high standards for promotion to GS-15. Longstanding Department of Transportation policy requires attorneys promoted to the GS-15 level to demonstrate "exceptional or outstanding performance" and to be "experts in their area" and "truly distinguished." Def. Ex. 12 (May 6, 1994 Memo on Promotion Policy); Def. Ex. 10 (McCown Dep.) at 23. More recently, following the allegations in this case, the Secretary of Transportation announced a policy providing that attorney promotions to the GS-15 level should be based on "quality of performance as a lawyer" and that "substantial deference should be given to the judgment and recommendations of the attorneys who manage the attorney in question as to when promotions are warranted." *See* Def. Ex. 11 (January 13, 2005 Memorandum on Attorney Promotion Policy at DOT). Indeed, Plaintiff does not contest Defendant's showing that the FMCSA Chief Counsel's Office has *never* promoted an employee to a nonsupervisory GS-15 position. *See* Defendant's Statement of Material Facts Not in Dispute ("SOF") 15.

Here, Plaintiff's job performance was satisfactory, but did not rise to the level warranting promotion to GS-15 under the Agency's universally applied promotion standards. Plaintiff's performance evaluations indicate that, in both FY 2002 and FY 2003, she was performing at a level that "meets or exceed requirements," but was not achieving "outstanding" performance. Def. Ex. 18 (Elaine Walls FY 2002 Performance Appraisal) at 1; Def. Ex. 19 (Elaine Walls FY 2003 Performance Appraisal) at 1. Her claim that she was qualified to be placed in a GS-15

position is simply her own assessment of her performance and is belied by the record evidence. Plaintiff's first-, second-, and third-level supervisors were in agreement that Plaintiff's job performance did not justify her promotion to the GS-15 level. *See* SOF 18.

# ARGUMENT

**I.    Defendant Did Not Discriminate Against Plaintiff on the Basis of Race or Sex when it Denied her a "Career Ladder" Promotion**

**A.    There Is No Basis for Plaintiff's Argument For a "Career Ladder" Promotion to GS-15.**

Plaintiff argues without legal or factual basis that she is eligible and qualified for a noncompetitive "career ladder" promotion to GS-15, and that the FMCSA's rigorous promotion standards conflict with Office of Personnel Management promotion standards. Plaintiff's argument mixes many apples with many oranges.

A "career ladder" is simply the designated range of grades for a position when a vacancy for it is announced. As shown by the FMCSA's job vacancy announcements for 2005-2007 for the Attorney Advisor position held by Plaintiff, the grade range for that position is GS-13/14. Declaration of Paul A. Gilmore, Ex. A ("Gilmore Decl."). When Plaintiff transferred to FMCSA in 2000 due to reassignment from the Federal Highway Administration, she already was at the GS-14 level.[1] *Id*., Ex. B. Thus, she was already at the top of the ladder for that position. By the same token, OPM regulations dealing with the standards for career ladder promotions are simply inapplicable, *see* 5. C.F.R. § 335.104, and Plaintiff's promotion opportunities are governed by

---

[1]    Plaintiff recites as background her belief that she was in line to be promoted to GS-15 and that in effect she was promised a promotion in 2000. However, her FHWA supervisor confirmed that she was not recommended for promotion to GS-15, SOF 21, and personnel records at the time clearly indicates that Plaintiff was transferred as a GS-14. In any event, Plaintiff is not complaining about the lack of promotion to GS-15 in 2000, nor could she, because she did not file a timely EEO complaint about it at the time.

Department of Transportation policies applicable to attorney promotions on both a competitive and noncompetitive basis.

> **B.     Plaintiff Cannot Establish a *Prima Facie* Case of Race and Sex Discrimination**

To establish a *prima facie* case of discriminatory refusal to promote, Plaintiff must show that: (1) she is a member of a protected class; (2) she sought and was denied a promotion for which she was qualified; and (3) other employees of similar qualifications were promoted at the time her request for promotion was denied.  *Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003); *Nurriddin v. Goldin*, 382 F.Supp.2d 79, 95 (D.D.C. 2005); *Nayar v. Howard Univ.,* 881 F.Supp. 15, 19-20 (D.D.C.1995); *Glenn v. Williams*, 2006 WL 401816 (D.D.C. 2006) (quoting *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C. Cir. 1981)).[2]

Plaintiff claims that the test articulated in *Bundy* and *Taylor* does not apply because she was entitled to a noncompetitive, career-ladder promotion and would therefore have no comparators as required by the third prong of the test.  This is incorrect.  *See Glenn v. Williams*, 2006 WL 401816 at *20 (applying the *Bundy-Taylor* test to career ladder promotion claims).  The record evidence shows that Plaintiff was in a GS-14 position with no further career ladder.  *See* Gilmore Decl., Ex. B.  Plaintiff's situation is similar to that described in *Murfree-Fleming v. Billington*, 2007 WL 2071675 (D.D.C. 2007), in which the plaintiff was a GS-11, "the top grade for her career ladder position. Therefore, in order be promoted, Murfree-Fleming had to apply and compete for a higher grade GS-15 level position." *Id*. at *3.

---

[2]     The D.C. Circuit has recently opined that a District Court should not decide whether a plaintiff makes out a *prima facie* case when the employer has asserted a legitimate non-discriminatory reason for its actions.  *Brady v. Officer of the Sergeant at Arms*, Slip. Op. 06-5362 (D.C. Cir. March 28, 2008).  However, the strength of a party's *prima facie* case still plays a role in determining whether Plaintiff has met her ultimate burden of proof.  *See Pardo-Kroneman v. Jackson*, – F.Supp.2d –, 2008 WL 836153 (D.D.C. 2008) (JDB).

Plaintiff cannot meet the *prima facie* burden set forth in *Glenn*, *Bundy*, *Taylor*, and other precedential cases because she cannot show that other employees of similar qualifications were promoted at the time her request for promotion was denied. *Indeed, the Chief Counsel's Office has never promoted an employee to a non-supervisory GS-15 position.*[3] *See* SOF 22. Summary judgment is appropriate where the record is devoid of any proof that similarly-situated employees were granted promotions at that time. *See Maye v. Gonzales,* 2005 WL 3544292, at *7 (D.D.C. 2005) (finding that the record did not support an inference of discrimination on plaintiff's promotion claim because, inter alia, it "lacks any proof (outside of plaintiff's own conclusory assertions []) that similarly situated employees who were not African-American were granted promotions to the GS-13 level at that time.").

    C.    **The Agency Followed Long-Standing, Non-Discriminatory Standards for Promotion**

Plaintiff claims that the FMCSA's "impossib[ly] high standards" for promotion serve as a pretext for not promoting her to the GS-15 level. *See* Plaintiff's Opposition at 24. Even if Plaintiff is able to establish a *prima facie* case, which she cannot, the evidence is overwhelming that FMCSA denied Plaintiff's promotion for non-discriminatory, *performance-related* reasons.

The FMCSA Chief Counsel's Office promotion standards are very high, but they are applied equally and fairly to all attorneys in the office. Def. Ex. 8 (O'Malley Dep.) at 139-140, 207 (describing the Chief Counsel's Office as "an extremely challenging environment where across the board it's very difficult to become a 15. There are a lot of benchmarks you have to

---

[3]     The non-supervisory GS-15 employees at FMCSA received their GS-15 promotions while at FHWA and retained that designation when they transferred to FMCSA. Def. Ex. 7 (Rutledge Affidavit) at 7; Def. Ex. 9 (Rutledge Dep.) at 177. Plaintiff was a GS-14 at FHWA and transferred at that same level. Def. Ex. 2 (Walls Dep.) at 21.

meet."), 245-47.  The criteria for promotion are based upon long-standing Departmental policy which requires attorneys promoted to the GS-15 level to demonstrate "exceptional or outstanding performance" and to be "experts in their area" and  "truly distinguished . . . ."  Def. Ex. 12 (May 6, 1994 Memo on Promotion Policy).

      Neither Plaintiff nor the Agency disputes that the standards for promotion to a GS-15 are very high.  Indeed, even employees far more qualified than Plaintiff could not meet FMCSA's demanding standards for promotion to GS-15.  For example, Joe Solomey, a Caucasian and recipient of the 2002 Lawrence R. Schneider award for outstanding professional abilities; was nominated for FMCSA employee of the year in 2001; and was generally recognized as an expert in his field — none of which Plaintiff has achieved — expressed frustration at not being able to attain the GS-15 level.  *See* SOF 25.  He eventually left the office for another position.  *Id*.  Robert Brown, another Caucasian male who had already been a GS-15 at his previous agency but, notably,  had taken a downgrade to a GS-14 when hired by FMCSA, remained at that level during his tenure at FMCSA.  He, too, eventually left the agency.  *See* SOF 24.

      As for Plaintiff, her first-, second-, and third-level supervisors were in agreement that her performance did not justify a promotion to the GS-15 level.[4]  *See* SOF 18.  While Plaintiff performed satisfactorily at the GS-14 level, Plaintiff's supervisors all agreed that she needed to develop and improve several aspects of her performance before she reached the performance level required of a GS-15.  *Id.*  In their assessment, Plaintiff lacked an in-depth knowledge and understanding of major agency programmatic regulatory initiatives, including the enforcement program, Motor Carrier Safety Assistance Program and commercial regulatory areas.  Def. Ex.

---

[4]    Plaintiff's lack of qualification to be promoted to a GS-15 renders her unable to satisfy the second prong of the *prima facie* case as well.

10 (McCown Dep.) at 31, 168-69; Def. Ex. 8 (O'Malley Dep.) at 209-16; Def. Ex. 9 (Rutledge Dep.) at 240. This lack of thorough knowledge impeded Plaintiff's ability to approach regulatory development and review assignments with full independence and with an adequate appreciation for the operative legal, policy and substantive considerations. *Id.*

In addition, in her supervisors' judgment, Plaintiff's communication skills and lapses in diplomacy limited her ability to perform at a GS-15 level.[5] *Id.* In 2001, for example, Plaintiff's first- and second-level supervisors recommended that she attend seminars on improving communication and diplomacy skills due to her tendency to be dictatorial or dismissive in her written and verbal communications. *See* Def. Ex. 20 (Training Authorizations); O'Malley Decl. at ¶ 19. As Plaintiff's immediate supervisor, Suzanne O'Malley, explained, "There have been some occasions when I believe she has not handled interoffice or interpersonal relationships as well as she might have, *or certainly at the level of proficiency that you would expect of someone at a grade 15 position*." Def. Ex. 9 (O'Malley Dep.) at 218 (emphasis added).

Moreover, Plaintiff's supervisors indicated that she needed to improve her performance in a number of areas before she would be eligible for promotion if and when a GS-15 position became available. These areas included expanding her knowledge of FMCSA programs and regulations and developing an awareness of the policy and procedural considerations related to them; improving her ability to identify key issues in an assignment without spending time on minor, insignificant aspects of the subject; taking the initiative to interact with program clients; and developing the ability to produce a final work product that addresses legal, policy, and

---

[5] Ms. O'Malley's assessment of Ms. Walls was based on her own observations as well as the fact that, rather than rely on Ms. Walls to resolve issues they may have, Agency clients have asked her "if another attorney is available to assist them because they had previously not found Ms. Walls approachable or fully responsive." O'Malley Declaration at ¶ 18.

program considerations that does not require substantial editing by a supervisor.  *See* SOF 18.  To promote Plaintiff in the face of the foregoing evaluations of her performance would be to ignore the directives in the Secretary of Transportation's January 13, 2005, memorandum on the Attorney Promotion Policy in DOT, relied upon by Plaintiff, which states that "substantial deference should be given to the judgment and recommendations of the attorneys who manage the attorney in question as to when promotions are warranted."  *See* Def. Ex. 11 (January 13, 2005 Memorandum on Attorney Promotion Policy at DOT).

      Evidence of assessments of Plaintiff's performance by her superiors is fully supportive of a non-discriminatory denial of a promotion.  *See Mbulu v. Bureau of National Affairs, Inc.*, 2006 WL 469971, at *9 (D.D.C. Feb. 28, 2006) (defendant successfully asserted through testimony of plaintiff's first and second-level supervisors that the "satisfactory"-rated plaintiff did not meet its criteria for a merit-based grade increase, and was denied a promotion for a non-discriminatory reason warranting summary judgment; in general, defendant did not promote an employee to the next higher grade solely because that employee performed adequately or satisfactorily at his or her current grade, but rather required overall ratings of above average or exceptional in the requisite job performance categories for promotion);  *Maye*, 2005 WL 3544292 at *7-9 (concluding that the defendant had successfully proffered non-discriminatory justifications for its decision not to promote plaintiff to a GS-13, namely that "several supervisors did not feel that plaintiff exhibited, at that time, the depth of experience and level of performance that is characteristic of a GS-13 level agent," and that "Plaintiff's own subjective assessment of his credentials and performance at the time that the promotion was denied are not sufficient to establish pretext.").

"Where there is no evidence that illegal discrimination played a role in an employee's non-promotion, the Court will not sit as a 'super-personnel department that reexamines an entity's business decisions.'" *Nurriddin v. Goldin*, 382 F.Supp.2d 78, 101 (D.D.C. 2005) (*quoting Fischbach* v. *District of Columbia Dept. of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996). While Plaintiff may disagree with the promotion policies and high standards that exist in the Chief Counsel's Office and with management's assessment of her work performance, she can present no evidence to suggest that the FMCSA's legitimate nondiscriminatory reasons for not promoting her were pretexts for race or sex discrimination. *See Pignato v. American Trans Air, Inc.,* 14 F.3d 342, 349 (7th Cir.1994) ("It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason"). Here, the record is devoid of even the slightest indication that FMCSA used race or sex in any way to differentiate among employees when applying GS-15 promotion standards. Thus, the FMCSA should be granted summary judgment on this issue.

    **D.**    **FMCSA Did Not Fail to Provide Plaintiff With Opportunities Necessary to Obtain a GS-15 Promotion**

Plaintiff argues that the FMCSA failed to provide her with the opportunities necessary to obtain promotion to a GS-15. Yet Plaintiff herself states in her opposition papers that she achieved "a significant body of work" on environmental issues at FMCSA, citing her involvement with the NAFTA litigation team; her assistance in developing a NAFTA litigation task force; a "monumental project" assigned to her concerning developing NAFTA rules to open the border between the United States and Mexico; and her placement on the Mandamus Regulatory Development Team. *See* Plaintiff's Opposition at 30-31. In the next breath, however, Plaintiff claims – without any citation or evidence whatsoever – that she was denied

"assignments that would be career enhancing." *Id*. at 31. Even if Plaintiff's claim were true, the failure to give an employee "desirable" or "important" work assignments is not an adverse action as a matter of law. *Bryant v. Brownlee,* 265 F.Supp.2d 52, 61 (D.D.C. 2003) (finding that plaintiff's allegation that she was given unimportant work did not rise to the level of adverse employment action).

Next, Plaintiff argues that Chief Counsel's Office recommended Joseph Solomey, a Caucasian male, for the Executive Potential Program ("EPP") in 2003, but did not recommend Plaintiff for the same program the following year. Plaintiff conveniently ignores the fact that Chief Counsel McCown and Deputy Chief Counsel Rutledge declined to nominate *any* candidates for the EPP in 2004 because of the strain placed on the small office's limited resources and staffing levels in 2003 as a result of Mr. Solomey's participation in the EPP. Def. Ex. 7 (Rutledge Affidavit) at 4-5; Def. Ex. 9 (Rutledge Dep.) at 230; Def. Ex. 10 (McCown Dep.) at 37-38; Def. Ex. 8 (O'Malley Dep.) at 189, 196-97. In addition, they believed it unlikely that the Agency would select a nominee not just from the same office, but from the same *division*, two years consecutively. *Id*. Plaintiff's attempt to paint a logical business decision as discriminatory has no basis in fact.

Finally, Plaintiff's claim that certain male employees were permitted to telecommute while female employees were not is completely irrelevant. Plaintiff makes a number of similar baseless allegations presumably to suggest improper biases motivated employment decisions at FMCSA. Plaintiff offers no evidence to support these allegations other than her own self-serving pronouncements. FMCSA's treatment of other employees has no bearing on how Plaintiff was treated, nor does it have any relevance whatsoever to FMCSA's non-discriminatory decision not to promote Plaintiff.

**II.     FMCSA Did Not Retaliate Against Plaintiff When It Failed to Select Her for the Assistant Chief Counsel Position**

    **A.     Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation**

To establish a *prima facie* case of retaliation, Plaintiff must show "(1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two." *Mitchell v. Baldridge,* 759 F.2d 80, 86 (D.C. Cir. 1985) (*quoting McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C. Cir. 1984)).

Here, Plaintiff claims that Defendant has "conceded" that Plaintiff has met her *prima facie* burden with respect to an adverse employment action. This is not the case. FMCSA did not decline to competitively promote Plaintiff to the Assistant Chief Counsel position, among over 40 candidates for the position, as a result of her involvement in the EEO Report of Investigation. Rather, the FMCSA declined to competitively promote Plaintiff to the Assistant Chief Counsel position *because she was not the most qualified applicant*. The record is replete with evidence of (1) Plaintiff's "meets or exceeds requirements," not "outstanding," performance ratings, Def. Ex. 18 (Elaine Walls FY 2002 Performance Appraisal) at 1 and Def. Ex. 19 (Elaine Walls FY 2003 Performance Appraisal) at 1; (2) her inability to communicate well with the Agency heads, lead a program, recognize key issues, or make strategic plans necessary to manage a program, Def. Ex. 9 (Rutledge Dep.) at 279-80, 88; (3) her insufficient litigation experience working with the Department of Justice and lack of any particular expertise in the enforcement area, *id*. at 279; and (4) Plaintiff's failure to step out as a leader in the office, remaining instead very much focused on assignments without showing initiative beyond that, Def. Ex. 9 (Rutledge Dep.) at 288; Def. Ex. 10 (McCown Dep.) at 104.

Even Plaintiff herself admitted that her management or supervisory experience was quite limited: "From time to time when my supervisors are unavailable in the office, I act as the acting chief counsel in whichever division I've been employed." Def. Ex. 2 (Walls Dep.) at 66. She also admitted that her experience in enforcement cases, investigative issues, and litigation was lacking: In her deposition, Plaintiff could not identify any specific enforcement cases or investigative issues she worked on from 2000 to 2004, and lists her litigation experience as working as an AUSA at the Department of Justice on a six-month detail "sometime in the 90's." Def. Ex. 2 (Walls Dep.) at 63-66.

In short, Plaintiff did not have *any* characteristics that gave her a clear advantage either in the management, leadership, communication, or substantive area. *See* SOF 40. In the judgment of the former Chief Counsel and the Deputy Chief Counsel of FMCSA, she was not the most qualified applicant for the supervisory position of Assistant Chief Counsel for Enforcement and Litigation. *See* SOF 41.

Based on the foregoing, it is clear that FMCSA selected another candidate over Plaintiff *not* as retaliation for Plaintiff's EEO activities, but because Plaintiff was simply not the best qualified candidate for the job. *See Fischbach v. District of Columbia Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C. Cir.1996) (courts must respect the employer's unfettered discretion to choose among qualified candidates); *Waterhouse v. Dist. of Columbia,* 124 F.Supp.2d 1, 7-8 (D.D.C. 2000), *aff'd,* 298 F.3d 989 (D.C. Cir. 2002) (it is the perception of the employer that is relevant, not plaintiff's own subjective evaluation of her qualifications).

### B. Plaintiff's EEO Claim Was Untimely

Plaintiff amended her formal EEO Complaint on September 14, 2004, to include her claim for retaliation regarding the hiring of Brian Yonish for the Assistant Chief Counsel

position.  Plaintiff concedes that she did not make a new or separate EEO contact regarding the hiring of Mr. Yonish.  Plaintiff's amended claim is not by any stretch of the imagination "like or related" to her claims raised before the EEO counselor regarding the EPP program, career-ladder promotion to GS-15, training, lack of participation of the Chief Counsel in mediation, or her FY 2003 performance evaluation, and therefore does not fall within the exception allowing no EEO counseling.  SOF 3, 4.  The Supreme Court's holding that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *cf. Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162, 2166-72 (2007), applies in this circumstance to preclude Plaintiff's cause of action regarding this allegedly retaliatory act occurring after the filing of her formal complaint.

      **C.**      **FMCSA Had Legitimate, Non-Discriminatory Reasons for Not Selecting Plaintiff for the Assistant Chief Counsel Position**

The characteristics Chief Counsel McCown and Deputy Chief Counsel Rutledge sought in an ideal candidate for the GS-15 supervisory position of Assistant Chief Counsel of Enforcement and Litigation were aptitude for leadership, ability to interact effectively with Agency leaders, litigation skills, and experience in enforcement policy.  *See* SOF 39.  The record in this case overwhelmingly demonstrates that Plaintiff had not demonstrated an ability to communicate well with the Agency heads, lead a program, recognize key issues or make strategic plans such as is necessary to manage a program.  *Id*. at 40.  Plaintiff had not stepped out as a leader in the office, but rather had been very much focused on assignments and not shown initiative beyond that.  *Id*.  She did not have either sufficient litigation experience working with the Department of Justice, or any particular expertise in the enforcement area.  *Id*.

McCown and Rutledge offered the Assistant Chief Counsel position to Sue Lawless because she had both the relevant program and policy background and the leadership and communication abilities the selecting officials sought in an ideal candidate. *Id.* at 280. Lawless was an enforcement attorney for FMCSA at the time of her interview, overseeing the Eastern region and responsible for bringing all enforcement actions in that area. Def. Ex. 10 (McCown Dep.) at 88-89. She had a wealth of background in the enforcement area. *Id.*

Plaintiff's argument that Sue Lawless was "pre-selected" is without merit. Indeed, Ms. Lawless did not even initially apply for the position because she mistakenly believed it to be rigged — *against* her. Once she was assured that the position was open to the best qualified candidate, Ms. Lawless asked if she could still apply for the position. Upon Ms. Rutledge's inquiry on behalf of Ms. Lawless, the Human Resources department agreed that she could submit her application under another open announcement for the position. Rutledge Dep. at 273. Ms. Rutledge further testified that Ms. Lawless was "far and away the best pick." *Id.*

Plaintiff's attempt to paint the process surrounding Ms. Lawless' application as demonstrative of her having been "pre-selected," despite Ms. Lawless' initial reluctance to apply based on the belief that she would not be chosen, does not provide evidence of discrimination. Here, Mr. Lawless' application was accepted after Ms. Rutlege cleared it with Human Resources. Nevertheless, even if a court suspects that a job applicant "was victimized by [ ] poor selection procedures" it may not "second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Milton v. Weinberger,* 696 F.2d 94, 100 (D.C. Cir.1982).

When he interviewed for the position, Mr. Yonish held the commission of Captain in the United States Navy, a GS-15 equivalent, and had a long history of supervision both in the

military as well as in the civilian context. *See* SOF 46. In addition, he had experience working with investigators in the enforcement arena. *Id*.

When Sue Lawless and two others turned down the position, management offered the position to Brian Yonish. Mr. Yonish was selected because of his leadership, supervisory, and communication abilities. Def. Ex. 9 (Rutledge Dep.) at 281-83. Plaintiff cites the fact that Mr. Yonish was hired "approximately six (6) months" after Plaintiff filed her EEO complaint as raising an inference of retaliatory intent. To establish causation based on the temporal proximity; between the protected activity and an adverse employment action, however, the case law is clear that temporal proximity must be "very close" in time. *Kalinoski v. Gutierrez*, 435 F.Supp.2d 55, 69 (D.D.C. 2006); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing with approval cases holding that a three-month and a four-month period is insufficient to establish the necessary temporal proximity). The six months that passed between Plaintiff's EEO complaint and the hiring of Mr. Yonish simply cannot be used to raise an inference of retaliatory intent.

By contrast, Plaintiff had not stepped out as a leader in the office, but rather had been very much focused on assignments and had not shown initiative beyond that. *See* SOF 40. She did not have either sufficient litigation experience working with the Department of Justice, or any particular expertise in the enforcement area. *Id*.

Plaintiff makes much of the fact that Mr. Yonish did not have any Federal Motor Carrier experience. However, Mr. Yonish did possess, in the judgment of the selecting officials, considerable management experience, strong communication and leadership skills, and prior enforcement and litigation experience — all skills that were required for the Assistant Chief Counsel position, and all skills that Plaintiff lacked. Plaintiff's supervisors were unanimous in

15

their assessment that Plaintiff's leadership, communication and diplomacy skills were not at the level necessary for a supervisory Assistant Chief Counsel position.  SOF 40-42.  And although Plaintiff had knowledge of the Agency's programs, her knowledge was not broad enough or of sufficient depth to outweigh these other lapses.  SOF 40.

Moreover, the selection of Mr. Yonish over Plaintiff is the sort of "judgment call" to which employers are entitled in assessing the relative qualifications of the candidates.  *Howard v. District of Columbia Public Schools,* 501 F.Supp.2d 116 (D.D.C. 2007) (citing *Fischbach,* 86 F.3d at 1183).  Indeed, even if Plaintiff were as qualified as Yonish, "[e]mployers have the discretion to choose among qualified candidates, 'provided that decision is not based upon unlawful criteria.'"  *Ramey v. Bowsher,* 915 F.2d 731, 735 (D.C .Cir. 1990) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U .S. 248,  259 (1981)); *see also Barnette v. Chertoff*, 443 F.3d 513, 517-518 (D.C. Cir. 2006).

### III.    Plaintiff Has Had Sufficient Opportunity to Take Discovery

Plaintiff claims that summary judgment should be denied because she had insufficient opportunity to take discovery.  However, Rule 56(f) "is not properly invoked to relieve counsel's lack of diligence." *Berkeley v. Home Ins. Co..,* 68 F.3d 1409, 1414 (D.C.Cir.1995).  "A request to postpone resolution of a motion for summary judgment when the party opposing the motion has failed to avail himself of discovery to secure the information should be denied."  *Rowland v. Walker*, 245 F.Supp.2d 136, 140 (D.D.C. 2003).  Were it otherwise, parties could "belatedly devise[ ] new theories to delay resolution of long-pending dispositive motions." *Berkeley*, 68 F.3d at 1414.

Here, the timeline of events clearly belies Plaintiff's claim that the FMCSA's motion for summary judgment prevented her from completing discovery.  Discovery was actively open

from January 2007 through the last discovery deadline, October 22, 2007. Plaintiff claims that she did not anticipate Defendant's motion for summary judgment and "therefore, has not had the benefit of completing the discovery process . . . ." Plaintiff's Rule 56(f) Affidavit at 2. Here, Plaintiff moved to extend the time to complete discovery on October 3, 2007 – nearly two weeks *before* Defendant filed its motion for summary judgment on October 16, 2007. Thus, it is clear that it was Plaintiff's failure to take discovery in the time allotted, and *not* Defendant's motion for summary judgment, that prevented Plaintiff from completing discovery. Moreover, although plaintiff describes various evidence that she was unable to obtain, she offers no explanation for her failure to do so during the ten months that discovery was actively open. *See, e.g., Kakeh v. United Planning Organization, Inc.*, 2008 WL 516433, at *5 (D.D.C. 2008) (denying 56(f) motion where "Plaintiff had more than ample opportunity to obtain the requested discovery from [the witness in question], but chose not to do so."). There can be no dispute that Plaintiff has had ample materials available to build her case, including the massive administrative record, and plenty of time in which to do so. Indeed, this Court denied Plaintiff's motion to extend discovery on November 9, 2007.

      Plaintiff further complains that she was denied the opportunity to depose three witnesses, Jackie Cho, Rosemary Dettling, and Delores Hodge, even though she has presented their affidavits among her exhibits. Plaintiff could have deposed these witnesses at any time during the ten months of open discovery, yet has offered no explanation as to why she failed to do so. Because Plaintiff had ample opportunity to depose these witnesses but chose not to do so, her 56(f) motion should be denied. *See, e.g.*, *Rowland*, 245 F.Supp.2d at 140; *Kakeh*, 2008 WL 516433 at *5.

      Plaintiff also claims that more discovery is needed because most of the evidence she has

to support her claims was produced during the EEO process, yet review of the instant civil action is *de novo*. Thus, Plaintiff argues, any facts relevant to her complaint arising from the administrative case should be considered anew, and she should be permitted to pursue and introduce new evidence and legal theories as well. Plaintiff is correct that federal court actions are decided *de novo* and that Defendant's motion for summary judgment is presented and opposed largely on the administrative record. However, Plaintiff mistakes *de novo* review to mean that new evidence necessarily is presented. Rather, *de novo* review in this context means that the court is considering the *prior* record (or the portions the parties choose to rely on) anew.

   Plaintiff further claims to need discovery in order to demonstrate that numerous Caucasian male attorneys were promoted non-competitively to the GS-15 level in the Federal Highway Administration (FWHA), the predecessor organization to FMCSA. *See* Plaintiff's Rule 56(f) Affidavit at 5. Plaintiff claims that discovery on this issue will show that "FHWA had different standards than FMCSA for promotion to the GS-15 level and that Plaintiff was held to higher standard than the male attorneys who were promoted in FHWA." *Id*. Defendant maintains that the promotion standards in a different agency from the one at issue here, at which Plaintiff is not employed, has absolutely no bearing on whether Plaintiff was discriminated against at FMCSA.

   Finally, even if the Court were to find that Plaintiff was not dilatory in conducting discovery, her Rule 56(f) motion should be denied because expert testimony is not required to decide Defendant's motion. The evidence is overwhelming that Plaintiff was not discriminated against in any way, and that her failure to qualify for promotion was based on her own shortcomings, not on any discrimination on the part of FMCSA.

## **CONCLUSION**

For the foregoing reasons, there are no material facts in dispute, and the facts in this case establish that summary judgment should be granted in the FMCSA's favor as a matter of law.

DATED: April 21, 2008          Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 - 4th Street, N.W.
Washington D.C.  20530
Phone: 202-514-7157
Fax:    202-514-8780
kenneth.adebonojo@usdoj.gov

Of Counsel:
RAYMOND C. FAY, D.C. Bar #188649
Constantine Cannon LLP
1627 Eye Street, N.W., 10th Floor
Washington, D.C.  20006
Phone: 202-204-3500
Fax:    202-204-3501
rfay@constantinecannon.com

## CERTIFICATE OF SERVICE

        I certify that on this 21st day of April, 2008, I caused the foregoing Memorandum of law in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment to be served on Plaintiff's attorney, Camilla McKinney, Esq., via the Court's Electronic Case Filing system.

        _/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7157
(202) 514-8780 (facsimile)
kenneth.adebonojo@usdoj.gov